**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | |
|---|---|
| U.S. Commodity Futures Trading Commission, | ) ) ) |
| Plaintiff, | ) No. 11-233 |
| | ) |
| v. | ) |
| | ) |
| Grace Elizabeth Reisinger and ROF Consulting, LLC, | ) ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR**
**PENALTIES UNDER THE COMMODITY EXCHANGE ACT**

## I.    SUMMARY

1.      From at least February 28, 2005 to October 26, 2009 ("the relevant period"), Grace Elizabeth Reisinger ("Reisinger") and ROF Consulting, LLC ("ROF") operated the commodity pool NCCN, LLC ("NCCN" or "the pool") while not registered as required under the Commodity Exchange Act ("Act") as commodity pool operators ("CPOs"). Reisinger also acted as a CPO for a part of the relevant period pursuant to an invalidly claimed exemption from the requirement to register as a CPO. In addition, Reisinger made a number of fraudulent representations to actual and prospective pool participants, including without limitation: that she was exempt from the requirement to register as a CPO under the Act and Commission Regulations, that the pool only solicited and accepted funds from participants who met the definition of a "qualified eligible person" ("QEP"), and that the minimum required investment in the pool was $5,000,000. Reisinger and ROF also failed to: (1) furnish pool participants with regulatory prescribed monthly account statements and annual reports; (2) advise pool

participants that Reisinger and ROF directed fees to be paid from pool participants' funds to an undisclosed "foreign introducing broker"; and (3) advise pool participants that Reisinger and ROF were required to be registered as CPOs.

2.      Reisinger and ROF, as the CPOs of NCCN, directed the buying and selling of exchange-traded commodity futures and options contracts, among other financial instruments, on behalf of NCCN.  Reisinger and ROF, through Reisinger, solicited participants directly and accepted approximately $4 million on behalf of NCCN during the relevant period.  Of the at least $4 million taken-in by Reisinger and ROF, at least $2 million was accepted from participants who Reisinger admitted under oath that she "did not know" whether or not they were QEPs. Moreover, all of the pool's participants deposited substantially less than what Reisinger and ROF represented to prospective and actual pool participants as the "required" minimum amount to participate in the NCCN pool.

3.      Months after the date Reisinger and ROF delivered subscription agreements for the pool to some prospective pool participants and began acting as the CPOs of NCCN, Reisinger filed a letter with the National Futures Association ("NFA") on June 24, 2005 claiming exemption from the requirement to register as a CPO, pursuant to Commission Regulation 4.13(a)(4), 17 C.F.R. § 4.13(a)(4)(2005).  Accordingly, prior to June 24, 2005, Reisinger acted as the CPO of NCCN without registration or a claimed exemption from registration.  Throughout this same period, ROF also acted as the CPO of NCCN without being registered as a CPO and without a claimed exemption from the requirement to register as a CPO.

4.      Because Reisinger could not reasonably believe all persons participating in the pool were QEPs, admitted that she "did not know" whether some participants were QEPs at the time she accepted their funds, failed to provide all participants with the required written

statements mandated by Commission Regulation 4.13(a)(5)(i)(A) and (B), 17 C.F.R. §

4.13(a)(5)(i)(A) and (B) (2005), and sought exemption from registration as a CPO months after

subscription agreements were issued to pool participants, Reisinger was not eligible for the

exemption that she claimed under Commission Regulation 4.13(a)(4), 17 C.F.R. § 4.13(a)(4)

(2005) and, therefore, should have been registered as a CPO throughout the relevant period.  At

no time during the relevant period did Reisinger amend her claimed notice of exemption from

the requirement to register as a CPO, despite knowledge that her claimed exemption was invalid.

5.      At no time during the relevant period was ROF registered as a CPO or exempt

from the requirement to register as a CPO.

6.      Reisinger admitted in testimony under oath before the Commission that throughout

the relevant period that pool participants were not provided with either annual reports or monthly

account statements.

7.      By dint of this conduct and the further conduct described herein, Reisinger has

engaged, are engaging, or are about to engage in acts and practices in violation of: Section

4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), with respect to acts

occurring before June 18, 2008, and Sections 4b(a)(1)(A) and (C) of the Act, as amended by the

Food Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC

Reauthorization Act of 2008 ("CRA")), § 13102, 122 State. 1651 (enacted June 18, 2008), to be

codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C), with respect to acts occurring on or after June 18, 2008;

Sections 4c(b), 4m(1), 4n(4), and 4*o*(1) (B) of the Act, as amended by the CRA, to be codified at

7 U.S.C. §§ 6c(b), 6m(1), 6n(4), and 6*o*(1)(B), and Commission Regulations 4.13(b)(2),

4.13(b)(4), 4.22, and 33.10(a) and (c), 17 C.F.R. §§ 4.13(b)(2), 4.13(b)(4), 4.22, and 33.10(a) and

(c) (2005).

8.     By dint of this conduct and the further conduct described herein, ROF, through Reisinger, has engaged, are engaging, or are about to engage in acts and practices in violation of: Sections 4m(1), 4n(4), and 4o(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6m(1), 6n(4), and 6o(1)(B), and Commission Regulation 4.22, 17 C.F.R. § 4.22 (2005).

9.     Reisinger committed the acts, omissions and failures described herein within the course and scope of her employment at or agency with ROF; therefore, ROF is liable under Section 2(a)(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(a)(1)(B), and Commission Regulation 1.2, 17 C.F.R. § 1. 2 (2005), for Reisinger's acts, omissions and failures in violation of the Act and Commission Regulations.

