IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. Commodity Futures Trading Commission,<br><br>     Plaintiff,<br><br>     v.<br><br>Grace Elizabeth Reisinger and ROF Consulting, LLC,<br><br>     Defendants. | Judge Joan B. Gottschall<br><br>No. 11 C 8567 |

**PLAINTIFF U.S. COMMODITY FUTURES
TRADING COMMISSION'S RESPONSE TO DEFENDANT REISINGER'S
STATEMENT OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56, Local General Rules 56.1(a) and 56.1(b), and the Honorable Joan B. Gottschall's Standing Order Regarding Motions for Summary Judgment, Plaintiff U.S. Commodity Futures Trading Commission ("Commission") hereby responds to Defendant Reisinger's Statement of Material Facts and states Plaintiff's Additional Material Facts as follows:

A. <u>Plaintiff's Responses to Defendant Reisinger's Statement of Material Facts</u>

1. Plaintiff Commodity Futures Trading Commission ("CFTC") is an independent federal regulatory agency that is charged with administering and enforcing the Commodity Exchange Act. Tab A – Complaint, para. 16.

 Response: Undisputed.

2. Defendant Grace Elizabeth Reisinger is an individual residing in Grand Island, Nebraska. Tab A – Complaint, para. 17.

   Response: Undisputed.

3. Reisinger was a member of defendant ROF Consulting, LLC ("ROF"). Tab A – Complaint, para. 17.

   Response: Undisputed.

4. Reisinger was an associated person and branch manager for New World Holdings, LLC, an introducing broker in Chicago, Illinois. Tab A – Complaint, para. 17.

   Response: Undisputed.

5. Prior to becoming an associated person for NWH, Reisinger was an associated person of two other firms, beginning in 2002. Tab A – Complaint, para. 17.

   Response: Undisputed.

6. Defendant ROF was a limited liability company. Tab A – Complaint, para. 18.

   Response: Undisputed.

7. The court has jurisdiction over this action pursuant to section 6c of the Commodity Exchange Act, 7 U.S.C. § 13a-1, because it was brought by the CFTC to seek relief for alleged violations of the Commodity Exchange Act or regulations thereunder. Tab A – Complaint, paras. 11, 13.

   Response: Undisputed.

8. Venue is proper in this District because the defendants conducted business in this District. Tab A – Complaint, para. 37.

   Response: Undisputed.

9. National Futures Association ("NFA") administers the registration system for the CFTC. Tab B – CFTC Regulation 3.2.

   Response: Undisputed.

10. NFA received from Reisinger a written claim for exemption from commodity pool operator ("CPO") registration dated May 5, 2005, (the "Exemption Claim"). Tab C – NFA Exhibit 1; Tab D – Deposition of Michelle Spight, p. 12, lines 8-20.

    Response: It is undisputed that defendant Reisinger submitted an Exemption Claim for herself, which was dated May 5, 2005, to NFA. Facts, para. 10; Tab D – Spight Dep. 12:8-20. The Commission affirmatively states that the NFA received the Exemption Claim on or around June 24, 2005. *See id.*

11. The Exemption Claim is stamped "Received NFA Compliance June 24, 2005." Tab C – NFA Ex. 1.

    Response: Undisputed.

12. When the Exemption Claim was processed by NFA, NFA's employee who reviewed the Exemption Claim for accuracy determined that the language was accurate to claim the exemption from CPO registration. Tab D – Deposition of Michelle Spight, p. 15, line 24 – p. 16, line 9.

    Response: It is undisputed that that NFA employee reviewed the Exemption Claim to confirm that it contained "[t]he language that the exemption should hold, which is from the commodity futures book," accurately set forth that language, and contained a signature and contact phone number. See Defendant's Tab D – Deposition of Michelle Spight, p. 15:24 –16:19. Plaintiff disputes that the NFA employee "reviewed the

Exemption Claim for accuracy" Tab 10 – testimony of Michelle Spight dated September 13, 2012, p. 15, line 24, p. 16, lines 1-15

13. The Exemption Claim identified the name of the exempt commodity pool as NCCN, LLC (the "NCCN Pool"). Tab C – NFA Ex. 1.

