# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, ) ) ) Plaintiff, ) ) v. ) ) GRACE ELIZABETH REISINGER and ) ROF CONSULTING, LLC, ) ) Defendants. ) | Judge Joan B. Gottschall<br><br>No. 11 CV 8567 |

## MEMORANDUM OPINION & ORDER

The Commodity Futures Trading Commission (CFTC) filed a six-count complaint against Grace Reisinger and her firm, ROF Consulting, LLC. Counts I-III allege that Reisinger and ROF committed fraud by misrepresenting and omitting material facts in communications with investors. Counts IV-VI charge Reisinger with violations related to her actions as an alleged unregistered commodity pool operator (CPO). The court previously granted in part and denied in part Reisinger's motion for summary judgment. The court held that the CFTC was barred by the statute of limitations from seeking civil penalties for the violations in Counts I and II of the complaint, but could seek other forms of relief against Reisinger on those counts. The court also held that the CFTC could seek civil penalties for the violations contained in Counts III-VI.

The CFTC now moves for summary judgment on all counts. For the reasons explained below, the motion is denied.

# I. FACTS

Grace Reisinger is a resident of Grand Island, Nebraska. On May 2, 2003, four people, including Reisinger, organized ROF Consulting, LLC. The other members were Alan Matthews, Jim Green, and Nancy Dadey. Matthews was managing member, treasurer, and secretary of ROF.

On October 14, 2004, ROF and another company, Sun Coast Investments and Consulting, Inc., organized NCCN, LLC. The members of NCCN were ROF and Sun Coast, a corporation owned by Lynn Caswell. NCCN began soliciting funds from investors beginning in January 2005.[1] As part of the solicitation, a "prospective client questionnaire" was distributed to prospective NCCN investors, including an attorney in California named Donald Caffray. The cover letter to the questionnaire stated in relevant part:

> Dear Mr. Donald Caffray,
>
> Greetings. It is our understanding that you have expressed an interest in placing funds for management with NCCN, LLC, which is open to Accredited Investors who are also Qualified Purchasers as defined by . . . the United States Investment Company Act. The minimum investment required per entity is $5,000,0000 USD. . . .
>
> If you would like to receive a confidential Client Services Agreement . . . please indicate such interest by: . . . [r]eturning this letter and an enlarged copy of . . . your driver's license and your passport to us in the enclosed self-addressed envelope. . . . .
>
> Best regards,
>
> [signature]

---

[1] The CFTC contends that the solicitation was "for the purpose of trading in commodities," while Reisinger contends that the solicitation was for the purpose of trading bonds. (*Compare* Pl.'s SOF ¶ 14, ECF No. 69-2, *with* Def.'s Resp. to Pl.'s SOF ¶ 14, ECF No. 81.) To support its assertion that the solicitation was for the purpose of trading in commodities, the CFTC cites the declaration of Donald Caffray. (Pl.'s SOF Ex. 14 (Caffray Decl.), ECF No. 71-2.) That declaration, however, does not address whether the solicitation was for the purpose of trading in commodities or for the purpose of trading bonds. Reisinger disputes the CFTC's assertion that she was soliciting investors for the purpose of trading in commodities, citing her own sworn declaration. (Def.'s Resp. to Pl.'s SOF ¶ 14, ECF No. 81.)

> Elizabeth (Lisa) Reisinger
> President, CEO.

(Pl.'s SOF Ex. 15 (Prospective Client Questionnaire), ECF No. 71-3.)

The parties dispute whether Reisinger drafted or sent the questionnaire. Although the questionnaire bears her name and signature, Reisinger has submitted a sworn declaration in which she states:

> I did not draft the Prospective Client Questionnaire that was completed by Donald Caffray for the Donald Caffray Attorney Trust Account. The Prospective Client Questionnaire, and the cover sheet used to forward it, were prepared by Lynn Caswell or someone acting under his direction. . . . None of the Questionnaires [were] signed or distributed by me. . . . .
>
> …
>
> I did not send the Prospective Client Questionnaire or the cover sheet for the Prospective Client Questionnaire to Donald Caffray, and I did not sign the cover sheet for the Prospective Client Questionnaire that was sent to Donald Caffray. Based on my inspection of the cover sheet for the Prospective Client Questionnaire that Donald Caffray attached to his Declaration, I believe that it was faxed to him by Nancy Dadey, my deceased mother who was a member of ROF, and that Nancy stamped a stamp of my signature on the cover sheet before she sent it. I was not aware at the time she sent it that she had affixed my signature stamp or had sent it to Caffray.

