IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| U.S. Commodity Futures Trading Commission, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 11 C 8567 ) ) Judge Joan B. Gottschall |
| Grace Elizabeth Reisinger and ROF Consulting, LLC, | ) ) ) ) |
| Defendants. | ) ) |

**REISINGER'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OUTSIDE THE SCOPE OF THE COMPLAINT REGARDING DISPOSITION OF POOL FUNDS**

In 2011, Plaintiff U.S. Commodity Futures Trading Commission ("CFTC") filed a six-count Complaint against Defendants ROF Consulting, LLC ("ROF") and Reisinger alleging violations of the Commodity Exchange Act ("CEA") during the "relevant period," which the CFTC defined as February 28, 2005 to October 26, 2009. Compl. (Doc. 1) ¶ 1. The Complaint alleges that Defendants operated NCCN, LLC ("NCCN") as a commodity pool while not registered as required under the CEA, that Defendants made "fraudulent representations to actual and prospective pool participants," and that Defendants failed to provide pool participants with certain documents and information during the "relevant period." *Id.*

The NCCN pool ceased trading in January 2008. April 17, 2008, Reisinger wired the remaining funds in NCCN to the investor who had deposited these funds, namely, the Donald Caffray Attorney Trust Account. However, Caffray, a California attorney, refused to accept the wire transfer. In May and September 2008, following her depositions in the investigation that led to this case, Reisinger informed counsel for the CFTC, Timothy Mulreany, who is lead counsel for the CFTC in the instant litigation, that the investor would not accept the funds, and

requested that the CFTC assist in returning the funds to the investor. Thereafter, the CFTC took no action to assist Reisinger in returning the funds.

The investigation continued into 2009. Reisinger's employer, New World Holdings, LLC ("NWH"), was paying legal expenses for the investigation, and requested reimbursement. In December 2009, Reisinger determined that she was contractually entitled to indemnification from NCCN for these legal expenses. She notified Caffray that she intended to bill the Caffray funds at NCCN for these expenses and gave him ten days to dispute the charge. When she did not hear from him, she caused funds to be disbursed to herself in January 2010. Thereafter, she continued to notify Caffray as additional disbursements for indemnification were claimed. Caffray took no action to claim the funds or prevent the disbursements. Later, in August 2013, Reisinger obtained a civil judgment against NCCN that confirmed her right to indemnification.

Now, without any basis in the Complaint, the CFTC contends that this disbursement of funds was a "misappropriation," and that it intends to argue at trial that Reisinger committed fraud by not telling investors that she was going to disburse the funds to herself. Plf.'s Trial Br. (Doc. 113) at 5.

Evidence relating to these new allegations should be excluded at trial. First, the CFTC's new allegations are outside the scope of the Complaint; there is nothing in the Complaint to indicate that these allegations would be at issue in the upcoming trial, and the events occurred outside the time frame of the Complaint. Second, the CFTC's allegations do not even state a fraud claim, because Reisinger's failure to accurately predict years in advance that she would later seek indemnification at some unforeseen time in the future is not fraud. Third, allowing this evidence would make lead counsel for the CFTC, Mr. Mulreany, into a witness at trial regarding

the CFTC's failure to take action to return the funds to the investor when requested to do so by Reisinger.

## Factual Background

In 2004, ROF and another company organized NCCN, which in January 2005 began soliciting funds from investors for a bond trading program to be managed by NCCN. 9/30/14 Op. (Doc. 87) at 2; Reisinger Decl. (Doc. 83) ¶ 3. Attorney Donald Caffray, on behalf of the Donald Caffray Attorney Trust Account, completed a questionnaire for an investment in NCCN's bond trading program. 9/30/14 Op. (Doc. 87) at 3; Reisinger Decl. (Doc. 83) ¶ 9. Investments in NCCN from the Donald Caffray Trust Account were directed to ROF, NCCN, or Morgan Keegan (a securities brokerage firm) by Caffray, and were made in the name of the Donald Caffray Attorney Trust Account. Reisinger Decl. (Doc. 83) ¶ 9.

