**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **U.S. Commodity Futures Trading Commission,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 11 C 8567** |
| **v.** | ) | |
| | ) | **Judge Joan B. Gottschall** |
| **Grace Elizabeth Reisinger and ROF Consulting, LLC,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**REISINGER'S OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER OF
PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES AND OTHER
ANCILLARY AND EQUITABLE RELIEF AGAINST DEFENDANT
GRACE ELIZABETH REISINGER AND ROF CONSULTING, LLC**

Plaintiff CFTC is overreaching. Contrary to its own guidance and past precedent regarding the determination of civil penalties to be imposed for violations, plaintiff is asking the Court to impose on Reisinger a monetary penalty so high as to constitute a financial life sentence. The equitable relief the Commission seeks would pile on more debt, as well as deprive her of the ability to work in the commodity brokerage business, where her record is spotless. The Court should deny the excessive relief sought by plaintiff as totally disproportionate to the violations that were found.

This is a case where the plaintiff proved no customer harm. Although plaintiff argues that the Tongan Church lost money, plaintiff was unable to prove that the church's funds were ever deposited with the NCCN commodity pool. Rather, the evidence showed that these funds were sent to the Caffray trust account several months prior to the time that the NCCN commodity pool was formed, and despite hours of testimony by the plaintiff's investigator Malas, he was unable to show that these funds went into the NCCN commodity pool account.

Moreover, all funds that were due to investors were returned to them, including funds due to the Caffray trust account, and Caffray chose to send the funds back.

The CFTC has published guidance for the imposition of monetary penalties, which provides for the penalties to be set based on the "gravity" of the offense, and for a number of factors to be considered, including whether there was any harm to victims and whether the penalty imposed is consistent with penalties imposed in analogous cases. Contrary to this guidance, the CFTC asks the Court to set the penalty based on a mathematical calculation, without any consideration of analogous cases where there has been no customer harm.

Moreover, the CFTC's requested penalty is four times the maximum penalty allowed by statute. In *Slusser v. CFTC*, 210 F.3d 783 (7th Cir. 2000), the Court disapproved of the way in which the CFTC counted violations in that case, *i.e.*, that a new violation occurred every day. Yet that is exactly what the CFTC has proposed in the instant litigation. Under *Slusser*, because the CFTC alleged its violations in six Counts, the number that must be used to calculate the maximum penalty is six violations.

Reisinger has asked the Court to set aside the verdict in its entirety. If the Court should allow any part of the verdict to stand, the relief granted should be consistent with the CFTC's own guidance, the Seventh Circuit's decision in *Slusser*, and past precedent for violations such as those alleged here, which involve regulatory violations where no customer harm was proved.

**The Nature of the Violations That Were Found**

The violations that the jury found were all dependent on the resolution of two issues. First, did Reisinger's activities in relation to the NCCN commodity pool satisfy the definition of a commodity pool operator ("CPO") under section 1(a) of the Commodity Exchange Act

2

("CEA")? Second, if Reisinger was CPO for the pool, did the pool have a valid exemption from registration under CFTC Reg. 4.13(a)(4)?[1]

If either of these issues had been resolved (or is resolved on post-trial motion) against the plaintiff, the plaintiff's case for direct liability against Reisinger collapses. Counts 3-6 all require that Reisinger be a CPO, and if Reisinger was not a CPO, there was no duty to disclose the invalidity of an exemption from CPO registration, which is necessary for Counts 1 and 2. Similarly, even if Reisinger had been CPO for the pool, if the exemption was valid, then Counts 1-3 would collapse because the alleged omission, *i.e.*, that the exemption was invalid, would not have been true, and Counts 4-6 would also collapse because they do not apply to an exempt CPO. Thus the entire direct case against Reisinger hinged on these technical regulatory issues.

There was no evidence of customer harm from these regulatory violations. Plaintiff's suggestion that the Tongan Church's funds went into the NCCN commodity pool is wholly unsupported by the evidence. Plaintiff's own investigator, Malas, with his elaborate accounting for funds, showed only that the funds went to the Caffray Trust account in December 2004, several months before April 2005 when Reisinger testified that the NCCN commodity pool was even discussed for the first time. Pl. Ex. 118. Moreover, Malas was unable to trace these funds into the NCCN commodity pool. Pl. Ex. 117. Furthermore, as Reisinger and Matthews testified, NCCN had a bond trading program which preceded the formation of the NCCN commodity pool. This case has nothing to do with that bond trading program. Hence, there was no proof that the NCCN commodity pool ever received Tongan Church funds from the Caffray trust account.