10.     Defendant ROF was organized by Larry Alan Matthews ("Matthews"), James E. Green ("Green") and Nancy Belle Vinson Dadey (Defendant Reisinger's deceased mother) ("Dadey"), and managed by Reisinger. ROF is listed in NCCN's corporate records as the sole "managing member" of NCCN. Reisinger was a controlling person of ROF and failed to act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations alleged herein. Reisinger is therefore liable for the unlawful conduct of ROF and its violations of the Act and Commission Regulations, pursuant to Section 13(b) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13c(b).

11.     Accordingly, the U.S. Commodity Futures Trading Commission ("CFTC" or "Commission") brings this action pursuant to Section 6c of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1, to enjoin Reisinger's and ROF's (collectively the "Defendants") unlawful acts and practices and to compel their compliance with the Act and Commission Regulations. In addition, the CFTC seeks restitution, disgorgement, rescission of participant

agreements, civil monetary penalties and such other equitable relief as this Court may deem necessary or appropriate.

12.     Unless restrained and enjoined by this Court, the Defendants are likely to engage in the acts and practices alleged in this Complaint or in similar acts and practices, as described more fully *infra*.

## II.     JURISDICTION AND VENUE

13.     Section 6c of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1, authorizes the CFTC to seek injunctive relief against any person whenever it shall appear to the CFTC that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder.

14.     This Court has jurisdiction over this action pursuant to Section 6c of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1.

15.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1(e), because the Defendants resided and/or regularly conducted business within this District and the acts and practices in violation of the Order have occurred, are occurring, or are about to occur within this District.

## III.     THE PARTIES

16.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 1 *et seq*., and the Commission Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq*. (2010).

17. Defendant **Grace Elizabeth Reisinger** (NFA No.: 0317388) is an individual residing in Grand Island, Nebraska, who was a member of ROF during the relevant period. Reisinger, together with ROF, operated the NCCN pool from her residence in Nebraska utilizing an account at a futures commission merchant ("FCM") located in Chicago, Illinois. During the time Reisinger committed the violations of the Act and Commission Regulations, she was registered as an associated person ("AP") of Chicago, Illinois introducing broker ("IB") New World Holdings, LLC ("NWH"), and acted as its branch manager. Previously, Reisinger was registered as an AP, and acted as the branch manager of, International Futures Group LLC in 2004, and as an AP of Frontier Commodities LLC in 2002.

18. Defendant **ROF Consulting, LLC** was a limited liability corporation organized and managed under the laws of Alaska by Reisinger, Matthews, Green and Dadey on May 2, 2003 and had a business address of 8821 Gruenewald Lane, Charlotte, North Carolina 28221. ROF was dissolved on or about February 2, 2009. ROF has never been registered with the Commission in any capacity.

### IV.    OTHER RELEVANT ENTITIES AND PERSONS

19. **NCCN, LLC** was a limited liability corporation organized under the laws of the State of Nevada on or about October 14, 2004, and operated by Reisinger, Matthews Green, and Dadey. NCCN's sole managing member was listed as ROF in its corporate formation documents. NCCN was dissolved on or about October 31, 2009. NCCN has never been registered with the Commission in any capacity.

20. **Larry Alan Matthews** (NFA ID: 0389665) is an individual residing at Gruenewald Lane, Charlotte, North Carolina, who was a member of ROF during the relevant

period.  During the relevant time period through the present, Matthews was registered as an AP, and acted as the principal of, Sondial Timepeace LLC (NFA ID: 0389295), as registered IB.

21.    **James E. Green** is an individual residing at Fallon Circle, San Diego, California. Green was a member of ROF during the relevant period.  Green has never been registered with the Commission in any capacity.

## V.    FACTS

### A.    Statutory and Regulatory Background

22.    Commission Regulation 4.10(d)(1), 17 C.F.R. § 4.10(d)(1) (2005), defines a pool as "any investment trust, syndicate or similar form of enterprise operated for the purpose of trading commodity interests."

23.    Section 1a(5) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 1a(5), defines a CPO as "any person engaged in the business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility. . . ."

24.    Section 4m of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6m, prohibits anyone acting as a CPO from making use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO unless registered with the Commission in such capacity.

25.    Commission Regulation 4.13(a)(4), 17 C.F.R. § 4.13(a)(4) (2005), provides, in pertinent part, that a person is not required to register under the Act as a CPO if: (i) interests in

the pool are exempt from registration under the Securities Act of 1933, and such interests are

offered and sold without marketing to the public in the United States; (ii) the person reasonably

believes, at the time of investment: (A) each natural person participant is a QEP at that term is

defined in Commission Regulation 4.7(a)(2); and (B) each non-natural person participant is a

QEP as that term is defined in Commission Regulation 4.7(a)(2) or an "accredited investor" as

that term is defined in § 230.501(a)(1)-(3), (a)(7) and (a)(8).

26.     Commission Regulation 4.13(a)(5), 17 C.F.R. § 4.13(a)(5) (2005), provides in

pertinent part:

> (i)     Eligibility for exemption under this section is subject to the person furnishing in
> writing to each prospective participant in the pool:
> (A)     A statement that the person is exempt from registration with the Commission as a
> commodity pool operator and that therefore, it is not required to deliver a Disclosure
> Document and a certified annual report to participants in the pool; and
> (B)     A description of the criteria pursuant to which it qualifies for such exemption
> from registration….[1]

27.     Section 4o(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C.

§§ 6o(1)(B), prohibits any CPO, or AP of a CPO, to engage in any transaction, practice or course

of business which operates as a fraud or deceit upon any client or participant or prospective

client or participant.