    Response: It is undisputed that in the Exemption Claim, Reisinger identifies the pool name as "NCCN LLC an Nevada LLC," as to NCCN,LLC being an exempt pool, disputed - See Tab 8 – Reisinger's CPO Exemption, p. 1.

14. In the Exemption Claim, Reisinger stated that she reasonably believed each natural person participant in the NCCN Pool was a "qualified eligible person" ("QEP") as defined in 4.7(a)(2). Tab C – NFA Ex. 1.

    Response: It is undisputed that Reisinger so stated. It is disputed that Reisinger's purported believe was, in fact, reasonable.

15. In the Exemption Claim, Reisinger stated that she reasonably believed each non-natural person participant in the NCCN Pool was a QEP as defined in 4.7, or an "accredited investor" as defined in 230.501(a)(i)-(3)(a)(7) and (a)(8). Tab C – NFA Ex. 1.

    Response: It is undisputed that Reisinger so stated. It is disputed that Reisinger's purported believe was, in fact, reasonable.

16. The CFTC has identified the persons in the NCCN Pool which it alleges were not QEPs as persons who were located outside the United States. Tab F – CFTC Response to Interrogatory No. 8.

    Response: It is undisputed that the Commission has identified the following participants and locations based on information currently available: Integrity Plus Fund, Australia; Hunter Valley Transport, Ltd., Australia; G. P. Global Ltd., Australia; Secured Bond,

4

  Ltd. P. O. Box 4116, Oatley West, NSW, Australia; State Management Ltd, Suite 101, 58 High Street, Toowong, Queensland 4066, Australia; Tokaikolo Christian Church, P.O. Box 367, Nuku'alofa, Tonga; Quality Safety Management, Australia; and P.J.C.B. International, Ltd., Anguilla.

17. Donald Caffray was a California attorney who sent funds to the NCCN Pool from the Donald Caffray Client Trust Account. Tab F – CFTC Response to Interrogatory No. 6; Tab G – Reisinger Answer to Interrogatory No. 7.

  Response: Undisputed that Donald Caffray ("Caffray") was an attorney located in California. Undisputed that Caffray sent funds to the NCCN Pool, and that Caffray used his attorney client trust account at Bank of America to transmit funds.

B. <u>Plaintiff's Additional Material Facts</u>

  <u>Commission's Investigation</u>

1. On January 10, 2008, the CFTC received a request for assistance from the Australian Securities and Investments Commission ("ASIC") under the IOSCO MMOU to which the CFTC and ASIC are both signatories. Tab 16 -January 10, 2008 correspondence from ASIC to CFTC, p. 1; Tab 7 – declaration of George Malas, p.2, para.6.

2. ASIC sought assistance from the CFTC in obtaining information and records from a futures commission merchant, Cadent Financial Services, LLC ("Cadent"), in relation to the following accounts opened by Cadent: Idylic Solutions Ltd., PJCB International Ltd., Geneva Financial Ltd., David Hobbs, Brian Wood, Jimmy Truong, and David Collard. Id. ASIC advised that these persons and entities were part of its investigation of Super Save Superannuation Fund fraudulent scheme. *Id*. at para. 7.

3.  ASIC did not request any information concerning Defendant ROF Consulting, LLC, Defendant Grace Elizabeth Reisinger, NCCN, LLC, or any commodity pools associated with them. *Id*. at pp. 2-3, para. 8.

4.  Pursuant to the IOSCO MMOU to which the CFTC and ASIC are both signatories, on January 23, 2008 the Commission's Division of Enforcement issued a request for records to Cadent. Tab 17 – January 23, 2008 4g Request for records to Cadent Financial Services, LLC, pp. 1-2; Tab 7 – declaration of George Malas, p. 3, para.9.

5.  This request for records was limited to the persons and entities identified in paragraph number six (6), above, and required a response by February 4, 2008. *Id.*

6.  As a result of obtaining the information from ASIC of potential fraudulent activity associated with U.S. commodity accounts, the Commission opened an investigation of Idylic Solutions, Ltd. on January 24, 2008. *Id*. , p. 3, para. 10.