(Def.'s Ex. A (Reisinger Decl.) ¶¶ 8, 10, ECF No. 83.) Caffray completed and returned the questionnaire, and he later invested his clients' funds in NCCN.

According to Reisinger, in the spring of 2005, Ty Andros, who was a principal of a commodity introducing broker and commodity trading advisor in Chicago, presented a commodity trading program to Reisinger, Matthews, Green, and Dadey (the members of ROF) and Caswell (the owner of Sun Coast). The program involved NCCN opening an account at Cadent Financial Services, LLC, a registered futures commission merchant. Cadent's general counsel, Cheryl Fitzpatrick-Smith (Fitzpatrick), also attended Andros's presentation. Fitzpatrick stated that the prior structure used for NCCN's bond trading program would not work for

3

commodities, and she suggested that NCCN form an exempt commodity pool through an account at Cadent.[2] The principals of ROF and NCCN agreed to this approach.

For NCCN to open an account at Cadent, Cadent required that Reisinger complete an "exemption from registration as a commodity pool operator (CPO)" form.[3] Reisinger asked Fitzpatrick to assist her in completing the exemption claim. After Reisinger prepared the exemption claim, Fitzpatrick told her that the claim appeared to be acceptable. On May 5, 2005, Reisinger signed the exemption claim and provided a copy to Fitzpatrick. On that same day, Reisinger sent copies of the exemption claim to the National Futures Association (NFA), which administers the registration system for the CFTC.[4] The exemption claim stated in relevant part:

> The operator of this commodity pool is not required to register, and has not registered with the [CFTC]. Therefore, unlike a registered commodity pool operator[,] this pool operator is not required by the CFTC to furnish a Disclosure Document, Periodical Account Statements[,] and an Annual Report to participants in the pool.
>
> Pool Name[:] NCCN LLC . . . .
>
> NCCN LLC is not registered as a CPO based upon Regulation 4.13(a)(4)[,] which states that:

---

[2]  The CFTC objects to Reisinger's statement of facts to the extent that it relies on Fitzpatrick's statements, arguing that the statements are inadmissible hearsay. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A Court may consider only admissible evidence in assessing a motion for summary judgment."). The court will not consider any of Fitzpatrick's statements as proof of the truth of the matter asserted, but will consider them only to the extent that the statements show what Reisinger knew at the time.

[3]  The CFTC objects to this fact on the grounds that Cadent's requirements are hearsay. The court will not consider the evidence as proof of the truth of the matter asserted, but will consider it as background evidence.

[4]  The CFTC disputes this fact on the ground that it "is a legal issue, not a factual issue." (Pl.'s Reply to Def.'s SOF ¶ 13 (citing 17 C.F.R. § 4.2(b) (2003)), ECF No. 85.) The court fails to see how the date that Reisinger sent copies of the claim exemption is a "legal issue." The CFTC regulation cited—17 C.F.R. § 4.2(b) (2003)—pertains to when a claim exemption is deemed "filed" as a matter of law, not when it is deemed "sent."

>(i) Interest in the pool [is] exempt from registration under the Securities Act of 1933 and such interest [is] offered and sold without marketing to the public in the United States.
>
>(ii) I reasonably believe, at the time of investment, Each Natural person participant is a "qualified eligible person" as that term is defined in 4.7(a)(2) and
>
>(iii) Each Non-natural person participant is a "qualified eligible person," as that term is defined in 4.7, or a[n] "accredited investor"' as the term is defined in 230.501(a)(i)-(3)(a)(7) and (a)(8) . . . .

(Pl.'s SOF Ex. 4 (Exemption Claim), ECF No. 70-3.) Reisinger signed the claim exemption, and the title "CEO" appears next to her printed name. The claim exemption is dated May 5, 2005, and is stamped as being received on June 24, 2005.