ROF began operating NCCN as a commodity pool in May 2005. During that month, funds of NCCN were transferred into an NCCN account at Cadent Financial Services, LLC ("Cadent"), a commodity futures broker located in Chicago. Proposed Order (Doc. 105) ¶¶ 11, 13. Funds of the Donald Caffray Attorney Trust Account were first deposited in the NCCN account at Cadent on May 16, 2005. Reisinger Decl. (Doc. 83) ¶ 27. Between May 2005 and January 2008, commodity trading advisors traded funds in the NCCN account. *Id.* ¶ 14. On January 30, 2008, the pool ceased trading activities. 9/30/14 Op. (Doc. 87) at 6; Reisinger Decl. (Doc. 83) ¶ 7.

If the CFTC were permitted to add its new claim at this late date, Reisinger would prove the following facts that occurred after NCCN's trading stopped:

3

1. After the NCCN pool stopped trading in 2008, there were remaining funds of $497,913.88 in the NCCN account at Cadent that had been deposited with NCCN by Donald Caffray on behalf of the Donald Caffray Attorney Trust Account.

2. Other members of ROF and NCCN were unwilling to take custody of the Caffray funds.

3. Reisinger, who had no access to the NCCN bank account, opened a new bank account in the name of NCCN and asked Cadent, the broker, to transfer the remaining funds to that account.

4. In April 2008, Reisinger, through her counsel in Nebraska, wired the funds to the Donald Caffray Attorney Trust Account, but Caffray refused to accept the funds and the wire was returned.

5. In May 2008, following the first deposition of Reisinger taken in the CFTC's investigation, Reisinger informed CFTC attorney Timothy Mulreany of the remaining funds in the NCCN account and Caffray's refusal to accept them, and requested that the CFTC assist in returning the funds to Caffray. This request was reiterated following her second deposition in September 2008, in which she testified to facts concerning Caffray's refusal to take the funds back.

6. Thereafter, the CFTC took no action to assist in the return of the funds or take custody of the funds.

7. As the CFTC's investigation progressed, Reisinger was requested by her employer NWH to reimburse NWH for legal fees it had expended in the investigation.

8. Reisinger thereafter determined that she was contractually entitled to indemnification from the NCCN funds for her reimbursement of her employer's legal fees.

4

9. Beginning in December 2009, Reisinger notified Caffray of her intent to bill NCCN for the amounts due her for indemnification, and when he took no action to prevent the payment, she caused the payment to be made in January 2010.

10. Thereafter, Reisinger notified Caffray additional times that she claimed indemnification. Caffray again took no steps to stop her and failed to claim the funds.

12. In August 2013, Reisinger obtained a civil judgment against NCCN in Nevada, where NCCN was organized, declaring her right to indemnification.

## Argument

**A.   The Disposition of Funds Is Outside the Scope of the Complaint.**

The Complaint cites specific alleged misrepresentations and omissions during February 2005 to October 2009, (defined by Plaintiff CFTC as the "relevant period"), including that Reisinger operated the NCCN pool while not registered, made specific fraudulent representations to pool participants, failed to furnish pool participants with particular documentation, and failed to advise pool participants (a) that Reisinger and ROF directed fees to be paid from pool participants' funds to an undisclosed "foreign introducing broker" and (b) that Reisinger and ROF were required to be registered as commodity pool operators. Compl. (Doc. 1) ¶ 1. Now, for the first time, on the eve of trial, Plaintiff contends that the disposition of funds beginning in January 2010, after the end of the "relevant period," as defined by Plaintiff, is part of the fraud alleged against Reisinger in this case.

There are no contentions in the CFTC's Complaint relating to the CFTC's eleventh-hour allegations that would give notice to Reisinger that those allegations would be included as part of this case. Moreover, this case – which has been ongoing for nearly five years – has always involved activities that allegedly occurred between February 2005 and October 2009. The CFTC

5

now attempts to add brand-new claims against Reisinger for activities that allegedly occurred outside of that time period. Because the Complaint did not provide any notice about the CFTC's new claims, the new allegations against Reisinger for "fraud" relating to the subsequent disbursement of funds are improper and should not be permitted to be presented to the jury. *See Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992) (a complaint must "include the operative facts upon which a plaintiff bases his claim"); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) ("the complaint must . . . provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests'"), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2). Moreover, if allowed, the new claims would lead to a significant expansion of the scope of this case on the eve of trial. The new allegations should therefore be excluded.