---

[1] A copy of CFTC Reg. 4.13, 17 C.F.R. § 4.13, as in effect in 2005, is attached as Exhibit A.

**The Court's Role in Determining Relief**

In a case such as this where issues to be determined by the Court follow a jury trial, the Court should consider the evidence addressed at the jury trial, and any additional evidence submitted in relation to the relief to be granted, and the Court is free to make findings that are not inconsistent with the jury verdict. *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir. 1978).

**Argument**

1.    **The Court Should Deny the Equitable Relief Sought by Plaintiff.**

    a.    **Any injunction should be limited to an injunction against future violations.**

In *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979), the Seventh Circuit held that injunctive relief is never automatic upon the showing of a violation of the CEA or CFTC Regulations. District courts have wide latitude in fashioning equitable remedies, and the injunctive relief which is granted must serve the particularized needs of the case. *Id*. at 1219-20. Past violations do not necessarily lead to the conclusion that there is a likelihood of future misconduct. *Id*. at 1220.

The evidence does not support the likelihood of future violations by Reisinger. She has been registered as a broker in the futures industry for over 14 years, since 2002. Pl. Ex. 20. There was no evidence of any violations by her in her brokerage business during that time. The violations alleged in this case ended in 2009, over seven years ago, and there was no evidence of any violations by Reisinger during the lengthy period since then.

In *Hunt*, where the Seventh Circuit held that the district court should have granted equitable relief, the evidence was that the misconduct was systematic and carefully preconceived. Here, in contrast, all violations would have been prevented by a valid exemption

4

claim. As the evidence showed, she obtained assistance from Cheryl Fitzpatrick-Smith, an experienced lawyer and compliance officer, in preparing the exemption claim, and Fitzpatrick-Smith determined that the claim was sufficient. Def. Ex. 5. The NFA representative, Michelle Spight, testified that she determined that the exemption claim complied with the requirements of the law. Plaintiff has contended in this case that the claim was invalid for various technical reasons, such as that it was filed on June 24, 2005 when it should have been filed on May 6, 2005, that Reisinger did not have a reasonable belief that all participants were qualified eligible persons ("QEPs") or accredited investors, and that a copy of the exemption was not sent to all pool participants.

The violations found here were neither preconceived nor systematic. The issue of whether Reisinger made a late filing does not evidence a systematic and pre-conceived effort to violate the law, such as that in *Hunt*. Reisinger also believed she complied with the requirements to qualify all investors because, as she testified without contradiction, she carefully considered the qualifications of the four investors who actually sent money to the pool (Green and Matthews through their entities, Bison Group, and the Caffray trust account), as well as those of Peter Roy, who sent money but then withdrew it immediately. Plaintiff suggests that the Australians who sent funds to the Caffray trust account were not QEPs, but this argument is disingenuous, because all non-U.S. persons and all entities owned by non-U.S. persons are QEPs as a matter of law, without financial qualifications. *See* CFTC Reg. 4.7(a)(2)(xi),(xii). Finally, Reisinger testified that she sent the necessary information to all four direct investors, *i.e.*, Matthews and Green for their entities, the Caffray trust account, and the Bison Group, who were the "participants" in the pool as she understood the term.

The plaintiff's argument that Reisinger did not send a copy of the exemption claim to all participants rests on the technical legal argument that "participants" included those who sent money to Caffray. Reisinger disputes the plaintiff's legal position, because the definition of "participant" encompasses only those with a "direct financial interest in a pool," and not indirect investors such as Caffray's clients. *See* CFTC Reg. 4.10(c), 17 C.F.R. § 4.10(c). A separate group of pooled funds, such as the Caffray trust account, that invests in another commodity pool, is itself a commodity pool. *See CFTC v. Equity Financial Group*, 572 F.3d 150 (3d Cir. 2009). Therefore it was up to Caffray, and not to Reisinger, to file an exemption claim and send notices to persons who placed funds in the Caffray trust account.