28.     It is a violation of the Act for any person, in or in connection with any order to

make, or the making of, any on-exchange futures contract, for or on behalf of any other person:

(i) to cheat or defraud or attempt to cheat or defraud such other person; or (iii) willfully to

deceive or attempt to deceive such other person by any means whatsoever in regard to any such

order or contract or the disposition or execution of any such order or contract, or in regard to any

---

[1] In 2007, the CFTC amended the Commission Regulations "to require that notices of exemption or exclusion under Part 4 of the Commission's regulations submitted to [NFA] be filed electronically." 72 F.R. 1658 (2007). Pursuant to these amendments, the Commission revised Regulation 4.13(a)(5) solely to replace "furnishing in writing" with "furnishing in written communication physically delivered or delivered through electronic transmission." *Compare* 17 C.F.R. § 4.13(a)(5) (2004) *with* 17 C.F.R. § 4.13(a)(5) (2010).

act or agency performed with respect to such order or contract for such person. Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii) (2006) (with respect to conduct before June 18, 2008); and Section 4b(a)(1)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A) and (C) (with respect to conduct on or after June 18, 2008).[2]

29. Section 4c(b) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6c(b), in pertinent part, makes it a violation to offer to enter into, or enter into, any options transaction contrary to any provision of the Act or Commission Regulations.

30. Section 4n(4) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6n(4), requires every CPO to "regularly furnish" each pool participant with complete account statements as "prescribed by the Commission."

31. Commission Regulation 4.22, 17 C.F.R.§ 4.22 (2005), prescribes in pertinent part that CPOs operating pools must distribute to each pool participant Account Statements, which shall include Statements of Income (Loss) and Statements of Changes in Net Asset Value - pools with net assets in excess of $500,000 must distribute Account Statements on a monthly basis. CPOs must also distribute to each pool participant Annual Reports, which shall include: the pool's net asset value (and net asset value per outstanding unit or the total value of each participant's interest) at the end of the two preceding fiscal years; Statement of Financial Condition for the pool's fiscal year and preceding fiscal year; Statements of Income (Loss); Changes in Financial Position; and Changes in Ownership Equity.

---

[2] The June 2008 legislation reauthorizing the CFTC revised Section 4b of the Act, among other things. *See* Section 1302 of the CRA. The objective of the revision was to "clarify that the CEA gives the Commission the authority to bring fraud actions in off-exchange 'principal-to-principal' futures transactions." H.R. REP. NO. 2419, at 981 (2008) (Conf. Rep.). While the CRA did not change the Act's prohibition on misconduct such as that at issue here, it reorganized Section 4b so that similar misconduct occurring on or after June 18, 2008 would be in violation of Section 4b(a)(1)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A) and (C).

32.     Commission Regulation 4.22(a)(1)(i)-(vii), 17 C.F.R. §§ 4.22(a)(1)(i)-(viii)

(2005) provides that that a pool's Statements of Income (Loss) must separately itemize the

following information:

> (i) The total amount of realized net gain or loss on commodity interest positions
> liquidated during the reporting period; (ii) The change in unrealized net gain or
> loss on commodity interest positions during the reporting period; (iii) The total
> amount of net gain or loss from all other transactions in which the pool engaged
> during the reporting period, including interest and dividends earned on funds not
> paid as premiums or used to margin the pool's commodity interest positions; (iv)
> The total amount of all management fees during the reporting period; (v) The total
> amount of all advisory fees during the reporting period; (vi) The total amount of
> all brokerage commissions during the reporting period; (vii) The total amount of
> other fees for commodity interest and other investment transactions during the
> reporting period; and (viii) The total amount of all other expenses incurred or
> accrued by the pool during the reporting period.

33.     Commission Regulation 4.22(a)(2)(i)-(vi), 17 C.F.R. §§ 4.22(a)(1)(i)-(vi) (2005)

provides that a pool's Statements of Changes in Net Asset Value must separately itemize the

following information:

> (i) The net asset value of the pool as of the beginning of the reporting period; (ii)
> The total amount of additions to the pool, whether voluntary or involuntary, made
> during the reporting period; (iii) The total amount of withdrawals from and
> redemption of participation units in the pool, whether voluntary or involuntary,
> for the reporting period; (iv) The total net income or loss of the pool during the
> reporting period; (v) The net asset value of the pool as of the end of the reporting
> period; and (vi)(A) The net asset value per outstanding participation unit in the
> pool as of the end of the reporting period, or (B) The total value of the
> participant's interest or share in the pool as of the end of the reporting period.

34.     Commission Regulation 4.13(b)(2), 17 C.F.R. § 4.13(b)(2) (2005), provides in

pertinent part that any person who desires to claim the relief from CPO registration provided by

Commission Regulation 4.13 "must file the notice by no later than the time it delivers a

subscription agreement for the pool to a prospective participant in the pool."

35.     Commission Regulation 4.13(b)(4), 17 C.F.R. § 4.13(b)(4) (2005), provides in

pertinent part:

> Each person who has filed a notice of exemption from registration under this section must, in the event that any of the information contained or representations made in the notice becomes inaccurate or incomplete, file a supplemental notice with the National Futures Association to that effect which, if applicable, includes such amendments as may be necessary to render the notice accurate and complete. This supplemental notice must be filed within 15 business days after the pool operator becomes aware of the occurrence of such event.[3]

36.     Commission Regulation 33.10(a) and (c), 17 C.F.R. § 33.10(a) and (c) (2010), makes it a violation for any person, directly or indirectly, in connection with an offer to enter into, or the entry into any option transaction, to: (a) cheat, defraud, or attempt to cheat or defraud any other person; or (c) deceive or attempt to deceive any other person by any means whatsoever.

### B.    Organization and Management of ROF and NCCN

37.     On May 2, 2003, Reisinger, among others, organized ROF as a limited liability corporation under the laws of the state of Alaska. The articles of incorporation identified the mailing address and principal business office of ROF as Matthews' personal address at Gruenewald Lane, Charlotte, North Carolina. The Defendants regularly conducted business in Chicago, Illinois by utilizing an FCM located in Chicago, and attending business meetings in Chicago, among other things.