7.  On February 8, 2008, the Commission sent a request for documents to New World Holdings, LLC, the introducing broker who introduced the accounts for the persons and entities identified in ASIC's January 10, 2008 correspondence. *Id*.

8.  By March 6, 2008, the Commission had contacted counsel for the introducing broker who introduced the above accounts, New World Holdings, LLC, to determine if New World Holdings, LLC would agree to provide voluntary testimony to the Commission concerning the accounts opened by the persons and entities identified in ASIC's January 10, 2008 correspondence. *Id*. , p.3, para. 11.

9.  On May 20, 2008, the Commission took the testimony of Defendant Reisinger in her capacity as an associated person and branch manager of the introducing broker New World Holdings, LLC. For the first time during that testimony, NCCN, LLC was brought

6

to the attention of the Commission when NCCN, LLC was mentioned by Defendant Grace Elizabeth Reisinger as an entity in which she was a member. Tab 18 – testimony of Reisinger May 20, 2008, p. 25 at lines 2-10; Tab 7 – declaration of George Malas, p.3, para.12.

10. As of this date, the Commission had no other information concerning NCCN, LLC, had no information concerning ROF Consulting, LLC, and had no information of any potential violations by Reisinger or ROF of the Commodity Exchange Act or the regulations promulgated thereunder. Tab 7 – declaration of George Malas, pp. 3-4, para. 12.

11. On August 20, 2008, the Commission was contacted by Barry Taylor, ASIC's court appointed liquidator for its Super Save investigation. Tab 19 - August 20, 2008 email from Taylor. p. 1.

12. On or about August 21, 2002, the Commission was notified by Mr. Taylor that a U.S. resident named Donald B. Caffray may have been involved in the transfer of funds for the persons and entities identified in ASIC's January 10, 2008 correspondence. Tab 20 – August 21, 2008 email from Taylor, p. 1.

13. Taylor's August 21, 2008 email noted that these funds were "transferred to Mr. Caffray, then he would be instructed to on wire transfer these monies to the bank account of ROSS, LLC, and that ROSS, LLC would transfer the monies to the bank account of NCCN, LLC who would then transfer the funds to Cadent for the benefit of the NCCN Commodities Pool." *Id*.

14. Subsequently on August 21, 2008, Taylor advised that "ROSS, LLC" should have been identified as ROF Consultants, LLC. *Id*.

15. On September 23, 2008, the Commission took the testimony of Reisinger for the second time in an effort to develop additional information. Tab 7 – declaration of George Malas, p. 4, para. 14.

16. During the September 23, 2008 testimony, Reisinger was asked to explain the structure of NCCN, LLC, explain its history and business activities, and describe what involvement, if any, it has in the commodity markets. Tab 2 - p. 14, lines 3-7; p. 21, lines 16-21; p. 32, lines 20-22; p. 33, lines 1-10; p. 35, lines 21-22; p. 36, lines 1-6; p. 57, lines 19-22; p. 58, line 1, 13-18.

17. As a result of the additional information the Commission obtained from the September 23, 2008 testimony of Reisinger, the Commission began to investigate whether potential violations of the Commodity Exchange Act and the regulations promulgated thereunder had occurred in relation to the operation of the NCCN commodity pool. Tab 7 – declaration of George Malas, p. 4, para. 15.

18. ROF was a limited liability corporation organized and managed by Reisinger, among others. Tab 2 – testimony of Reisinger dated September 23, 2008, p. 14, lines 3-7, p. 21, lines 16-21; Tab 6 – records of Alaska Secretary of State concerning ROF Consultants, LLC, pp. 1-2.

19. Reisinger, along with ROF, operated a limited liability company known as NCCN, LLC ("NCCN"). Tab 3 – records of Nevada Secretary of State concerning NCCN, LLC, p. 2, para. 5.

20. NCCN was organized on October 14, 2004, and was dissolved on October 26, 2009. Tab 3, p. 2 & 9; Tab 7 – declaration of George Malas, p. 7, para. 19.