CFTC regulations require that, to be eligible for an exemption from registration as a CPO, a CPO must "furnish in writing to each prospective participant in the pool . . . a statement that the person is exempt from registration with the [CFTC] and that therefore, unlike a registered commodity pool operator, it is not required to deliver a Disclosure Document and a certified annual report to participants in the pool." 17 C.F.R. § 4.13(a)(5)(i)(A). As noted above, one of NCCN's "participants" was a California attorney named Donald Caffray. Caffray used his attorney-client trust account to transmit funds from his clients, who were mainly foreign investors, to ROF. ROF then transferred the funds to NCCN.

In May 2006, Reisinger learned that Caffray was collecting funds from third parties and depositing them into the NCCN pool. At that time, Reisinger received a communication from State Management Limited stating that it was an investor with Caffray and wanted its funds returned. This information concerned Reisinger because she realized that the actual source of the funds might not be a qualified eligible person (QEP), which was contrary to representations contained in her exemption claim. After receiving the State Management Limited inquiry, Reisinger sought information from Matthews about the identity of participants sending funds through Caffray. She learned that at least three additional participants had contributed funds to

the NCCN pool through Caffray. Reisinger had documentation supporting the QEP status of only one Caffray client.

Pool participants continued to make deposits into the NCCN account at Cadent until January 10, 2007. On that date, the last deposit into the account was made, in the amount of $301,845. On May 9, 2007, Reisinger received an email regarding Michael and Sue Cassidy, an Australian couple. In August 2007 and October 2007, Reisinger had conversations with the Cassidys about the nature of their investment with Caffray. She stated that she believed based on the conversations that they were not "qualified eligible participants, and it gave [her] cause to finally shut down" the pool. (Pl.'s SOF Ex. 12 (Reisinger Dep. II) 758:1-759:13, ECF No. 55-13.) The pool was dissolved on October 26, 2009.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

## III. ANALYSIS

### A. Count IV (Failure to Register as a CPO)

In Count IV, the CFTC alleges that Reisinger violated 7 U.S.C. § 6m(1), which provides:

> It shall be unlawful for any . . . commodity pool operator, unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as [a] . . . commodity pool operator[.]

6

7 U.S.C. § 6m(1) (2000).  The CFTC moves for summary judgment on Count IV, arguing that it has established that Reisinger was a CPO and that she was neither registered under the Act nor entitled to a valid exemption from the requirement to register.

### 1. **Whether Reisinger Was Entitled to a Valid Exemption**

It is undisputed that Reisinger was never registered as a CPO of NCCN.  Reisinger argues, however, that she was not required to register because she held a valid exemption from registration.

CFTC regulations §§ 4.13(a)(5)(i)(A) and (B) provide that for an exemption to be valid, a CPO must "furnish[] in writing to each prospective participant in the pool":

> (A) A statement that the person is exempt from registration with the Commission as a commodity pool operator and that therefore, unlike a registered commodity pool operator, it is not required to deliver a Disclosure Document and a certified annual report to participants in the pool; and
>
> (B) A description of the criteria pursuant to which it qualifies for such an exemption from registration.

17 C.F.R. § 4.13(a)(5)(i)(A) and (B) (2005).  The regulations define "participant" as "any person that has any direct financial interest in a pool (*e.g.*, a limited partner)."  17 C.F.R. 4.10(c).

Commission regulation 4.13(a)(5)(ii) further states:

(ii) The person must make these disclosures by no later than the time it delivers a subscription agreement for the pool to a prospective participant.

*Id.* § 4.13(a)(5)(ii).

The CFTC contends that Caffray's clients were "prospective participants" within the meaning of the regulations but that Reisinger never provided them with a statement that she was exempt from registration.  Thus, the CFTC argues, she did not hold a valid exemption from the registration requirement.