B. **Plaintiff Alleges that Reisinger Should Be Liable for Failing To Predict What Would Happen in the Future.**

Plaintiff's new allegation is that Reisinger failed to disclose to pool participants that at some unspecified time in the future she was going to claim indemnification from the fund, and that this constituted a "misrepresentation" and a fraud by Reisinger against the pool participants. This argument is based on the premise that it can be fraud to fail to accurately predict what will occur in the future. Here, Reisinger did not know at the time the pool participants contributed funds to the NCCN pool that she would, at some undetermined point in the future, exercise her contractual right to indemnification. Furthermore, she did tell Caffray, who was an attorney and the one who deposited the funds, that she claimed indemnification, and he took no steps to stop her. Reisinger's assertion of a contract claim which arose after the pool ceased operating is not fraud, because it is not fraudulent to fail to predict that a contract claim would arise at some time in the future, or that a contractual right would be asserted in the future. Nor can it be fraud

6

where the person who was otherwise entitled to the funds refused to accept them and was informed that the contractual right was being asserted. Thus, the CFTC's alleged claim is based on an untenable definition of fraud, and Reisinger should not be required to defend against it.

## C. Allowing this Evidence Would Make CFTC Attorney Mulreany A Witness At Trial.

In May and September 2008, Reisinger informed Timothy Mulreany, an attorney at the CFTC who was one of the attorneys handling the CFTC's investigation that led to this case, that Caffray had refused to accept the funds remaining in the NCCN account that he had deposited. Reisinger further requested that the CFTC assist in helping her return the funds to Caffray. The CFTC thereafter took no steps to assist in the return of the funds or to take custody of the funds.

Mr. Mulreany is lead counsel for Plaintiff in the instant litigation against Reisinger. If the CFTC's new claim were permitted, Reisinger would defend on the ground that the CFTC had notice that Caffray would not accept return of the funds, and that she asked the CFTC for assistance in returning or otherwise dealing with them, but the CFTC failed to act to assist her, seek a receivership or otherwise take action to return or take custody of the funds. Mr. Mulreany would become a witness as to why, after he was told that the investor refused to accept funds and Reisinger wanted to return them, his agency took no action. This would disqualify Mr. Mulreany from acting as counsel for the CFTC in this matter. *See United States v. Johnston*, 690 F.2d 638, 642 (7th Cir. 1982) ("If the need for [an attorney's] testimony becomes apparent after the attorney has undertaken employment in the case, he must withdraw from the conduct of the trial. . . . These ethical rules apply to all lawyers, including government prosecutors."); American Bar Ass'n R. 3.7(a) ("A lawyer shall not act as advocate in a trial in which the lawyer is likely to be a necessary witness," absent certain exceptions that do not apply here.).

7

## **Conclusion**

For these reasons, Reisinger requests that the Court exclude evidence and argument at trial of the disposition of NCCN funds by Reisinger after NCCN ceased its trading activities.

Date: June 9, 2016

                                              s/ William J. Nissen
                                              William Nissen
                                              Angelo J. Suozzi
                                              Sidley Austin LLP
                                              One South Dearborn Street
                                              Chicago, IL 60603
                                              p: (312) 853-7742
                                              f: (312) 853-7036
                                              wnissen@sidley.com
                                              asuozzi@sidley.com

                                              Attorneys For Defendant
                                              Grace Elizabeth Reisinger

## **CERTIFICATE OF SERVICE**

       I, Angelo J. Suozzi, an attorney, hereby certify that I have served copies of the foregoing **Reisinger's Motion in Limine To Preclude Evidence Outside the Scope of the Complaint Regarding Disposition of Pool Funds** upon the following individuals by the Court's ECF system on the 9th of June, 2016.

       Timothy J. Mulreany
       U.S. Commodity Futures Trading Commission
       Division of Enforcement
       Three Lafayette Center
       1155 21st Street, N.W.
       Washington, D.C. 20581
       tmulreany@cftc.gov

       Elizabeth N. Pendleton
       U.S. Commodity Futures Trading Commission
       Division of Enforcement
       525 West Monroe Street
       Suite 1100
       Chicago, IL 60661
       ependleton@cftc.gov

       s/ Angelo J. Suozzi
       Angelo J. Suozzi