In ruling on plaintiff's summary judgment ruling prior to trial, the Court stated that the "participants" in the NCCN commodity pool included persons who deposited funds into the Caffray trust account that were later invested in the NCCN commodity pool. Doc. 87, p. 8. Defendant respectfully contends that this statement was erroneous based on the law and the evidence at trial, where the evidence showed that the persons who deposited funds with Caffray did not have a "direct financial interest" in the NCCN commodity pool, as required by the definition of "participant" in CFTC Reg. 4.10(c), 17 C.F.R. § 4.10(c). In any event, regardless of the legal scope of the term "participant," in determining the scope of any injunctive relief against Reisinger, the Court should consider her belief at the time, which is consistent with the "direct financial interest" language of the regulation, that only the persons directly investing in the pool were "participants."

Based on the specific circumstances of this case, there is no likelihood of future violations, and no equitable relief should be granted. Nevertheless, if the Court should decide that there is a likelihood of future violations and equitable relief is therefore appropriate,

Reisinger requests that it be limited to an injunction against violating the specific provisions that were found to be violated. This was the extent of the equitable relief in the consent order entered in *CFTC v. New Word Holdings, LLC*, No. 10 C 4557 (N.D. Ill.), in which Reisinger's employer settled an action brought against it by the CFTC in connection with the same investigation that led to this case.[2] There is no basis in the evidence for equitable relief broader than this.

### b. There Should be No Injunction Against Trading.

Plaintiff has not provided evidence to support an injunction against trading. None of the violations with which Reisinger was charged relates in any way to her trading of futures. Indeed, as she testified, she did not trade futures for the NCCN commodity pool, but rather researched and selected professional traders who did the trading. The violations found by the jury relate to acting as a CPO without a valid exemption, failing to perform duties required by a registered CPO, and failing to disclose to investors that there was an invalid exemption.

In *In the Matter of Citadel Trading Co. of Chicago*, Comm. Fut. L. Rep. (CCH) ¶ 23,082 (CFTC 1986), the CFTC vacated the decision of one of its Administrative Law Judges to impose a trading ban on an individual who was found to have violated antifraud provisions in sections 4b and 4o of the CEA by soliciting accounts through deceptive means, and under section 4k of the CEA, by acting as an associated person without registration. Although the CFTC upheld a $75,000 penalty based on the gravity of the offenses, the CFTC vacated the trading ban on the ground there was insufficient nexus between the violations and the integrity of the market mechanism to justify a trading ban. *See also In re Haltmier*, Comm. Fut. L. Rep. (CCH) ¶ 20,160 (CFTC 1976) (5-year trading ban found to have violated antifraud provision in section 4b of the CEA by unauthorized trading was reduced to an 18-month trading ban).

---

[2] A copy of the consent order in *CFTC v. New World Holdings, LLC* is attached as Exhibit B.

There was no charge that the trading in the NCCN pool was in any way in violation of the law and no evidence that the trading adversely affected the market mechanism. Reisinger selected professional traders for the pool, those traders performed their jobs, and the investors' funds, after accounting for profits and losses, were disbursed back to the investors. Because there was no violation in relation to the trading itself, no injunction against trading is warranted.

### c.     There Should be No Injunction against Registration.

The injunction against engaging in activity requiring registration that is sought by plaintiff should be denied. Reisinger has been registered as a broker in the futures industry for over 14 years with no violations in that capacity. There is no basis, in the isolated regulatory violations relating to the commodity pool involved in this case, to prevent her from continuing to function as a broker.

If the Court enters the injunction suggested by Reisinger above, which would enjoin her from violating section 4m of the CEA, she will be enjoined from violating the CPO registration requirement in the future, which is the violation that was established by the jury's verdict. Such injunctive relief will have been tailored to the particularized needs of this case, as required by *Hunt*, and will prevent recurrence of that registration violation. An injunction against engaging in any activity requiring registration in the future would be far broader than the violations that were found and would unfairly deprive Reisinger of the ability to continue to act as a broker, where she has had no violations.

### d.     The Court Should Deny the Request for Restitution of $497,893.88.

Plaintiff asks the Court to require Reisinger to make restitution of $497,893.88. This was the amount of funds in the NCCN commodity pool account when it stopped trading. Reisinger caused these funds to be returned to the Caffray trust account, which was the investor that invested them, but Caffray sent them back. Def. Ex. 79. As testified by Reisinger, she then

8

asked the CFTC for assistance in returning the funds, and the CFTC failed to take any action. As also testified by Reisinger, after almost two years had passed without instructions from Caffray or the CFTC, Reisinger, on behalf of NCCN, LLC ("NCCN"), asserted a contractual claim for indemnification against the Caffray trust account, and later obtained a judgment in her favor and against NCCN to establish that she was personally entitled to the indemnification. Def. Ex. 77, 81.