38.     On October 14, 2004, NCCN was organized as a limited liability company under the laws of the state of Nevada by Reisinger, and the other members of ROF. The articles of organization filed with the state of Nevada were signed by Green. At the time NCCN was organized, ROF and Sun Coast Investments & Consulting, Inc. were its sole members. Sun

---

[3] As part of the CFTC's 2007 revision of Part 4 of the Commission Regulations to require electronic filing (*see supra* note 1 and 72 F.R. 1658 (2007)), the Commission also revised Regulation 4.13(b)(4) solely to require CPOs to "amend the notice through National Futures Association's electronic exemption filing system" rather than file a "supplemental notice." *Compare* 17 C.F.R. § 4.13(b)(4) (2004) *with* 17 C.F.R. § 4.13(b)(4) (2010).

Coast Investments & Consulting, Inc. was subsequently removed as a member of ROF, leaving the then-four members of ROF as the *de facto* controllers of NCCN.

**C.    Solicitations to Pool Participants**

39.    Beginning on or about February 28, 2005, Reisinger, individually and on behalf of ROF, solicited prospective pool participants, by use of the mails and otherwise, and accepted at least $4 million from participants for deposit in the NCCN pool through interstate wires and checks.

40.    Reisinger sent some prospective participants a "Prospective Client Questionnaire" on NCCN letterhead. Reisinger stated in sworn testimony before the Commission that all prospective pool participants to whom materials were sent received the same solicitation materials.

41.    Reisinger made material misrepresentations to these prospective and actual pool participants, including but not limited to the following: (1) that only QEPs would be allowed to participate in the NCCN pool; (2) that Reisinger was exempt from the requirement to register as the CPO of the NCCN pool; and (3) that the minimum required deposit in the NCCN pool was $5,000,000.

42.    All of these misrepresentations to these prospective and actual pool participants were material and false.

**D.    False Representations, Operating a Pool Without Registration, and Violations of Commission Regulation 4.13(b)(2)**

43.    Prior to March 1, 2005, as part of her solicitations to potential pool participants, both individually and on behalf of ROF, Reisinger delivered subscription agreements for the NCCN pool to some prospective pool participants. Reisinger represented to these prospective and actual pool participants that she would operate the NCCN pool as an exempt CPO. During

the relevant period, neither Reisinger nor ROF possessed a legitimate exemption from registration as a CPO. Consequently, Reisinger's representations that she would operate the NCCN as an exempt pool operator constituted false statements.

44. Beginning on or about March 1, 2005, NCCN pool participants who received written solicitations began executing standardized subscription agreements for the pool to prospective pool participants titled "Client Services Agreement," and forwarding funds to the Defendants. This document authorized NCCN to pool the participants' funds to trade a variety of financial instruments, including commodity futures contracts and options on futures contracts. Not all participants were sent these documents or written disclosures concerning Reisinger's claimed exemption, as discussed more fully *infra*.

45. As noted above, a person claiming an exemption from registration as a CPO pursuant to Commission Regulation 4.13 must file a notice of exemption with the National Futures Association (NFA) by no later than the time it delivers a subscription agreement to a prospective pool participant. On or about June 24, 2005, Reisinger filed a notice of exemption with the NFA claiming she was exempt from the requirement to register as a CPO under Commission Regulation 4.13(a)(4), 17 C.F.R. §4.13(a)(4) (2005). To obtain the exemption from registration as a CPO, Reisinger represented that she reasonably believed at the time of investment that each "natural" and "non-natural" person participating in the pool was a QEP.

46. On or about May 6, 2005, approximately six weeks prior to filing with the NFA her notice of exemption from the requirement to register as a CPO, Reisinger opened a commodity trading account at the FCM Cadent Financial Services, LLC ("Cadent") in the name of NCCN; and NCCN began actively trading the account on behalf of pool participants on or about May 18, 2005.

47.     Throughout the relevant period, Reisinger and ROF, through Reisinger, directed NCCN's transactions involving futures contracts and options on futures contracts, among other financial instruments.

48.     Contrary to the claimed basis for an exemption that Reisinger set forth in her notice of exemption filed with the NFA, Reisinger admitted in sworn testimony before the Commission that she deposited funds into the NCCN pool's account at Cadent from participants whom she did not know whether or not they were QEPs.

49.     While acting as the CPOs of the NCCN pool, Reisinger and ROF accepted at least $2 million from participants that Reisinger did not know whether or not they were QEPs.

50.     Despite Reisinger's representations to pool participants that the "minimum investment required per entity was $5,000,000," none of the known participants in the NCCN pool ever invested $5,000,000.

51.     At no time during the relevant period did ROF file a notice claiming exemption from the requirement to register as a CPO, nor did it register as a CPO with the Commission.

52.     Reisinger represented in documents filed with the NFA that she "reasonably believes" that each "natural" and "non-natural" person participating in the NCCN pool was a QEP at the time of investment.  On that basis, the NFA granted Reisinger's claimed exemption from the requirement to register as a CPO on or about June 24, 2005, the date that NFA received her claimed exemption.

53.     Therefore, from:

(a) at least March 1, 2005 to June 24, 2005, Reisinger acted as a CPO of NCCN, without the benefit of registration or claimed exemption from the requirement to register as a CPO, and from

at least June 24, 2005 to October 26, 2009, Reisinger acted as a CPO of NCCN, without the

benefit of registration or valid exemption from the requirement to register as a CPO

(b) at least March 1, 2005 to October 26, 2009, ROF acted as a CPO of NCCN, without the

benefit of registration or exemption from the requirement to register as a CPO; and

(c) at least June 24, 2005 to October 26, 2009, Reisinger defrauded prospective and actual

participants by claiming that the NCCN pool would be operated by her and ROF as exempt

CPOs, because she knew or reasonably should have known that the exemption granted to her was

obtained under false pretenses.