21. From the time NCCN became a commodity pool until the date it was dissolved, neither Reisinger nor ROF ever registered as a CPO. Tab 7 - declaration of George Malas, p. 8, para.21; Tab 11 - Defendant's Answer to Complaint at p. 5, para. 18; Tab 24 – certified records from National Futures Association, pp. 1-4.

22. Neither Reisinger nor ROF ever provided pool participants with the monthly Account Statements and Annual Reports that registered CPOs are obligated to provide to their pool participants. Tab 7 - declaration of George Malas, p. 8, para. 22.

<u>Reisinger's Solicitations</u>

23. On or about February 28, 2005, Reisinger, individually and on behalf of ROF, began to solicit others to deposit their funds into the NCCN pool. Tab 5 – Reisinger's subscription agreement dated February 28, 2005, p. 1.

24. Prospective participants were advised by Reisinger that if they wished to receive a "confidential Client Services Agreement," they should return the letter and include additional information. *Id*.

25. As part of Reisinger's solicitation effort, she sent two (2) prospective pool participants subscription agreements. Tab 5 – subscription agreement dated February 28, 2005, pp. 1-2.

26. Contained within this document were various representations, including:
(1) that only QEPs would be allowed to participate in the NCCN pool; (2) that Reisinger was exempt from the requirement to register as the CPO of the NCCN pool; and (3) that the minimum required deposit in the NCCN pool was $5,000,000. *Id*.

27. Associated with Reisinger's solicitation efforts, and mentioned in the subscription agreements, was the delivery of "client services agreements " to some prospective pool participants. Tab 21 – NCCN client services agreements dated March 8, 2005, p. 11.

28. "Client services agreements" delivered by Reisinger were executed by some pool participants on March 8, 2005. Tab 21 – NCCN client services agreements dated March 8, 2005, p. 10.

NCCN Pool

29. Starting on or before May 5, 2006, Reisinger, individually and on behalf of ROF, determined to use funds deposited with NCCN LLC to trade commodity futures and options. Tab 4 – excerpts of NCCN, LLC account opening documents at Cadent Financial Services, LLC, pp.12 & 20.

30. The purpose of the NCCN account at Cadent Financial Services, LLC was to trade commodities. Tab 2 - testimony of Reisinger dated September 23, 2008, p. 35, lines 21-22; p. 36, lines 1-6.

31. The NCCN commodity pool account was opened at Cadent Financial Services, LLC on May 6, 2005. Tab 7 - declaration of George Malas, p. 8, para. 24(a); Tab 22- wires into NCCN trading account at Cadent Financial Services, LLC, p. 1 (May 6, 2005 wire).

32. At this point, NCCN became a commodity pool. Tab 13 - Section 1a(1) of the Commodity Exchange Act, 7 U.S.C. §1a(10).

33. Throughout the period that NCCN was operated as a commodity pool, no participant ever deposited a total of $5,000,000, as the total deposited from all participants during the time the pool's account at Cadent Financial Services, LLC was opened totaled only

10

$2,753,378 . Tab 7 - declaration of George Malas, pp. 8-9, para. 24(c); Tab 22- wires into NCCN trading account at Cadent Financial Services, LLC, pp. 1-13.

34. Instead, the single largest sum deposited was approximately $1,000,000. Tab 22- wires into NCCN trading account at Cadent Financial Services, LLC, p. 1 (May 6, 2005 wire).

35. At no point during the relevant period did Reisinger, a CPO and a fiduciary, correct her earlier representations to pool participants that the minimum deposit accepted by the NCCN pool was $5,000,000. Tab 7 - declaration of George Malas, p. 9, para. 25.

36. NCCN pool participants deposited funds with Reisinger and ROF starting on May 6, 2005 and continued to make deposits until January 10, 2007 into the NCCN pool account at Cadent Financial Services, LLC. *Id*., pp. 8-9, para. 24(c); Tab 22- wires into NCCN trading account at Cadent Financial Services, LLC , pp. 1-13.