7

Reisinger acknowledges that she did not send the statement to Caffray's clients, but argues that this was "proper" because "it is a well[-]established principle of law in California, where Caffray was located, that a trustee takes title to trust property, and that it is therefore the trustee, and not trust beneficiaries, who makes investments of trust funds." (ECF No. 83, at 14). But the CFTC is correct that under the applicable regulations, Caffray's clients were "prospective participants" because they had a "direct financial interest in the pool." Thus, under the regulations, Reisinger was required to provide them with a statement that she was exempt from registration. Nothing in the regulations allows a CPO to avoid sending an exemption claim to a prospective participant simply because the participant's funds are held in trust by another individual. As the court explained in its prior ruling, "[Reisinger] cannot skirt the registration requirement by relying on the status of a person who acted as a conduit for the funds of the actual pool participants." (July 18, 2013 Order at 23, ECF No. 67.) Thus, Reisinger did not comply with § 4.13, rendering her claimed exemption invalid.

Accordingly, if Reisinger was the CPO of NCCN, she violated § 6m(1).

### 2. **Whether Reisinger Was the CPO of NCCN**

CFTC regulations define a CPO as a person "engaged in a business that is of the nature of a commodity pool . . . and who, in connection therewith, solicits, accepts, or receives from others, funds . . . for the purpose of trading in any commodity . . . ." 7 U.S.C. § 1a(11)(A) (2005). Reisinger argues that there are genuine issues of material fact that preclude the court from finding that she acted as a CPO of NCCN as a matter of law.

First, she argues that any solicitation she performed before May 5, 2005, related only to a "bond trading program" and not to a commodity pool program. (Reisinger Decl. ¶ 8.) The CFTC asserts that Reisinger's solicitation of Caffray was for the purpose of trading in

8

commodities. The CFTC cites Caffray's declaration to support its view, but the declaration does not address whether Reisinger's solicitation of him was for the purpose of trading in commodities or for the purpose of trading bonds. Reisinger disputes the CFTC's assertion that she was soliciting Caffray for the purpose of trading in commodities, citing her own sworn declaration. (Def.'s Resp. to Pl.'s SOF ¶ 14, ECF No. 81.) The CFTC asserts in its statement of facts that "[b]etween February 28, 2005 and June 24, 2005, Reisinger and ROF accepted funds from pool participants for the purpose of trading in commodities . . . ." (Def.'s SOF ¶ 22, ECF No. 69-2.) But Reisinger disputes this fact, again citing her sworn testimony. (ECF No. 81, ¶ 22.) Without any explanation from the CFTC as to why it believes Reisinger solicited funds for the purpose of trading in commodities before May 5, 2005, the court cannot determine as a matter of law that Reisinger violated § 6m(1) before that date.

Next, Reisinger argues that she did not act as a CPO after May 5, 2005, when NCCN became a commodity pool. She contends that ROF was the CPO of NCCN, and although she was the CEO of ROF, she was "not the CPO for the NCCN pool." (ECF No. 83, at 12.)

The CFTC offers three reasons why the court should find that Reisinger was the CPO for the NCCN pool. First, the CFTC notes that the organization that administers its registration system, the National Future Association (NFA), listed Reisinger as the CPO. Reisinger was listed as the CPO in NFA's records because the employee who processed the claim exemption believed that the person who signed the exemption was considered the CPO. But entities can act as CPOs as well, and Reisinger contends that she signed the claim exemption on behalf of ROF as its CEO. This is supported by the fact that Reisinger's title as "CEO" appears next to her printed name on the claim exemption, suggesting that she was not signing the form in her

9

personal capacity. The NFA employee's subjective belief that Reisinger was the CPO for NCCN does not prove that she fulfilled the legal requirements of a CPO.

Second, the CFTC claims that Reisinger was a CPO because "[b]etween February 28, 2005 and June 24, 2005, Reisinger . . . accepted funds from pool participants for the purpose of trading in commodities . . . ." (Pl.'s SOF ¶ 22 (citing Reisinger Dep. 467:1-18; 491:19-24; 492:1-5).) Reisinger disputes this fact, however, and the cited portions of Reisinger's deposition do not support the assertion that Reisinger accepted funds from pool participants. (Reisinger Dep. 467:1-18 (discussing how NCCN traded futures and securities); 491:19-492:5 (same).) Reisinger maintains that she never accepted funds from pool participants. (Reisinger Decl. ¶ 7.)

Finally, the CFTC argues that Reisinger "testified under oath that she was the CPO of the NCCN pool." (Pl.'s SOF ¶ 58.) The testimony is as follows:

> Q: You were the operator of the NCCN pool, correct?
> A: Yes. Well, not the commodity – I was the one that put the trades on, yes.