Plaintiff has failed to prove that it is entitled to restitution under the statutory standard. Under section 6c of the CEA, 7 U.S.C. § 13a-1, the Court is authorized to order "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)…" Plaintiff has requested that the Court order Reisinger to pay restitution of the $497,893.88 to the CFTC. The CFTC, however, did not sustain any losses proximately caused by any violation and is therefore not entitled to any restitution under the statute.

Nor has plaintiff proved that there is any investor entitled to restitution. The plaintiff states that these funds "belonged to pool participants," but does not identify who those participants were who are allegedly entitled to restitution or how much they are entitled to, with the exception of plaintiff's statement that "$249,918.91 of these funds can be traced to pool participant Tokaikolo Christian Church." Doc. 211, p. 12. This statement, however, is not supported by the record. The evidence cited by plaintiff, *i.e.*, Pl. Ex. 105, states only that the funds were sent to Caffray to be pooled, and not that they were actually ever deposited in the NCCN commodity pool. Moreover, plaintiff's investigator Malas was unable at trial to trace any funds of the Tongan Church into the NCCN commodity pool. *See* Pl. Ex. 117. Those funds were traced only into the Caffray trust account, and they were deposited into that account several months before the NCCN commodity pool was first discussed and later formed. Pl. Ex. 118.

Moreover, as Reisinger and Matthews testified without dispute, prior to the time that the NCCN commodity pool was formed, NCCN was offering a bond trading program that is not part of this case. There is thus no evidentiary basis for an order of restitution in favor of the church.

Furthermore plaintiff has not proven that there was any proximate cause, as required by the statute, between the disposition of these funds and the violations that were established. As the Court stated in an order prior to trial, the plaintiff did not plead a misappropriation claim with respect to these funds. Doc. 138, p. 8. Absent a misappropriation claim, the fact that these funds were later claimed by Reisinger resulted from events separate from the violations that the jury found. After the pool stopped trading, the funds were returned to the investor which had invested them, *i.e.*, the Caffray trust account. Def. Ex. 79. This return of the funds to the Caffray trust account broke any causation that could have existed between the ultimate disposition of the funds, and the violations that the jury found in connection with the issues of registration or exemption from registration of the CPO of the NCCN commodity pool. Caffray, an attorney who had a duty to his clients who had deposited funds in the account, chose to return the funds. Def. Ex. 79. In addition, Reisinger testified that she notified the CFTC about these funds, and there was no evidence that the CFTC took any action to take custody of the funds or return them to investors. Therefore, the disposition of the funds following these intervening events was not proximately caused by any violations that were found by the jury, all of which pertained to the regulation of the NCCN CPO, and all of which occurred no later than 2009, which was the end of the period alleged in the complaint. *See* Doc. 1.

Because plaintiff has failed to satisfy the statutory requirements for restitution, the Court should deny restitution.

### e. The Court Should Deny Disgorgement of $153,355.04

The Court should deny plaintiff's request to require Reisinger to disgorge $153,355.04, because her receipt of these funds had nothing to do with the NCCN commodity pool or any violations found by the jury. Under *Hunt*, disgorgement is for illegally obtained profits from the violations that were found. 591 F.2d at 1223, citing *SEC v. Texas Gulf Sulphur*, 446 F.2d 1301, 1308 (2d Cir. 1971).

Plaintiff did not prove that these funds were illegally obtained, or that they resulted from the violations that were found. The proof was only that Reisinger received payments of $153,355.04 from ROF. Pl. Ex. 120. There was, however, no evidence that these payments had anything to do with the NCCN commodity pool, and hence they could not have resulted from the violations that the jury found. Plaintiff's investigator Malas did not trace these funds from the NCCN commodity pool. Pl. Ex. 120. Reisinger testified, without contradiction, that these funds were paid from ROF in connection with the NCCN bond trading program, which is not part of this case.

### 2. The Court Should Deny Plaintiff's Request for a Civil Monetary Penalty.

### a. Plaintiff's Proposed Penalty Exceeds the Statutory Maximum and is Wholly Disproportionate to the Violations that were Found.

The plaintiff CFTC has issued guidelines for civil monetary penalties which it may impose administratively. *See* CFTC Policy Statement and Guidelines, Comm. Fut. L. Rep. (CCH) ¶26,265 (1994). At the very least, these are instructive regarding the penalty that the plaintiff should request from a court. Plaintiff here has failed to even cite the guidelines. These guidelines, moreover, include an important consideration that plaintiff ignores, namely, sanctions in other analogous cases.