54.     In addition, Reisinger violated Commission Regulation 4.13(b)(2), 17 C.F.R. §

4.13(b)(2) (2005).  That regulation provides, in pertinent part, that any person who desires to

claim the relief from registration as a CPO provided by Commission Regulation "must file the

notice [of exemption to the NFA] no later than the time it delivers a subscription agreement for

the pool to a prospective participant in the pool…."  Reisinger's failure to file the notice prior to

operating the NCCN pool violated that Commission regulation.

55.     Moreover, Reisinger failed to comply with the provisions of Commission

Regulation 4.13(b)(4), 17 C.F.R. § 4.13(b)(4) (2005).  That regulation provides, in pertinent part,

that: "Each person who has filed a notice of exemption from registration under this section must,

in the event that any of the information contained or the representations made in the notice

becomes inaccurate or incomplete, amend the notice through National Futures Association's

electronic exemption filing system as may be necessary to render the notice accurate and

complete.  This amendment must be filed electronically within 15 business days after the pool

operator becomes aware of the occurrence of such event."

56.     At no time during the relevant period did Reisinger file an amended notice of exemption from the requirement to register as a CPO notifying the NFA that her claimed exemption was both inaccurate and not filed prior to the time subscription agreements for the pool were delivered to prospective participants, as required by Commission Regulation 4.13(b)(4), 17 C.F.R. § 4.13(b)(4) (2005).

57.     Moreover, Reisinger was not eligible for her claimed exemption because she failed to provide all participants in the pool with the written statements required to be provided pursuant to Commission Regulation 4.13(a)(5)(i)(A) and (B), 17 C.F.R. § 4.13(a)(5)(i)(A) and (B) (2005).  When asked about her earlier sworn testimony in which she stated that she did not know whether or not various NCCN participants qualified as QEPs, Reisinger testified that she had no knowledge of the participants prior to depositing their funds into the pool's account at Cadent.   Because she had no knowledge of these participants prior to depositing their funds into the pool's account at Cadent, Reisinger perforce never provided them with the written statements mandated by Regulation 4.14(a)(5)(i) as a condition precedent for claiming eligibility for an exemption under Regulation 4.13.

### E.     Reisinger Omitted Material Facts from Actual and Prospective Pool Participants and Violations of Reporting Requirements

58.     Throughout the relevant period, Reisinger and ROF, through Reisinger, caused periodic statements to be issued to participants in the NCCN pool.  In communications with pool participants via these monthly statements and otherwise, Reisinger omitted material facts, including but not limited to, that: (1) neither Reisinger nor ROF held a valid exemption from the requirement to register as CPOs of NCCN; (2) Reisinger and ROF were operating the NCCN pool while not registered as CPOs as required by the Act; (3) non-QEPs were participating in the NCCN pool and contributed at least $2 million to the pool which was commingled with the funds

of QEPs in the pool; and (4) none of the NCCN pool participants invested the $5,000,000 that Reisinger had previously represented as the required minimum investment to participate in the pool.

59.     Reisinger admitted in testimony under oath before the Commission that she and ROF, as CPOs of the NCCN pool, failed to provide pool participants with annual reports, and failed to provide monthly account statements in the statutorily prescribed format throughout the relevant period.  Reisinger also admitted in testimony under oath before the Commission that she paid David John Hobbs ("Hobbs") "foreign introducing broker" referral fees, the payment of which she failed to disclose to pool participants.

60.     Specifically, Reisinger admitted in sworn testimony under oath before the Commission that, through all reporting periods, she failed to furnish pool participants with separately itemized statements for the amounts of NCCN's net gains or losses, changes in unrealized net gains or losses, management fees, advisory fees, brokerage commissions, and other fees and expenses.

61.     All of these failures to provide reports and to disclose information to actual and prospective pool participants were material.

**F.      Reisinger was a Controlling Person of ROF**

62.     Reisinger admitted during her testimony under oath that she was one of the individuals responsible for handling the day-to-day business operations of ROF, and through ROF controlled NCCN.  Reisinger further admitted in her testimony that she was a managing

member and employee of ROF during the relevant period.[4]  As Reisinger controlled ROF, she

perforce controlled the NCCN pool.

63.    Reisinger received periodic payments from ROF's Bank of America account, and

was one of the individuals responsible for causing ROF and NCCN to be incorporated in Alaska

and Nevada, respectively.  Reisinger shared the costs of the business operations of ROF and

NCCN, and shared any profits realized by the operations of ROF and NCCN with Matthews and

Green.  Reisinger routinely held conference calls with Matthews and Green to discuss the

operation of the NCCN pool and the participation of the various pool participants.

64.    In her capacity as a CPO of NCCN, Reisinger opened a commodity trading

account in the name of NCCN at the FCM Cadent on May 6, 2005 with an initial deposit of $1

million, and it was through this account that transactions involving futures contracts and options

on futures contracts were effected on behalf of the pool.  Although both Matthews and Green

sent Reisinger emails specifically authorizing her to sign their respective names on Cadent's

account opening documents, only Reisinger's and Matthews' signatures appear on the NCCN

account opening documents.  On May 18, 2005, the commodity trading account in NCCN's

name at Cadent began its first transactions involving futures contracts and options on futures

contracts.