37. On May 6, 2005, Reisinger opened a commodity trading account at a futures commission merchant known as Cadent Financial Services, LLC, in the name of NCCN. Tab 22 – NCCN account statements at Cadent Financial Services, LLC, p.1.

38. Trading of NCCN pool funds commenced on May 18, 2005. Tab 7 - declaration of George Malas, p. 8, para. 24(b) .

39. Reisinger, individually and on behalf of ROF, solicited participants, accepted funds for trading in the NCCN pool, and was in charge of trading activity on behalf of the NCCN pool. Tab 5 – Reisinger's solicitation agreement dated February 28, 2005, pp. 1-2; Tab 2 – testimony of Reisinger dated September 23, 2008, p. 57, lines 19-22; p. 58, line 1, 13-18; p. 32, lines 20-22; p. 33, lines 1-10.

40. On June 24, 2005, six weeks after Reisinger had opened the NCCN pool account at Cadent and at least a month after she started trading the NCCN pool account, on June 24,

11

2005 Reisinger filed a notice of exemption with the NFA claiming she was exempt from registration as a CPO. Tab 8 - Reisinger CPO Exemption letter, p.1.

41. No such notice was ever filed on behalf of ROF. Tab 7 - declaration of George Malas, pp. 10-11, para. 26.

42. In her notice, Reisinger claimed that the basis for her exemption was that she reasonably believed at the time of their investment, each natural and non-natural person participating in the pool was a QEP. Tab 8 - Reisinger CPO Exemption letter, p.1.

Third Party Participants

43. Prior to making that claim, Reisinger failed to adequately inform herself as to whether NCCN pool participants were actually QEPs. For example, with regard to one person, Caffray, she only relied upon forms he submitted to another entity for a different investment strategy. Tab 2 – testimony of Reisinger dated September 23, 2008, p. 40, lines 7-15; p. 50, lines 1-5.

44. Thereafter, starting in or about May 2006, Reisinger learned that Caffray was not depositing his own funds into the NCCN pool, but rather was acting as a conduit for others. Tab 2 – testimony of Reisinger dated September 23, 2008, p. 24, lines 5-18; p. 49, lines 4-6; p. 50, lines 7-14.

45. For example, in May 2006 Reisinger received a communication from an entity called State Management Limited requesting a return of their funds. *Id*., p. 52, lines 2-10.

46. Review of that communication led Reisinger to conclude that Caffray was collecting funds from third parties and depositing them into the NCCN pool. *Id*., p. 52, lines 3-10, 12-22; p. 53, lines 1-2;

47. This new information concerned Reisinger because she realized that the actual source of funds might not be a QEP. *Id.*, p. 52, line 18.

48. Approximately 30 days later, Reisinger received another request from another participant sending funds through Caffray, requesting a return of funds. *Id.*, p 52, lines 19-21.

49. After receiving the State Management Limited inquiry, Reisinger sought information from another member of ROF, Alan Mathews. Tab 12 – testimony of Reisinger dated January 27, 2010, p. 574, lines 20-24.

50. Specifically, she sought to learn the identity of participants send funds through Caffray. *Id*.

51. At this point she learned that there were at least three additional participants that contributed funds to the NCCN pool through Caffray. *Id.*, p. 575, lines 10-12.

52. On or about January 6, 2007, Reisinger sent an email concerning $249,918 she received from a Tongan church investing in the NCCN pool. Tab 2 – testimony of Reisinger dated September 23, 2008, p.111, lines 17.

53. This information also concerned Reisinger, because she knew she did not have any QEP paperwork filled-out by a Tongan church. *Id.*, p. 114, lines 4-10.

54. On May 9, 2007, Reisinger received an email from David Hobbs regarding Michael and Sue Cassidy, among others. Tab 14 – May 9, 2007 email.

55. Reisinger subsequently had a number of conversations with the Cassidys, and determined that they had invested funds in the NCCN pool through Caffray. Tab 12 – testimony of Reisinger dated January 27, 2010, p. 758, lines 1-6, 19-20.