(Reisinger Dep. 106:14-17.) Although Reisinger initially answered "yes," she immediately clarified that she was not the operator of the commodity pool.

In sum, the CFTC has presented no direct evidence that Reisinger "solicit[ed], accept[ed], or receiv[ed] from others, funds . . . for the purpose of trading in any commodity" in her capacity as CEO of ROF. The CFTC has presented only circumstantial evidence that Reisinger took actions consistent with being the CPO and that certain individuals believed Reisinger was the CPO. Reisinger denies that she was the CPO of the NCCN pool. (Reisinger Decl. ¶ 20 ("I considered ROF, and not myself, to be the CPO of the pool . . . .").) The court cannot weigh, on the CFTC's motion for summary judgment, Reisinger's sworn testimony that she was not the CPO against the CFTC's circumstantial evidence that she was. Accordingly, the CFTC has failed to establish as a matter of law that Reisinger was an unregistered CPO during any period

of time. Thus, the court cannot find as a matter of law that she is liable under § 6m(1), which applies only to CPOs.

The CFTC also argues that Reisinger may be liable for ROF's violations of § 6m(1) under a theory of "control person" liability. To prevail on such a theory, however, the CFTC must establish that "the controlling person had actual or constructive knowledge of the core activities that constitute the violation at issue and allowed them to continue." *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1568 (11th Cir. 1995) (internal quotation marks omitted). A reasonable juror could conclude that Reisinger did not have actual or constructive knowledge that ROF's CPO exemption was invalid in light of the fact that Reisinger filed what she believed to be a valid exemption claim with the NFA. Accordingly, in the summary judgment context, the CFTC cannot prevail on a theory of control person liability.

**B. Count V (Failure to File Exemption Notice Prior to Delivery of Subscription Agreements, Make Disclosures to Investors, and Amend Invalid Notice)**

In Count V, the CFTC alleges that Reisinger violated several CFTC regulations. The CFTC moves for summary judgment insofar as Reisinger violated regulations 4.13(b)(2) and (b)(4).

Commission regulation § 4.13(b)(2) states that "any person who desires to claim the relief from registration provided by this section[] must file electronically a notice of exemption from commodity pool operator registration with the Natural Futures Association . . . no later than the time it delivers a subscription agreement for the pool to a prospective participant in the pool[.]" 17 C.F.R. § 4.13(b)(2). The CFTC argues that Reisinger violated this provision because the client services agreements were delivered to prospective pool participants before March 8, 2005, but the notice of exemption was filed no sooner than May 2005.

11

The only subscription agreement that was delivered before she filed the notice of exemption on May 5, 2005, was the prospective client questionnaire, which Reisinger contends was "for a bond trading program and not for a commodity pool." (ECF No. 83, at 16.) As discussed above, the court agrees with Reisinger that the CFTC has not established as a matter of law that the prospective client questionnaire was for a commodity pool, and so the CFTC's motion for summary judgment on Count V is denied insofar as it alleges violations before May 5, 2005.

The CFTC also argues that Reisinger violated § 4.13(b)(2) between May 5, 2005 (the date the notice of exemption was filed) and June 24, 2005 (the date that the CFTC says NAF received the notice of exemption). The CFTC notes that regulation 4.7(d)(2) provides that a notice of exemption is effective "upon receipt by the [NFA] . . . ." 17 C.F.R. § 4.7(d)(2) (2003). The CFTC further notes that NFA Registration Rule 502(c) provides that documents served by an applicant "shall be considered served or filed only upon actual receipt." But Reisinger's declaration states that she sent the exemption claim to NFA by facsimile on May 5, 2005 (Reisinger Decl. ¶ 19), thus creating a factual dispute as to when the NFA received the notice of exemption. The fact that the document was "stamped" received June 24, 2005, is not dispositive of the issue. Thus, the court cannot find as a matter of law that Reisinger violated § 4.13(b)(2).