Plaintiff also fails to follow the Seventh Circuit's decision in *Slusser v. CFTC*, 210 F.3d 783 (7th Cir. 2000) in computing the maximum penalty permitted under the statute. In *Slusser*, the Seventh Circuit equated the number of violations to the number of Counts in the complaint, which in this case is six Counts. Accordingly, the maximum fine allowed by statute here is $780,000, and not the virtually infinite amount of money the plaintiff claims is the maximum, based on plaintiff's overreaching theory that it can declare a new violation every day.

Plaintiff has also failed to follow its own precedent. As stated by the CFTC in *In the Matter of Slusser*, Comm. Fut. L. Rep. (CCH) ¶ 29,411 (CFTC 2003) which was the administrative proceeding on remand from the Seventh Circuit, the gravity of the violations is not the same as the maximum statutory penalty. The CFTC also acknowledged that the Seventh Circuit's decision in *Slusser* equated the number of violations to the number of Counts. The CFTC in *Slusser* also cited its own precedent in *In re Incomco*, Comm. Fut. L. Rep. (CCH) ¶ 25,198 (CFTC 1991) as holding that a penalty must be based on the examination of the overall nature of the violative conduct rather than a simple enumeration of the violations.

Thus, under the guidelines and the CFTC's own case law, a civil penalty should not be based on counting up the violations and multiplying them by the statutory maximum as the plaintiff has done here. Rather, the test is the "gravity" of the offense, and considerations include whether there were victims who were harmed by the violations, and what sanctions were imposed in analogous cases. Here, as explained above, plaintiff failed to prove that the funds of the alleged victim, the Tongan Church, were ever deposited in the NCCN commodity pool, and thus plaintiff proved no customer harm.

The analogous cases for purposes of a penalty here are recordkeeping cases, which are based on regulatory violations without customer harm. One such case is *CFTC v. New Word*

*Holdings, LLC*, No. 10 C 4557 (Ex. B), which arose from the same investigation as this case, in which the penalty was $50,000. Another analogous case is *CFTC v. Pioneer Futures*, where the penalty for a recordkeeping case was $25,000.[3]

This case is most analogous to a recordkeeping case because, assuming Reisinger was a CPO, the case rests on the invalidity of the pool exemption claim form. If that claim form was valid, the case collapses. Accordingly, the Court should deny plaintiff's overreaching claim for a civil monetary penalty of over $3 million.

> **b.**  **In Imposing a Penalty, the Court Should Consider Reisinger's Ability to Pay.**

In *CFTC v. Rosenberg*, 85 F. Supp. 2d 424 (D.N.J. 2000), the defendant, Rosenberg, misappropriated approximately $265,000 from an investor for personal expenses, and provided false tax return statements to the investor in an attempt to conceal his conduct. *Id*. at 455. The CFTC requested a monetary penalty against Rosenberg for this conduct. *Id*. at 453. The court declined to impose *any* penalty, holding that: "Because the testimony in this case suggested that Rosenberg does not have the financial means to pay any amount set by the Court, I shall not impose a civil monetary penalty in this case." *Id*. at 455.

The court's decision in *Rosenberg* is not contrary to the Seventh Circuit's decision in *Brenner v. CFTC*, 338 F.3d 713 (7th Cir. 2003), where the court stated that as a result of amendments to the CEA in 1992, "the financial worth of the defendant or the collectability of any fine are no longer relevant considerations." *Id*. at 723. The *Brenner* court was addressing an appeal from sanctions imposed directly by the CFTC in its own administrative forum – *not* an appeal from a district court decision. *Brenner*, 338 F.3d at 715.

---

[3] A copy of the *Pioneer Futures* settlement order is attached as Exhibit C.