65.    Through the use of the mail, emails and telephone calls, Reisinger routinely

controlled deposits into and withdrawals out of the NCCN account at Cadent, personally

communicated with the QEPs and non-QEPs that comprised the participants of the pool via

periodic reports, communicated with Matthews and Green concerning the operation of ROF and

NCCN, and directed – through commodity trading advisors ("CTA") - all trading of the pool's

---

[4] Matthews and Green were also managing members of ROF during the relevant period, and Dadey became a
managing member prior to her death.

funds held in the account in its name at Cadent. All monthly statements associated with this account were sent to Reisinger at her residence.

## VII. VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT ONE

**VIOLATIONS OF SECTION** 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii) **(2006), WITH RESPECT TO ACTS OCCURRING BEFORE JUNE 18, 2008, and SECTION 4b(a)(1)(A) and (C) OF THE ACT, AS AMENDED BY THE CRA, TO BE CODIFIED AT 7 U.S.C. § 6b(a)(1)(A) and (C), WITH RESPECT TO ACTS OCCURRING ON OR AFTER JUNE 18, 2008:**
**Fraud in Connection with On-Exchange Futures Contracts**

66. The allegations set forth in paragraphs 1 through 65 are realleged and incorporated herein by reference.

67. During the relevant period, Defendant Reisinger made material misrepresentations and/or omissions to participants and/or prospective participants, all in violation of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii) (2006), with respect to acts occurring before June 18, 2008, and Section 4b(a)(1)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A) and (C), with respect to acts occurring on or after June 18, 2008, including but not limited to:

a.  Misrepresenting that Reisinger was exempt from the requirement to register as a CPO;

b.  Misrepresenting that only QEPs would participate in the pool;

c.  Misrepresenting that the minimum amount required to participate in the pool was $5 million;

   d.   Failing to advise actual and prospective pool participants that neither Reisinger nor ROF were registered as CPOs as required by the Act and were operating the NCCN pool without the required CPO registration;

   e.   Failing to advise actual and prospective pool participants that the notice of exemption from the requirement to register as a CPO Reisinger had filed was invalid;

   f.   Failing to advise actual and prospective pool participants that Reisinger had failed to amend her invalid notice of exemption from the requirement to register as a CPO as required by Commission Regulation 4.13(b)(4); and

   g.   Failing to advise actual and prospective pool participants of fee payments to Hobbs as an undisclosed "foreign introducing broker" fee.

68.    Defendant Reisinger, acting throughout the relevant period both individually and as the agent of ROF, engaged in the acts and practices described above willfully, knowingly or with reckless disregard for the truth.

69.    The foregoing acts, misrepresentations, omissions, and failures of Reisinger occurred within the scope of her employment, office or agency with ROF; therefore, ROF is liable for those acts, misrepresentations, omissions, and failures in violation of the Act and Commission Regulations pursuant to Section 2(a)(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(a)(1)(B), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2005).

70.    Each misrepresentation and/or omission of material fact and each false account statement, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(2)(i) and (iii) (2006), with respect to acts occurring before June 18, 2008, and Section 4b(a)(1)(A) and (C) of

the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A) and (C), with respect to

acts occurring on or after June 18, 2008.

## COUNT TWO

**VIOLATIONS OF SECTION 4c(b) OF THE ACT, AS AMENDED BY THE CRA, TO BE CODIFIED AT 7 U.S.C. § 6c(b), and COMMISSION REGULATION 33.10(a) and (c), 7 U.S.C. § 33.10(a) and (c) (2005): FRAUD IN CONNECTION WITH ON-EXCHANGE OPTIONS TRANSACTIONS**

71.     The allegations set forth in paragraphs 1 through 65 are realleged and incorporated

herein by reference.

72.     As set forth above, during the relevant period Defendant Reisinger made material

misrepresentations and/or omissions and made or caused to be made false statements or reports

to participants and/or prospective participants, all in violation of Section 4c(b) of the Act, as

amended by the CRA, to be codified at 7 U.S.C. § 6c(b), and Commission Regulation 33.10(a)

and (c), 17 C.F.R. § 33.10(a) and (c) (2005), including but not limited to:

a.    Misrepresenting that Reisinger was exempt from the requirement to register as a
   CPO;

b.   Misrepresenting that only QEPs would participate in the pool;

c.   Misrepresenting that the minimum amount required to participate in the pool was $5
   million;

d.   Failing to advise actual and prospective pool participants that neither Reisinger nor
   ROF were registered as CPOs as required by the Act and were operating the NCCN
   pool without the required CPO registration;

e.   Failing to advise actual and prospective pool participants that the notice of exemption
   from the requirement to register as a CPO Reisinger had filed was invalid;

  f. Failing to advise actual and prospective pool participants that Reisinger had failed to amend her invalid notice of exemption from the requirement to register as a CPO as required by Commission Regulation 4.13(b)(4); and

  g. Failing to advise actual and prospective pool participants of fee payments to Hobbs as an undisclosed "foreign introducing broker" fee.

73. Defendant Reisinger, acting throughout the relevant period both individually and as the agent of ROF, engaged in the acts and practices described above willfully, knowingly or with reckless disregard for the truth.

74. The foregoing acts, misrepresentations, omissions, and failures of Reisinger, occurred within the scope of her employment, office or agency with ROF; therefore, ROF is liable for those acts, misrepresentations, omissions, and failures in violation of the Act and Commission Regulations pursuant to Section 2(a)(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(a)(1)(B), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2005).

75. Each misrepresentation and/or omission of material fact and each false account statement, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4c(b) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §6c(b), and Commission Regulation 33.10(a) and (c), 17 C.F.R. § 33.10 (2005).