56. As a result of those conversations, Reisinger concluded that the Cassidys were not QEPs. *Id.*, p. 759, lines 4-6.

57. Despite Reisinger's concerns, she continued to operate the NCCN pool and never informed Cadent that the NCCN pool might contain funds from non-QEPs. Tab 2 – testimony of Reisinger dated September 23, 2008, p. 53, lines 1-12.

58. Other redemption requests were made, including one in August 2007. Upon receiving that request, Reisinger interviewed the requestors and determined that they were not QEPs. Tab 12 – testimony of Reisinger dated January 27, 2010; p. 759, lines 1-13.

59. In fact, of all the persons who had used Caffray as a funding conduit, Reisinger only held documentation supporting their status as a QEP for one entity. Tab 2 – testimony of Reisinger dated September 23, 2005, p. 54, lines 10-22.

60. From the point in time where she no longer held a reasonable basis to believe that NCCN pool participants were all QEPs -May 2006 - until the NCCN pool was dissolved on October 26, 2009, Reisinger never notified the NFA that the basis for exemption was no longer valid. Tab 9 – testimony of Reisinger dated January 26, 2010, p 490, lines 1-5.

61. Further, Reisinger never corrected her earlier representations to NCCN pool participants and inform them that she was not qualified for an exemption, nor did she ever correct her representation to them that all members of the NCCN pool were QEPs. Tab 7 - declaration of George Malas, p. 10, para. 27 .

Matthews

62. Larry Alan Matthews ("Matthews") was a principal of ROF Consulting, LLC. Tab 15 - p. 13, lines 13-15.

63. Caffray was a conduit for funds coming from foreign participants to the NCCN pool at Cadent Financial Services, LLC. *Id*., p. 40, lines 8-9, 13-21.

64. Foreign participants would send information to Reisinger of a pending wire, who would then advise Caffray that he should expect to receive a wire transfer of funds. *Id*., p. 50, lines 3-6.

65. The foreign participant would then wire the funds to Caffray. *Id*., p. 50, lines 6-7.

66. Once Caffray received instructions from Reisinger, the wired funds would then be transferred to ROF Consultants, LLC's bank account, then transferred to NCCN, LLC's bank account, and then wired into the NCCN commodity pool account at Cadent Financial Services, LLC. *Id.*, p. 50, lines 7-10; p. 109, lines 21-25; p. 110, line 1.

67. Reisinger's first deposit of participant funds into the NCCN account at Cadent Financial Services, LLC was on May 6, 2005 in the amount of approximately $1,000,000. Tab 7 – declaration of George Malas, p. 8, para. 24(c).

68. Reisinger's last deposition into the NCCN account at Cadent Financial Services, LLC was on January 10, 2007 in the amount of $301,845. *Id*., p. 9, para. 24(c).

Filed:  January 9, 2013

    /s/Timothy J. Mulreany
Timothy J. Mulreany (admitted pro hac vice)
Chief Trial Attorney
U.S. Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, NW
Washington, DC 20581
p: (202) 418-5306
f: (202) 418-5523
tmulreany@cftc.gov

Sophia Siddiqui (admitted pro hac vice)
Trial Attorney
P: (202) 418-6774

        ssiddiqui@cftc.gov

        Elizabeth N. Pendleton (IL Bar No. 6282050)
        U.S. Commodity Futures Trading Commission
        Division of Enforcement
        525 West Monroe Street
        Suite 1100
        Chicago, IL 60661
        P: (312) 596-0700
        F: (312) 596-0716
        ependleton@cftc.gov
        Local Counsel

## CERTIFICATE OF SERVICE

      On January 9, 2013, I caused a true and accurate copy of the foregoing: PLAINTIFF'S RESPONSE TO DEFENDANT REISINGER'S STATEMENT OF MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS, and EXHIBIT LIST, to be served upon the following persons via UPS Express Delivery and/or email:

William J. Nissen, Esq.
Sidley Austin, LLP
One South Dearborn
Chicago, Illinois 60603
wnissen@sidley.com

        /s/Timothy J. Mulreany
        Timothy J. Mulreany