The CFTC also argues that Reisinger violated § 4.13(b)(4), which states:

> (4) Each person who has filed a notice of exemption from registration under this section must, in the event that any of the information contained or representations made in the notice becomes inaccurate or incomplete, file a supplemental notice with the National Futures Association to that effect which, if applicable, includes such amendments as may be necessary to render the notice accurate and complete. This supplemental notice must be filed within 15 business days after the pool operator becomes aware of the occurrence of such event.

17 C.F.R. § 4.13(b)(4). The CFTC argues that Reisinger violated § 4.13(b)(4) when she failed to amend her notice of exemption after learning of potential non-QEP investors who were wiring funds into the pool through Caffray's trust account.

The CFTC contends that this court "has previously held that Reisinger's belief that each pool participant was a QEP was not reasonable." (ECF No. 69-1, at 14.) The CFTC quotes the following passage from the court's prior ruling:

> For example, with regard to Caffray, Reisinger testified that Caffray qualified as a QEP based on his net worth as a natural person, based on paperwork he filled out "when he started at Merrill Lynch and Morgan Keegan." (Reisinger Dep. 40:7-15.) But she did not verify where the money came from that was in the Caffray Account at Bank of America. She testified that she didn't "know how much of [the money in the Caffray Account] was Australian and how much was U.S. or who that belonged to." (*Id.* at 24:15-18.) She also stated that she did not know whether Caffray invested any of his own money in NCCN. (*Id.* at 49:4-8.) On these facts, Reisinger could not have had a reasonable belief that every participant in the pool was a QEP because the funds channeled into the pool through the Caffray Account were of unknown provenance. Although Reisinger contends that she considered Caffray to be her client, she cannot skirt the registration requirement by relying on the status of a person who acted as a conduit for the funds of the actual pool participants. The facts support the inference that the Caffray Account was set up to facilitate the transmission of funds by the investors into the pool, and that Reisinger was involved in the process by which funds were wired in a multi-step process, first into the Caffray Account and then eventually into the pool.

(ECF No. 69-1, at 14 (quoting July 18, 2013 Order at 23, ECF No. 67).) But the CFTC omits the first sentence of this paragraph of the court's order, which stated, "*Construing the facts in favor of the CFTC*, the court agrees that Reisinger's belief that each pool participant was a QEP was not reasonable." (*Id.*) (emphasis added).

While a jury could reasonably conclude that Reisinger's belief was unreasonable, a jury could also conclude that Reisinger's belief was reasonable. As Reisinger points out, the CFTC has not identified any non-QEPs who participated in the pool. Reisinger states that when she first learned of the identities of Caffray's clients, she understood that they were all persons

13

located outside the United States, and she continues to believe that is the case. (Reisinger Decl. ¶ 26.) Thus, she could have reasonably believed that all of Caffray's clients were QEPs. Accordingly, the CFTC's motion for summary judgment on Count V is denied.

## C. Count VI (Failure to Provide Reports and Statements to Investors)

Count VI alleges that Reisinger violated 7 U.S.C. § 6n(4) and CFTC regulation § 4.22. Section 6n(4) states:

> (4) Every commodity pool operator shall regularly furnish statements of account to each participant in his operations. Such statements shall be in such form and manner as may be prescribed by the Commission and shall include complete information as to the current status of all trading accounts in which such participant has an interest.

7 U.S.C. § 6n(4). The CFTC regulations state, in relevant part:

> (a) [E]ach commodity pool operator registered or *required to be registered* under the Act must periodically distribute to each participant in each pool that it operates, . . . an Account Statement, which shall be presented in the form of a Statement of Income (Loss) and a Statement of Changes in Net Asset Value, for the prescribed period. . . .

17 C.F.R. § 4.22 (emphasis added).

Because these provisions apply only to commodity pool operators, the court cannot find as a matter of law that Reisinger violated them. Accordingly, the CFTC's motion for summary judgment on Count VI is denied.

## D. The Fraud Counts (Counts I-III)

The bases for the alleged violations in the fraud counts are identical, so the court will consider the parties' arguments about these claims together. The CFTC claims that Reisinger made the following misrepresentations to pool participants and potential pool participants: (1) that she was exempt from the requirement to register as a CPO; (2) that only QEPs would

participate in the pool; and (3) that the minimum investment required to participate in the pool was $5 million.