The CFTC may either enforce the CEA through its own administrative mechanism (as it did in *Brenner*), or it may alternatively enforce the CEA through actions brought in the district court (as it has done in the instant case).  *See CFTC v. King*, No. 3:06-CV-1583-M, 2007 WL 1321762, *5 (N.D. Tex. May 7, 2007).  The court in *King* held a court may consider a defendant's net worth in setting a penalty:

> "As an initial matter, the Court notes that 7 U.S.C. § 9a(1) – the relevant portion of the CEA that the [1992 Amendments] modified – concerns only what factors the *Commission* must consider when the *Commission itself* imposes a civil penalty . . . . Though the Commission repeatedly states that 7 U.S.C. § 9 is directed to 'the Commission and Courts,' this is simply not the case. . . . Accordingly, the court's observation in *AVCO*, [*CFTC v. AVCO Financial Corp.*, 28 F. Supp. 2d 104 (S.D.N.Y. 1998)] that courts "should be realistic" in imposing civil penalties, did not misunderstand the [1992 Amendments'] effect on the factors it should consider [in determining a penalty].  In fact, the court in *AVCO* did not mention the limitations of 7 U.S.C. § 9a(1) in assessing a civil penalty, likely because that provision was irrelevant to its assessment.  The Court thus determines that it may, in its discretion, consider Defendants' net worth in assessing a civil penalty."

2007 WL 1321762 at *5 (emphasis added); *see also CFTC v. R.J. Fitzgerald & Co.*, 8:99-CV-1558-T-MSS, 2006 WL 1406542, *1 (M.D. Fl. May 19, 2006); *CFTC v. Autry*, 6:10-CV-84, 2011 WL 6400352, *6 (S.D. Ga. Dec. 19, 2011).  Accordingly, district courts in CEA cases have a "duty to be realistic and not set a figure which is impossible for a defendant to comply with due to lack of monetary resources."  *CFTC v. Heffernan*, 274 F. Supp. 2d 1375, 1378-79 (S.D. Ga. 2003); *see also Rosenberg*, 85 F. Supp. 2d at 455; *CFTC v. AVCO*, 28 F. Supp. 2d 104, 121-22 (S.D.N.Y. 1998).

Reisinger is currently unemployed with a negative net worth of approximately $50,000.  *See* Declaration of Grace Elizabeth Reisinger.[4]  She therefore has no means to pay any civil

---

[4] The Declaration of Grace Elizabeth Reisinger is attached as Exhibit D.

penalty. Moreover, a civil penalty is not dischargeable in bankruptcy. *See U.S. v. Serfling*, 1997 U.S. Dist. LEXIS 10587, *8 (N.D. Ill. 1997). Therefore, any penalty she cannot pay will continue in effect for her entire life, and will constitute a financial life sentence.

A financial life sentence is wholly unwarranted in this case. On the merits, the maximum penalty that should be imposed is in the $25,000 - $50,000 range imposed in the *Pioneer Futures* and *New World Holdings* cases. When Reisinger's negative net worth is taken into account, however, the penalty should be assessed at $25,000, which is at the lower end of the range, so as to give her a chance to pay the penalty, rather than being financially shackled for life with a non-dischargeable penalty that she could not possibly pay.

**<u>Conclusion</u>**

For the foregoing reasons, the Court should deny plaintiff's claims for relief, and at most should impose a civil monetary penalty of $25,000 and an injunction against future violations of the specific provisions found to have been violated here, as follows: "Reisinger is enjoined from violating sections 4b, 4c(b), 4m, 4n and 4o of the Commodity Exchange Act, 7 U.S.C. §§ 6b, 6c(b), 6m, 6n, 6o, and from violating CFTC Regulations 4.13(b), 4.22, and 33.10, 17 C.F.R. §§ 4.13(b), 4.22, 33.10."

Date: November 2, 2016

<div style="margin-left: 40%;">

s/ William J. Nissen

William Nissen
Angelo J. Suozzi
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
p: (312) 853-7742
f: (312) 853-7036
wnissen@sidley.com
asuozzi@sidley.com

Attorneys For Defendant
Grace Elizabeth Reisinger

</div>

15

## CERTIFICATE OF SERVICE

I, William J. Nissen, an attorney, hereby certify that I have served copies of the foregoing **Reisinger's Opposition To Plaintiff's Motion For Order Of Permanent Injunction, Civil Monetary Penalties And Other Ancillary And Equitable Relief Against Defendants Grace Elizabeth Reisinger And ROF Consulting, LLC** upon the following individuals by the Court's ECF system on the 2nd day of November, 2016.

Timothy J. Mulreany
U.S. Commodity Futures Trading Commission
Division of Enforcement
Three Lafayette Center
1155 21st Street, N.W.
Washington, D.C. 20581
tmulreany@cftc.gov

Elizabeth N. Pendleton
U.S. Commodity Futures Trading Commission
Division of Enforcement
525 West Monroe Street
Suite 1100
Chicago, IL 60661
ependleton@cftc.gov

s/ William J. Nissen
William J. Nissen