## COUNT THREE

## VIOLATIONS OF SECTION 4*o*(1)(B) OF THE ACT, AS AMENDED BY THE CRA, TO BE CODIFIED AT 7 U.S.C. § 6*o*(1)(B): FRAUD BY A COMMODITY POOL OPERATOR

76. The allegations set forth in paragraphs 1 through 65 are realleged and incorporated herein by reference.

77.     As set forth above, during the relevant period, Reisinger and ROF, through Reisinger, made or caused to be made to participants and prospective participants misrepresentations and/or omissions of material fact and false reports or statements, all in violation of Section 4$o$(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6$o$(B), including but not limited to:

a.     Misrepresenting that Reisinger was exempt from the requirement to register as a CPO;

b.     Misrepresenting that only QEPs would participate in the pool;

c.     Misrepresenting that the minimum amount required to participate in the pool was $5 million;

d.     Failing to advise actual and prospective pool participants that neither Reisinger nor ROF were registered as CPOs as required by the Act and were operating the NCCN pool without the required CPO registration;

e.     Failing to advise actual and prospective pool participants that the notice of exemption from the requirement to register as a CPO Reisinger had filed was invalid;

f.     Failing to advise actual and prospective pool participants that Reisinger had failed to amend her invalid notice of exemption from the requirement to register as a CPO as required by Commission Regulation 4.13(b)(4); and

g.     Failing to advise actual and prospective pool participants of fee payments to Hobbs as an undisclosed "foreign introducing broker" fee.

78.     The foregoing acts, misrepresentations, omissions, and failures of Reisinger, occurred within the scope of her employment, office or agency with ROF; therefore, ROF is liable for those acts, misrepresentations, omissions, and failures in violation of the Act and

79.     Reisinger controlled ROF, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, ROF's conduct alleged in this Complaint; therefore, pursuant to Section 13(b) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13c(b), Reisinger is liable for ROF's violations of Section 4$o$(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6$o$(1)(B).

80.     Each misrepresentation and/or omission of material fact and each false account statement, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4$o$(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6$o$(1)(B).

## COUNT FOUR

## VIOLATIONS OF SECTION 4m(1) OF THE ACT, AS AMENDED BY THE CRA, TO BE CODIFIED AT 7 U.S.C. § 6m(1): ACTING AS COMMODITY POOL OPERATORS WITHOUT REGISTRATION

81.     The allegations of paragraphs 1 through 65 are realleged and incorporated herein by reference.

82.     As set forth above, during the relevant period, in or in connection with their business as CPOs, Reisinger and ROF made use of the mails or a means or instrumentality of interstate commerce but were not registered as CPOs under the Act or entitled to a valid exemption from the requirement to register as CPOs, in violation of Section 4m(1) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6m(1).

83.     Reisinger controlled ROF, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, ROF's conduct alleged in this Complaint; therefore,

pursuant to Section 13(b) of the Act, as amended by the CRA, to be codified at 7 U.S.C.

§ 13c(b), Reisinger is liable for ROF's violations of Section 4m(1) of the Act, as amended by the

CRA, to be codified at 7 U.S.C. § 6m(1).

84.    Each use of the mails or a means or instrumentality of interstate commerce,

including but not limited to those specifically alleged herein, is alleged as a separate and distinct

violation of Section 4m(1) of the Act, as amended by the CRA, to be codified at 7 U.S.C.

§ 6m(1).

**COUNT FIVE**

**VIOLATIONS OF COMMISSION REGULATIONS 4.13(b)(2) and 4.13(b)(4), 7 U.S.C. §§ 4.13(b)(2) and 4.13(b)(4) (2005): FILING EXEMPTION NOTICE PRIOR TO DELIVERING SUBSCRIPTION AGREEMENTS AND FAILURE TO AMEND INVALID NOTICE OF EXEMPTION**

85.    The allegations of paragraphs 1 through 65 are realleged and incorporated herein

by reference.

86.    As set forth above, Reisinger claimed exemption from the requirement to register

as a CPO pursuant to Commission Regulation 4.13(a)(4), 17 C.F.R. § 4.13(a)(4) (2005), when

she was not entitled to such an exemption.

87.    Reisinger filed her notice of exemption from the requirement to register as a CPO

with the NFA subsequent to the time she delivered subscription agreements for the NCCN pool

to prospective pool participants, in violation of Commission Regulation 4.13(b)(2), 17 C.F.R. §

4.13(b)(2) (2005).

88.    Reisinger was not eligible for her claimed exemption because she failed to provide

all participants in the pool with the written statements required to be provided to all participants

pursuant to Commission Regulation 4.13(a)(5)(i)(A) and (B), 17 C.F.R. § 4.13 (2005), a

89. In addition, Reisinger failed to amend the notice of her claimed exemption from the requirement to register as the CPO of the NCCN pool she had filed with the NFA, after more than 15 days had elapsed since the time of the event making an amendment mandatory, in violation of Commission Regulation 4.13(b)(4), 17 C.F.R. § 4.13(b)(4) (2005).

90. The foregoing acts, misrepresentations, omissions, and failures of Reisinger, occurred within the scope of her employment, office or agency with ROF; therefore, ROF is liable for those acts, misrepresentations, omissions, and failures in violation of Commission Regulation pursuant to Section 2(a)(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(a)(1)(B), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2010).

91. Each invalid claim to exemption from the requirement to register as a CPO is alleged as a separate and distinct violation of Commission Regulation 4.13(a)(4), 17 C.F.R. § 4.13(a)(4) (2005).

92. Each failure to give notice of the invalidity of her claimed exemption from the requirement to register as a CPO of the NCCN pool is alleged as a separate and distinct violation of Commission Regulation 4.13(b)(4), 17 C.F.R. § 4.13(b)(4) (2005).