The CFTC further alleges that Reisinger made material omissions when she failed to advise participants that: (1) she did not hold a valid exemption from registration as the CPO of NCCN; (2) Reisinger and ROF were operating the NCCN pool while not registered as CPOs as required by the Act; and (3) none of the NCCN pool participants invested the $5,000,000 that Reisinger had previously represented as the required minimum investment. These counts are alleged under 7 U.S.C. § 6b(a)(2)(i) and (iii) (with respect to conduct before June 18, 2008) and § 6b(a)(1)(A) and (C) (with respect to conduct on or after June 18, 2008).

In Count I, the CFTC alleges that Reisinger violated 7 U.S.C. §§ 6b(a)(2)(i) and (iii). Those sections state:

> It shall be unlawful . . . (2) for any person, in or in connection with any order to make, or the making of, any contract of sale or any commodity . . . for or on behalf of any other person . . . (i) to cheat or defraud or attempt to cheat or defraud such other person; . . . [or] (iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract . . . .

7 U.S.C. §§ 6b(a)(2)(i) and (iii).

Count II alleges that Reisinger violated 7 U.S.C. § 6c(b) and 17 C.F.R. § 33.10(a) and (c). Section 6c(b) states:

> No person shall offer to enter into, enter into or confirm the execution of, any transaction involving any commodity regulated under this chapter . . . contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing such transaction under such terms and conditions as the Commission shall prescribe.

7 U.S.C. § 6c(b) (2000). The regulations reiterate 7 U.S.C. §§ 6b(a)(2)(i) and (iii):

> It shall be unlawful for any person directly or indirectly:
>> (a) To cheat or defraud or attempt to cheat or defraud any other person; . . . [or]

15

> (c) To deceive or attempt to deceive any other person by any means whatsoever in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction.

17 C.F.R. § 33.10(a) and (c).

Count III alleges that Reisinger violated 7 U.S.C. § 6*o*(1)(B), which states:

> (1) It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—
>
> . . .
>
> (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

7 U.S.C. § 6*o*(1)(B).

These sections are "meant to impose upon all persons holding membership or trading privileges in a commodity market 'a duty of full and truthful disclosure to their commodity customers of any and all pertinent investment information.'" *CFTC v. Schafer*, No. Civ. A. H-96-1213, 1997 WL 33547409, at *4 (S.D. Tex. Dec. 23, 1997) (citing *Kearney v. Prudential Bache Sec., Inc.*, 701 F. Supp. 416, 423 (S.D.N.Y. 1988)). The elements of a fraud claim under 7 U.S.C. § 6b are derived from common-law fraud actions. *See, e.g., Puckett v. Rufenacht, Bromagen & Hertz, Inc.*, 903 F.2d 1014, 1018 (5th Cir. 1990). This means that to establish Reisinger violated § 6b(a)(2), the CFTC must prove three elements: (1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) materiality; and (3) scienter. *CFTC v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1328 (11th Cir. 2002) (citations omitted).[5]

---

[5] The requirements for a claim under 7 U.S.C. § 6*o*(1)(B) are essentially the same as those of a § 6b claim, except that under 7 U.S.C. § 6*o*(1)(B), a plaintiff need not establish scienter. *See Commodity Trend Serv., Inc. v. CFTC*, 233 F.3d 981, 993 (7th Cir. 2000).

The basis of the CFTC's claim that Reisinger made misrepresentations is the prospective client questionnaire sent to Caffray. Reisinger argues that there are genuine issues of material fact as to whether statements in the questionnaire may be attributed to her as a matter of law. She contends that she did not draft or send the questionnaire or its cover sheet. As noted above, she has submitted a sworn declaration stating that she believes Lynn Caswell prepared the questionnaire and cover sheet and that Nancy Dadey stamped Reisinger's signature on the cover sheet and then faxed it to Caffray without Reisinger's knowledge. (Reisinger Decl. ¶¶ 8, 10.)