**COUNT SIX**

**VIOLATIONS OF SECTION 4n(4) OF THE ACT, AS AMENDED BY THE CRA, TO BE CODIFIED AT 7 U.S.C. § 6n(4), AND COMMISSION REGULATION 4.22, 7 U.S.C. § 4.22 (2005): FAILURE TO FURNISH ACCOUNT STATEMENTS AND ANNUAL REPORTS**

93. The allegations of paragraphs 1 through 65 are realleged and incorporated herein by reference.

94.     As set forth above, Reisinger admitted in testimony under oath before the Commission that she and ROF, as CPOs of the NCCN pool, failed to provide pool participants with the statutorily prescribed annual reports and/or account statements throughout the relevant period.  Reisinger and ROF, through Reisinger, therefore violated Section 4n(4) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6n(4), and Commission Regulation 4.22, 17 C.F.R. § 4.22 (2005).

95.     The foregoing acts, misrepresentations, omissions, and failures of Reisinger to provide pool participants with annual reports and/or monthly account statements, occurred within the scope of her employment, office or agency with ROF; therefore, ROF is liable for those acts, misrepresentations, omissions, and failures in violation of the Act and Commission Regulation pursuant to Section 2(a)(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(a)(1)(B), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2005).

96.     Reisinger controlled ROF, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, ROF's conduct alleged in this Complaint; therefore, pursuant to Section 13(b) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13c(b), Reisinger is liable for ROF's violations of Section 4n(4) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6n(4), and Commission Regulation 4.22, 17 C.F.R. § 4.22 (2005).

97.     Each failure to furnish annual reports and/or monthly account statements is alleged as a separate and distinct violation of Section 4n(4) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6n(4), and Commission Regulation 4.22, 17 C.F.R. § 4.22 (2005).

## VIII.   RELIEF REQUESTED

**WHEREFORE**, the CFTC respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and pursuant to its own equitable powers, enter:

1.      An order finding that Reisinger and ROF violated: Section 4b(a)(2)(i) and (iii) of the Act, with respect to acts occurring before June 18, 2008, Section 4b(a)(1)(A) and (C) of the Act, as amended by the CRA, with respect to acts occurring on or after June 18, 2008; Sections 4c(b), 4m(1), 4n(4), and 4*o*(1)(B) of the Act, as amended by the CRA; and Commission Regulations 4.13(a)(4), 4.13(b)(2), 4.13 (b)(4), 4.22, and 33.10(a) and (c);

2.      An order of preliminary injunction prohibiting Reisinger and ROF and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with either of them who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

      a.      Engaging in conduct in violation of Sections 4b(a)(1)(A) and (C), 4c(b), 4m(1), 4n(4), and 4*o*(1)(B) of the Act, as amended by the CRA and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ) ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6c(b), 6m(1), 6n(4), and 6*o*(1)(B), and Commission Regulations 4.13(a)(4), 4.13(b)(2), 4.13(b)(4), 4.22, and 33.10(a) and (c) (2010); and

      b.      Engaging in, controlling, or directing the trading of any account involving commodity futures, options on commodity futures, commodity options (as that term is defined in Commission Regulation 32.1(b)(1)) ("commodity options"), and/or foreign currency (as described in Section 2(c)(2)(C)(i) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(i) ("forex contracts") on their own behalf or for or on behalf of any other person or entity, whether by power of attorney or otherwise.

3.      An order of permanent injunction prohibiting Reisinger and ROF and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with either of them, including any successor thereof, from engaging, directly or indirectly in any conduct that violates Sections 4b(a)(1)(A) and (C), 4c(b), 4m(1), 4n(4), and 4*o*(1)(B) of the Act, as amended, and/or Commission Regulations 4.13(a)(4), 4.13(b)(2), 4.13(b)(4), 4.22, and 33.10(a) and (c) (2010);

4.      An order of permanent injunction prohibiting Defendants Reisinger and ROF and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with Defendants, including any successor thereof, from engaging, directly or indirectly, in:

      a.   trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a);

      b.   entering into any transactions involving commodity futures, options on commodity futures, commodity options, and/or forex contracts for their own personal account or for any account in which they have a direct or indirect interest;

      c.   having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on her behalf;

      d.   controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

      e.   soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

      f.   applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010); and

      g.   acting as a principal (as that term is defined in Commission Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2010)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010).

5.      An order rescinding the participant agreements and directing Defendants to make full restitution to every person or entity whose funds Defendants received or caused another person or entity to receive as a result of acts and practices that constituted the violations of the Act and Commission Regulations, as described herein, and pre-judgment interest thereon from the date of such violations and post-judgment interest;

6.      An order requiring Defendants to disgorge to any officer appointed or directed by the Court all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act and Commission Regulations as described herein, including pre- and post-judgment interest;

7.      An order directing Defendants to pay a civil monetary penalty in the amount of the higher of $130,000 for each violation of the Act or Commission Regulations committed or triple the monetary gain to Defendants for each violation of the Act or Commission Regulations described herein occurring before October 23, 2008, and a civil monetary penalty in the amount of the higher of $140,000 for each violation of the Act or Commission Regulations committed or triple the monetary gain to Defendants for each violation of the Act or Commission Regulations described herein occurring on or after October 23, 2008, plus post-judgment interest;

8.      An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

9.      Such other and further relief as the Court deems proper.

Respectfully submitted

Date: June 27, 2011

/s/Tracey Wingate
Admitted Pro Hac Vice
Trial Attorney
U.S. Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581
twingate@cftc.gov
Telephone: (202) 418-5319
FAX:       (202) 418-5523

Timothy J. Mulreany
Chief Trial Attorney
(202) 418-5306
tmulreany@cftc.gov

Sophia Siddiqui
Trial Attorney
(202) 418-6774
ssiddiqui@cftc.gov