The CFTC emphasizes that the questionnaire bears Reisinger's name and signature at the bottom of the page. The CFTC also submits a sworn declaration from Caffray stating that he received the questionnaire from Reisinger as part of a solicitation from her on behalf of NCCN. (*See* Caffray Decl. ¶ 4.). But the court cannot weigh Reisinger's sworn testimony that she did not draft or send the questionnaire against the CFTC's evidence that she did. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993) ("The nonmoving party's own affidavit or deposition will constitute affirmative evidence to defeat a summary judgment motion, even if it includes only bare denials."). Reisinger's sworn denial that she did not draft or send the questionnaire creates a genuine issue of material fact that precludes the court from finding as a matter of law that Reisinger is liable for alleged misrepresentations and omissions contained in the questionnaire. Thus, with respect to the alleged misrepresentations contained in the prospective client questionnaire, the CFTC cannot prevail on summary judgment because it cannot establish, as a matter of law, that any misrepresentations were attributable to Reisinger.

The CFTC has not come forward with any alleged misrepresentations other than those contained in the questionnaire. Thus, the remainder of CFTC's fraud claims consists of its allegation that Reisinger made material omissions to pool participants. In this regard, the CFTC

claims that Reisinger, "in communications with pool participants via monthly account statements and otherwise, . . . omitted material facts, including but not limited to [the fact] that: Reisinger did not hold a valid exemption from registration as the CPO of NCCN; Reisinger and ROF were operating the NCCN pool while not registered as CPOs as required by the Act; . . . and none of the NCCN pool participants invested the $5,000,000 that had previously represented as the required minimum investment." (ECF No. 69-1, at 18.) Reisinger argues that a reasonable juror could conclude that these alleged omissions were not made with scienter. The court agrees.

There are genuine issues of material fact that preclude the court from finding as a matter of law that Reisinger acted with scienter. The scienter element requires proof that the defendant "either knew the statement was false or was reckless in disregarding a substantial risk that it was false." *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008). Recklessness in this context means "an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* (internal quotation marks omitted). Reisinger's sworn declaration states that she believed all of her statements to be true at the time they were made. (Reisinger Decl. ¶ 11.) A trier of fact could conclude that Reisinger reasonably believed that she was exempt and that she did not disregard a "substantial risk" that her statements regarding the minimum investment amount were untrue. Additionally, "[a]s a general matter . . . questions of intent are inappropriate for resolution on summary judgment," particularly when there are "still some open questions regarding the extent" to which an individual knew of or participated in aspects of a business's plans. *In re Soybean Futures Litig.*, 892 F. Supp. 1025, 1058 (N.D. Ill. 1995).

Thus, the CFTC is not entitled to summary judgment on Counts I and II with respect to omissions because it cannot demonstrate, as a matter of law, that Reisinger acted with scienter. Although scienter is not an element of the fraud claim alleged in Count III, the statute on which Count III is premised applies only to "commodity trading advisor[s], associated person[s] of a commodity trading advisor, commodity pool operator[s], [and] associated person[s] of a commodity pool operator." 7 U.S.C. § 6*o*(1). As discussed above, the court cannot find as a matter of law that Reisinger was a commodity pool operator of the NCCN pool, and the record is insufficient for the court to find as a matter of law that she is a commodity trading advisor, associated person of a commodity trading advisor, or associated person of a commodity pool operator. Thus, the court cannot conclude that the CFTC is entitled to judgment as a matter of law on Count III. The CFTC's motion for summary judgment is denied with respect to Counts I-III.

**E. Entry of Judgment Against ROF**

Defendant ROF has defaulted in this case. The CFTC argues that "judgment is appropriate against ROF at this time because ROF is liable for the violations of its agent, Reisinger . . . ." (ECF No. 84, at 12.) But because the court has not found that Reisinger is liable as a matter of law, it cannot conclude as a matter of law that ROF is liable for Reisinger's alleged violations. The CFTC is free to file a separate motion for summary judgment with respect to ROF, but the court declines to enter judgment against ROF at this time.

**IV. CONCLUSION**

The CFTC has made a compelling case that Reisinger and her firm failed to comply with numerous federal laws and CFTC regulations. Nevertheless, there are genuine issues of material fact that preclude the court from entering summary judgment in favor of the CFTC at this time.

Accordingly, the CFTC's motion for summary judgment is denied. A status hearing is set for October 16, 2014, at 9:30 a.m.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 30, 2014