**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES | ) | |
| TRADING COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 11-CV-08567 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| GRACE ELIZABETH REISINGER and | ) | |
| ROF CONSULTING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

The U.S. Commodity Futures Trading Commission ("CFTC") filed a six-count

Complaint against Defendants Grace Elizabeth Reisinger ("Reisinger") and ROF Consulting,

LLC ("ROF") seeking injunctive and other equitable relief for violations of the Commodity

Exchange Act ("Act") and CFTC Regulations ("Regulations") promulgated thereunder. The

complaint charged the defendants with violating the anti-fraud and commodity pool operator

registration and exemption provisions of the Act and of the Regulations. The court entered a

default against ROF on November 7, 2012, (ECF No. 47) and subsequently entered a permanent

injunction barring ROF from future violations of the Act and of the Regulations, from acting in

any capacity that requires registration with the CFTC, and from trading any commodity interests

on its own or others' behalf (ECF No. 102). The court held a week-long jury trial of the CFTC's

claims against Reisinger. On September 13, 2016, the jury found for the CFTC after deliberating

for about 90 minutes.

Before the court are two motions. In the first, referred to here as the motion for new trial,

Reisinger renews her motion for judgment as a matter of law made at the close of the evidence

and alternatively asks for a new trial. *See* Fed. R. Civ. P. 50(b), 59. For its part, the CFTC asks the court to order Reisinger to disgorge her ill-gotten gains, pay restitution, and pay a civil monetary penalty; it also seeks permanent injunctive relief, including a trading prohibition. (ECF No. 211 at 3.) Lastly, the CFTC moves the court to additional remedies against ROF now that the jury has returned its verdict. (*See id.* at 3–4). For brevity's sake, the court refers to the CFTC's motion with the admittedly incomplete title "motion for injunctive relief."

## I. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR ALTERNATIVELY FOR NEW TRIAL

Reisinger's motion for a new trial is denied. While the court agrees with defendant that the jury deliberations were unusually brief and that such brief deliberations in a complex case are troubling, the jury that was selected to hear this case had a substantial amount of business sophistication and was extremely attentive during the trial. More importantly, having reviewed the evidence introduced by both sides at trial, the court is persuaded that there was sufficient evidence to support the verdict the jury reached. That being the case, Reisinger's motion must be denied. As the CFTC has pointed out, the law in this circuit is clear: "[A] trial court should overturn a verdict only where the evidence supports but one conclusion—the conclusion *not* drawn by the jury." *Ryl-Kuchar v. Care Ctrs., Inc.*, 565 F.3d 1027, 1030 (7th Cir. 2009).

The CFTC introduced sufficient evidence to support the jury's conclusion that Reisinger was the commodity pool operator ("CPO") for the NCCN, LLC ("NCCN") commodity pool. Granted, Reisinger introduced conflicting evidence and vigorously cross-examined the CFTC's witnesses, all in an attempt to establish that others, particularly CFTC witness Larry Matthews, was the CPO of the NCCN commodity pool. But this created an issue for the jury, a factual and credibility conflict, not a miscarriage of justice. Reisinger's argument that her responsibilities were limited to selecting traders or administering pooled funds (Reply 2–3, ECF No. 214),

simply ignores much of the evidence the CFTC introduced.  *See* 7 U.S.C. § 1a(11) (West 2017) (defining "commodity pool operator"); *CFTC v. Equity Fin. Grp. LLC*, 572 F.3d 150, 157–59 (3d Cir. 2009); *see also CFTC v. Amerman*, 645 F. App'x 938, 942 (11th Cir. 2016) (unpublished) (assuming that whether defendant solicited funds and so met the definition of a commodity pool operator was question of fact); *CFTC v. Reisinger*, No.  11 C 8567, 2013 WL 3791691, at *12 (N.D. Ill. July 18, 2013) (citations omitted) (ruling that the closely related question of "whether the CPO managed the investors' funds" is one of fact).  It is not appropriate for the court to second guess the jury's resolution of credibility issues and factual disputes, as long as there was sufficient evidence to support the verdict.  *See, e.g.*, *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004) ("Our job at this stage[, considering a motion for judgment as a matter of law,] is not to determine whether the jury believed the right people, but only to assure that it was presented with a legally sufficient basis to support the verdict." (citing *Massey v. Blue Cross–Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000))).  In this case, there was sufficient evidence to support the verdict for the CFTC.

Once the CFTC produced enough evidence to support the jury's verdict on Reisinger's status as the CPO of the pool, the Act and the Regulations provided that Reisinger was required to have a valid exemption from registration, *see* 7 U.S.C. § 6m(1), and that a valid exemption required a reasonable basis for the belief that each natural person and non-natural person participant was a QEP (qualified eligible participant) or an accredited investor, *see* 17 C.F.R. § 4.13(a)(3)(iii)(D) (2008); *see also* § 4.7(a)(2) (defining "qualified eligible person").  The CFTC introduced adequate evidence that Reisinger did not have that information and that in fact, not all the participants were qualified to participate.

Reisinger contends that these violations were mere regulatory violations and not material to any of the pool investors. Rather, she contends, all the investors cared about was the performance of the traders for the pool. However, the CFTC argues that its claim was *not* that Reisinger was merely late in filing the required notice of exemption form, *see* § 4.13(b)(1), whether or not the jury believed Reisinger's evidence that she submitted the form on time but it was logged in late. Rather, the CFTC's contention was that defendant never properly determined that the pool investors were qualified eligible persons under § 4.7, meaning the exemption was *never* valid. If all that was at stake here was the arguably late submission or receipt of an exemption form, Reisinger's argument might have some persuasive force. But the CFTC's argument that the exemption Reisinger claimed was never valid because a number of the pool participants were not financially qualified to participate goes to the heart of the statutory and regulatory scheme put in place for the protection of investors. *See Equity Fin. Grp.*, 572 F.3d at 157 ("when Congress defined commodity pool operator, it sought to regulate the solicitation of funds from customers and potential customers. And it intended to protect them from harmful conduct, especially fraudulent solicitation."); *see also* H.R.Rep. No. 93–975, at 79 (1974) (statement of Dr. Clayton Yeutter, Assistant Secretary of Agriculture), quoted in *id.* ("One of the ways in which unsophisticated traders have lost substantial amounts of money is through commodity advisors and commodity pool operators. This bill will provide for the registration of all such persons . . . .").

Reisinger has argued in reply merely that the evidence was insufficient to establish that all the investors were unqualified, a contention the court rejects, and that it would not be material for some investors that other investors were not qualified. That the court should find that a violation of the regulations relating to the qualifications of investors is insufficiently material to

support the jury's verdict is, to say the least, an undeveloped argument. In this circuit, "[p]erfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived." *E.g.*, *United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) (quoting *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009)).

Finally, just as in the case of the CPO issue, the CFTC offered more than sufficient evidence to support the jury verdict that Reisinger was the controlling person of ROF. Unquestionably, as with respect to the pool operator issue, the defense offered conflicting evidence. But weighing the evidence is not the court's function. As long as there was sufficient evidence to support the verdict the jury reached, the verdict must stand. *Harvey*, 377 F.3d at 707. In this case, that requirement was more than satisfied.

Reisinger's argument that the court erred in entering a default as to ROF, and finding its liability thus established, is unpersuasive. Reisinger does not explain, and the court does not understand, how she was prejudiced by a finding of liability against a party which she claimed not to control. Requiring the CFTC to prove ROF's liability, when it had defaulted, seems far more problematic, not to mention a waste of time. Had Reisinger persuaded the court that the default prejudiced her in some way, her argument might have some force, but endless legal arguments about *Frow v. De La Vega*, 82 U.S. 552 (1872), when Reisinger defended on the ground that she had no control over ROF, are not convincing. As the court stated in its ruling on Reisinger's motion in limine on this point, an order of default against ROF and a judgment in favor of Reisinger are entirely consistent, given that Reisinger's defense was that she did not control ROF. (Ruling on Motions in Limine 6, ECF No. 138.)

Nor is the court persuaded that its ruling regarding the remaining pool funds was erroneous. In ruling on the parties' motions in limine, the court permitted the introduction of

evidence concerning these funds on two of the three bases advanced by the CFTC: not as a material omission, but as evidence of Reisinger's control over NCCN and ROF and as relevant to the amount of disgorgement, if any was ordered. It was the court's understanding that Reisinger did not object to the introduction of the evidence but only to the addition of a separate claim for misappropriation. The court said as much when it ruled on the motions in limine:

> The CFTC does not seek to add a claim for misappropriation but rather will introduce Reisinger's use of the funds as evidence of the claims already alleged against Reisinger. Reisinger does not attack the admissibility of the evidence, but rather objects to the addition of a separate claim at this point. As noted, the court does not opine on the propriety of an amendment at this point.

(Rulings on Motions in Limine 9.)

After reviewing all of the evidence, the court concludes that it was sufficient to support the jury's verdict. The court finds no reason to reconsider its prior rulings.

## II. DISGORGEMENT AND RESTITUTION

The CFTC asks the court to order Reisinger to disgorge $153,355.04 in what it terms "direct payments from ROF" and restitution for $497,893.88 she "converted to her own use" after closing the commodity pool's account. (Mot. for Inj. 11, ECF No. 211 (citing Pl.'s Ex. 120).) Reisinger disputes these characterizations of the funds. She also argues in supplemental briefing that the Supreme Court's recent decision in *Kokesh v. SEC*, 137 S. Ct. 1635 (June 5, 2017) calls the court's authority to order disgorgement and restitution into question, as well as the applicable statute of limitations. Because it goes to the court's power to award the requested remedies, the court begins with *Kokesh*.

### A. Authority to Award Disgorgement and Restitution

*Kokesh* resolved a split among the circuits over whether the five-year statute of limitations in 28 U.S.C. § 2462, which applies to "any 'action, suit or proceeding for the

enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise,' . . . applies to claims

for disgorgement imposed as a sanction for violating a federal securities law." *Kokesh*, 137 S.

Ct. at 1639. *Kokesh* "holds that . . . [d]isgorgement in the securities-enforcement context is a

'penalty' within the meaning of § 2462, and so disgorgement actions must be commenced within

five years of the date the claim accrues." *Id.*

Reisinger points to a footnote in *Kokesh* she believes calls into doubt the court's authority

to order disgorgement and restitution in an SEC enforcement action. (Def.'s Supplemental Mem.

2, ECF No. 220.) The footnote begins: "Nothing in this opinion should be interpreted as an

opinion on whether courts possess authority to order disgorgement in SEC enforcement

proceedings or on whether courts have properly applied disgorgement principles in this context."

*Kokesh*, 137 S. Ct. at 1642 n.3.

Reisinger's reasoning has at least two problems. First, footnote three of *Kokesh*

explicitly disclaims implying anything about a statutory question, so it does not help Reisinger's

argument about what the Commodity Exchange Act authorizes. *See FTC v. DirecTV, Inc.*, No.

15-cv-01129-HSG, 2017 WL 3453376, at *5 (N.D. Cal. Aug. 12, 2017) (rejecting defendant's

efforts to make similar argument because the Court "explicitly declined to make any finding

whatsoever [in footnote three], much less one relevant to whether the FTC has authority to seek

restitution"). More importantly, the question of securities law *Kokesh* may be referring to

appears to turn in large part on the text of the Securities Act, namely the absence of any language

explicitly authorizing disgorgement. *See Kokesh*, 137 S. Ct. at 1641 ("The Act left the

Commission with a full panoply of enforcement tools: It may promulgate rules, investigate

violations of those rules and the securities laws generally, and seek monetary penalties and

injunctive relief for those violations. In the years since the Act, however, the Commission has

continued its practice of seeking disgorgement in enforcement proceedings."); 15 U.S.C. § 77t

(West 2017); *CFTC v. Hunt*, 591 F.2d 1211, 1221–22 (7th Cir. 1979) (making this textual point

about the Securities Act). The Commodity Exchange Act, by contrast, explicitly authorizes

disgorgement and restitution:

> In any action brought under this section, the Commission may
> seek, and the court may impose, on a proper showing, on any
> person found in the action to have committed any violation,
> equitable remedies including--
>
> (A) restitution to persons who have sustained losses proximately
> caused by such violation (in the amount of such losses); and
>
> (B) disgorgement of gains received in connection with such
> violation.

7 U.S.C. § 13a-1(d)(3) (West 2017). The court declines Reisinger's invitation to abrogate this

text based on footnote three of *Kokesh*, which does not decide anything. The court remains

mindful of the Supreme Court's warning that "[l]anguage in one statute usually sheds little light

upon the meaning of different language in another statute, even when the two are enacted at or

about the same time." *Russello v. United States*, 464 U.S. 16, 24 (1983). The court follows

*CFTC v. Hunt*'s guidance (under a version of the Commodity Exchange Act that lacked the

explicit authority to order disgorgement and restitution) that the Act makes disgorgement and

restitution available as remedies in a CFTC enforcement action. *Hunt*, 591 F.2d at 1222–23

(holding that "a district court possesses the authority to order restitution pursuant to the

Commodity Exchange Act . . . [, and] a district court may compel a violator of regulations

promulgated under the trading limit provisions of the Commodity Exchange Act to disgorge his

illegally obtained profits").

**B. Funds Not in Violator's Possession**

Reisinger's supplemental memorandum features a variant of the argument just discussed built on the distinction between legal and equitable restitution explicated in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, (2002), an ERISA case. The plaintiffs there claimed they were entitled to funds under the plan's reimbursement provision that were "not in respondents' possession." *Id.* at 214. Under a state court's order approving a related settlement, the funds had been paid to their attorney and a special needs trust for distribution to creditors. *Id.* at 208, 214.

The plaintiffs sued under § 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), which authorizes a plan participant to sue for injunctive relief and "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of ... the terms of the plan." *Id.* at 209 (quoting 29 U.S.C. § 1132(a)(3) (1994 ed.)) (alterations in original). The Supreme Court "explained that 'appropriate equitable relief' here means 'those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were *typically* available in equity.'" *Chesemore v. Fenkell*, 829 F.3d 803, 811 (7th Cir. 2016) (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011)) (alterations in original). The Court recently summarized its reasoning in *Great-West* this way:

> We explained that restitution in equity typically involved enforcement of "a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.*, at 213. But the restitution sought in *Great–West* was legal—not equitable—because the specific funds to which the fiduciaries "claim[ed] an entitlement ... [we]re not in [the defendants'] possession." *Id.*, at 214.
>
> Since both the basis for the claim and the particular remedy sought were not equitable, the plan could not sue under § 502(a)(3).

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016) (alterations in original).

Reisinger points out that like the ERISA provision at issue in *Great-West*, the subsection of the Commodity Exchange Act authorizing the CFTC to seek restitution and disgorgement describes those remedies as "equitable relief." 7 U.S.C. § 13a-1(d)(3) (West 2017). She represents, and the CFTC agrees, that "[t]here is no evidence that Reisinger has the funds sought in restitution . . .[, and she] does not have the funds sought in disgorgement;" she "claimed reimbursement for expenses from [the funds sought in disgorgement] and used them to cover such expenses." (Def.'s Supplemental Mem. 3, ECF No. 220.) Hence, she reasons, the CFTC is seeking legal rather than equitable restitution and disgorgement because the funds have passed out of her possession, and so she no longer has any particular, identifiable funds on which to impose a constructive trust. *See Great-West*, 534 U.S. at 213–14.

Reisinger's analysis focuses too myopically on the use of the phrase "equitable remedies" in § 13a-1(d)(3). As the Sixth Circuit explained in an unpublished case, "unlike the ERISA provision at issue in [*Great-West*], § 13a-1(d)(3) expressly defines what restitution is included within the scope of those equitable remedies." *CFTC v. Miklovich*, 687 F. App'x 449, 453 (6th Cir. 2017) (unpublished). Reading § 13a-1(d)(3) as only "authoriz[ing] an award of restitution when the defendant was unjustly enriched or possessed identifiable funds subject to a constructive trust or lien is untenable" in light of the "plain meaning" of its text. *Id.* (reasoning that the reading Reisinger advances "contradict[s the text's statement] that restitution may be awarded to persons who sustained losses proximately caused by a violation of the CEA 'in the amount of such losses'" (citing *CFTC v. U.S. Bank, N.A.*, No. 13-cv-2041-LRR, 2014 WL 6474183, at *36 (N.D. Iowa Nov. 19, 2014))). The magistrate judge in the report and

recommendation Reisinger touts as supplemental authority agreed with *Miklovich*'s reasoning, quoted it extensively, and adopted it. *See CFTC v. S. Trust Metals, Inc.*, No. 14-22739-Civ-KING/TORRES, 2017 WL 2875427, at *10–11 (S.D. Fla. May 15, 2017), *report and recommendation adopted* 2017 WL 3835692 (S.D. Fla. Sept. 1, 2017). The magistrate judge added that "several canons of construction" support *Miklovich*'s reasoning. *Id.* at *11.

Reisinger acknowledges that even her own case cuts against her, but she nonetheless maintains that *Kokesh* undermines *Miklovich* and *Southern Trust Metals*' reasoning. She points to another portion of *Southern Trust Metals*' analysis mentioning an Eleventh Circuit case with which she claims *Kokesh* is inconsistent. *Id.* at *16 (citations omitted). The cited portion of *Southern Trust Metals* concerns a different question, however: whether contempt is available to enforce a restitution order, which turns out to be a complex issue involving the Federal Fair Debt Collection Practices Act, legal and equitable restitution, and contempt powers. *See Southern Trust Metals*, 2017 WL 2875427, at *16–19. The CFTC wants to obtain a restitution judgment here, not enforce one. Regardless of what remedies are available to enforce a restitution order (and the court implies nothing on that score), nothing in *Kokesh* diminishes the significance of § 13a-1(d)(3)'s plain language as recognized in *Miklovich*.

The court adds a canon of statutory construction of its own. As *Southern Trust Metals* notes, at *11, Congress added the express grants of authority to order disgorgement and restitution now codified at § 13a-1(d)(3) to the Commodity Exchange Act in 2010. *See* Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111–203, July 21, 2010, 124 Stat. 1376 § 744 (effective July 16, 2011). Congress thus legislated against the backdrop of *Great-West*, adding significance to its choice to enact language broader than § 502(a)(3) of ERISA. *See Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 988 (7th Cir. 2001) (when it amends a

statute, "courts presume that Congress will use clear language if it intends to alter an established

understanding about what a law means" (citations omitted)); *see also Porter v. Nussle*, 534 U.S.

516, 528 (2002) ("This Court generally 'presume[s] that Congress expects its statutes to be read

in conformity with th[e] Court's precedents.'" (quoting *United States v. Wells*, 519 U.S. 482, 495

(1997)) (brackets in original)).

Based on the foregoing analysis, the court finds the reasoning of *Miklovich*, 687 F. App'x

at 453; *Southern Trust Metals*, 2017 WL 2875427, at *11; and *U.S. Bank*, 2014 WL 6474183, at

*36 persuasive. The plain language of § 13a-1(d)(3), as amended by the Dodd-Frank Act,

distinguishes it from § 502 of ERISA and *Great-West*. Under § 13a-1(d)(3), this court has the

authority to order restitution not just of particular, identifiable funds in the violator's possession

but "to persons who have sustained losses proximately caused by [a] violation (*in the amount of

such losses*)." And disgorgement not just of specific, identifiable funds the violator has yet to

dissipate but "of *gains* received in connection with such violation." 7 U.S.C. § 13a-1(d)(3)(A),

(B) (emphases added).

## C. Statute Of Limitations

Reisinger also briefly mentions a statute-of-limitations argument under *Kokesh*. This

court ruled at summary judgment that § 2462's five-year limitations period "governs the CFTC's

civil penalty claims," so "the CFTC's civil penalty claims against Reisinger for conduct

occurring before June 29, 2006, are time-barred." (Slip Op. at 12, 13 (July 18, 2013), ECF No.

67.) But, the court explained, "[d]etermining whether proposed remedies are penalties subject to

§ 2462 requires a 'fact-intensive inquiry.'" *Id.* at 14 (quoting *SEC v. Microtune, Inc.,* 783 F.

Supp. 2d 867, 884 (N.D. Tex. 2011)). The court concluded its analysis this way:

> In this case, the court cannot determine which types of relief
> should be considered penalties based on the facts at hand. Thus,

> engaging with the parties' argle-bargle as to what constitutes a civil penalty is premature. The court has little basis on which to assess Reisinger's scienter, the egregiousness of her actions, and the likelihood that she might commit violations of the Act in the future. Therefore, although the court holds that the CFTC may not seek civil penalties for violations that occurred before June 29, 2006, the court denies Reisinger's motion for summary judgment insofar as it argues that *all* of the CFTC's claims constitute civil penalties barred by the statute of limitations.

*Id.* at 15 (internal citation omitted). That is, the court left the door open for Reisinger to revisit the limitations issue with the benefit of jury findings and the evidence introduced at trial.

Despite the open door, Reisinger made no mention of the statute of limitations in her response to the CFTC's motion for injunction (ECF No. 215). She devotes a single, conclusory sentence of her supplemental memorandum to an assertion that the disgorgement and restitution the CFTC seeks here are time-barred under *Kokesh*.[1] (*See* ECF No. 220 at 2.) By failing to argue at all that the other remedies the CFTC seeks are time-barred, Reisinger has waived the issue as to them. *See, e.g.*, *Kinslow v. Am. Postal Workers Union, Chicago Local*, 222 F.3d 269, 276–77 (7th Cir. 2000) ("[T]he Union waived its statute of limitations argument by failing to develop it before the district court."). As for disgorgement and restitution, the court finds Reisinger's one-sentence argument to be too underdeveloped to preserve the issue.[2] *See id.*; *see also, e.g.*, *Beavers*, 756 F.3d at 1059 (quoting *Mahaffey*, 588 F.3d at 1146); *Damian v. Carey*, No. 15 C 4335, 2017 WL

---

[1] Reisinger makes a related but distinct argument that the court cannot order equitable restitution because it cannot impose a constructive trust on funds not in her possession. (*See* Def.'s Supplemental Mem. 2–4.) The court addresses this argument in its analysis of the CFTC's request for restitution. *See* text *infra* at 9–12.

[2] By way of example, *Hunt*, *supra*, relied on Securities Act cases "reasoning that disgorgement does not penalize, but merely deprives wrongdoers of ill-gotten gains." *Hunt*, 591 F.2d at 1222 (citations omitted). *Kokesh*'s Securities Act holding that both remedies are penalties for § 2462 purposes may erode the ground on which *Hunt*'s interpretation of the Commodity Exchange Act stands, but the court has no briefing before it on *Hunt* or the Commodity Exchange Act. Nor does it have any post-trial briefing on the fact- and law-intensive inquiry required. In reaching its holding, the Court in *Kokesh* canvassed judicial decisions, and the SEC's actions and pronouncements to decide: (1) the Securities Act was a "public law," 137 S. Ct. at 1641; (2) that disgorgement "is imposed for punitive purposes" under the Securities Act, *id.*; and (3) that "in many cases, SEC disgorgement is not compensatory" *id.* at 1642. Reisinger discusses none of these issues as they apply to the Commodity Exchange Act, and she cites no authority shedding light on them (or any authority other than *Kokesh*). (*See* Pl.'s Supplemental Mem. 2.) The sentence just quoted from *Hunt* cuts against her on question two.

1178351, at *4 n.5 (N.D. Ill. Mar. 30, 2017) (holding defendants' "refer[ence] to a brief discussion" in prior decision didn't preserve the issue).

## D. Violations Established by Verdict and Default

Turning to the merits, violations of the Commodity Exchange Act have been established here.  *See* 7 U.S.C. § 13a-1(d)(3).  The jury found that Reisinger violated the Commodity Exchange Act and CFTC regulations, and ROF's default admits liability based on the well-pleaded facts in the complaint, *VLM Food Trading Int'l., Inc. v. Ill. Trading Co.*, 811 F.3d 247, 256 (7th Cir. 2016) ("[U]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true." (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983))).

## E. Disgorgement

Without objection (*see* Trial Tr. 386, ECF No. 205) the CFTC introduced a summary prepared by its investigator, George Malas (who also testified), of documents showing that ROF paid Reisinger $153,355.04 in commissions and other payments.  (Tr. Pl.s' Ex. 120 at 1.)  Malas traced those funds to the NCCN pool.  (*See id.*)  Citing Malas' summary, Reisinger points out that he did not match each commission or payment with a trade in one of the NCCN commodity pool's fourteen sub-accounts.  (*See* Resp. to Mot. for Inj. 11, ECF No. 215; *see also* Trial Tr. at 395:3–15, ECF No. 205 (cross examination); Tr. Pl. Ex. 120.)  This left a gap in the proof, according to Reisinger, because she "testified, without contradiction, that these funds were paid from ROF in connection with the NCCN bond trading program, which is not part of this case." (Resp. to Mot. for Injunction 11, ECF No. 215.)

The law does not demand the punctiliousness on which Reisinger insists: "The amount of disgorgement 'need only be a reasonable approximation of profits causally connected to the

violation.'" *SEC v. Michel*, 521 F. Supp. 2d 795, 830–31 (N.D. Ill. 2007) (quoting *SEC v. 1st City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989)); *see also Hunt*, 591 F.2d at 1223 (court should "attempt to isolate the profits achieved" by the violator when ordering disgorgement). Once the CFTC comes forward with evidence reasonably approximating the defendant's profits causally connected to the violation, "the burden shifts to the defendants to show that those figures were inaccurate." *FTC v. QT, Inc.*, 472 F. Supp. 2d 990, 995 (N.D. Ill. 2007) (quoting *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997)). Malas' summary (Tr. Pl. Ex. 120 at 1) reasonably approximates Reisinger's profits causally connected to the violations the jury found. The lack of a trade-by-trade analysis connecting each commission or payment Reisinger received to a corresponding trade gives the court some pause. Nevertheless, Reisinger admitted that she "did receive round turns [commissions] on the NCCN commodity pool." (Trial Tr., ECF No. 206 at 737:5.) Hence the only serious concern the lack of a trade-by-trade audit raises is the possibility that the payments Malas summarized include commissions and payments for unrelated bond trades.

But Reisinger has not pointed to competent evidence showing that possibility to be more than speculative. While the jury heard evidence that NCCN was initially established to trade bonds, Reisinger points to no competent evidence in her response that it traded bonds after the commodity pool began operating—the period summarized by Malas (*see* Tr. Pl. Ex. 120 at 1) Reisinger includes no citation to support her claim that her testimony established that the disputed funds were related to bond trading. (*See* Resp. to Mot. for Inj. 11.) Though it is not required to do so, the court has reviewed the entirety of Reisinger's trial testimony, and try as it might, it can find no support for her assertion. That is, Reisinger directs the court to no

competent evidence rebutting the CFTC's reasonable approximation of her profits causally connected to her violations.

After the CFTC began investigating her, Reisinger transferred the $153,355.04 to Donald Caffray, an attorney through whose client trust account funds had been funneled. Caffray later returned the money, but there is no evidence breaking the chain of causation linking the funds to ill-gotten gains. Reisinger made a version of this argument to the jury. The jury did not buy it. She argued, and testified, that Caffray was the only pool participant because the participants' funds began their journey to the NCCN account by being deposited into his client trust account. Later he forwarded the funds to be deposited in the pool account. Contrary to that argument, the jury found that Reisinger was the commodity pool operator and that she had to register because one or more participants' involvement made the pool nonexempt.

Reisinger correctly observes that the CFTC has not pleaded a misappropriation claim. Holding that the chain of causation was broken here because no misappropriation claim was pleaded would create a perverse incentive for violators to spend customers' money. *See Hunt*, 591 F.2d at 1223 ("[T]o allow a violator to retain the profits from his violations would frustrate the purposes of the regulatory scheme." (citations omitted)). Reisinger points to no evidence suggesting that the participants consented to, much less knew of, Reisinger's boomerang transaction with their lawyer. On this record, then, the money Reisinger sent to Caffray that he later returned remained ill-gotten gains from the whole affair.

Following the jury's lead, the court will order Reisinger to disgorge her ill-gotten gains. The CFTC's request for disgorgement is granted. *See QT, Inc.*, 472 F. Supp. 2d at 996 ("Having made the strategic decision to expect the Court to find the FTC's calculation inadequate,

Defendants[, who presented no evidence rebutting calculation,] must now live with the consequences of that decision and will not be permitted to introduce new evidence.").

## F. Restitution

The court comes at last to the CFTC's request that the court order Reisinger to pay $497,893.88 in restitution. "[T]he amount of restitution must be calculated as the difference between what Defendants obtained and the amount customers have already received back." *CFTC v. Ross*, No. 09 C 5443, 2014 WL 6704572, at *3 (N.D. Ill. Nov. 26, 2014). Reisinger says that the CFTC did not produce enough evidence that the funds deposited in the NCCN pool account are traceable to customers' deposits.

The trial record amply supported the jury's implicit finding that the money in the NCCN account was traceable to pool participants' investments. Reisinger cites no evidence suggesting that the funds in the NCCN account came from any source other than participants' deposits. The record amply supported the contrary conclusion implicit in the jury's findings (see the next paragraph). Emails from Reisinger, for example, demonstrate her consciousness that funds in the pool account came from participants because she directed the return of funds in the account to participants during the pool's lifespan and when it was closed. Take the CFTC's exhibit 105, which is an email from a church asking about the return of its six-figure investment. Reisinger notes that the email shows that the church's money was sent to the NCCN account but not that it was deposited. But it is reasonable to infer, in the absence of contrary evidence, that something was received from the fact that it was sent, so the jury could, and implicitly did, infer that this email shows that participants' funds were in the NCCN account. *See, e.g.*, *Miller v. Pinson*, No. 94 C 2157, 1996 WL 596501, at *8 (N.D. Ill. Oct. 15, 1996) (inferring person received letter based on testimony that it was sent because "[t]here was no evidence that Sheahan did not

receive [it]"). Because these funds are funds the pool participants sent to the pool but did not get back, the court orders Reisinger to repay them. *See Ross*, 2014 WL 6704572, at *3.

The CFTC also renews its request for an order requiring ROF to pay $344,108.30 in restitution to its investors. The court deferred the same request at summary judgment because the imminent trial might have resulted in a liability finding inconsistent with requiring ROF to pay restitution. (*See* Slip Op. at 4–5 (Sept. 2, 2015), ECF No. 102.) Now that the jury has returned a verdict for the CFTC, that danger no longer exists, and Reisinger does not mention the request directed to ROF in her response to the instant motion. The CFTC presented evidence at summary judgment that the $344,108.30 represented the difference between the amount deposited by ROF in the NCCN pool account and the amount it returned to investors. (*See* Slip Op. at 4 (citing Malas Decl. ¶ 11).) Malas' trial testimony bolstered that evidence, and the court therefore grants the motion for restitution as to ROF.

### III. CIVIL PENALTY

The CFTC moves the court to impose civil penalties of $3.12 million on Reisinger and $1,041,793.02 on ROF. As applicable here, the Act authorizes the court to impose "on a proper showing, . . . a civil penalty in the amount of not more than the greater of $100,000 or triple the monetary gain to the person for each violation." 7 U.S.C. § 13a-1(d)(1)(A) (West 2017). Under its authority to adjust the maximum amount for inflation, the CFTC has determined that for violations "[c]ommitted between October 23, 2004 and October 22, 2008," the maximum civil penalty to be "not more than the greater of $130,000 or triple the monetary gain to such person." 17 C.F.R. § 143.8(a)(1)(i)(B) (West 2017)

**A. The Maximum Penalty**

The court first determines how to count violations when calculating the maximum civil penalties allowed. In *Slusser v. CFTC*, 210 F.3d 783, 786 (7th Cir. 2000), the Seventh Circuit held that "the penalty in an administrative prosecution is limited by the number of violations alleged in the complaint times the maximum fine per violation." The CFTC acknowledges that this principle applies in this civil action (*Slusser* arose from an administrative proceeding before the CFTC), and so it should because *Slusser* interpreted the subsection of the Act at issue here. *See id.* This court has already determined that the five-year statute of limitations, *see* 28 U.S.C. § 2462, bars imposition of a civil penalty for conduct that occurred before June 30, 2006.

The parties disagree about whether each day after that date can be counted as a separate violation authorizing a separate $130,000 penalty. The complaint alleges, and the jury found, six violations, so Reisinger's maximum penalty equals six times the $130,000, as Reisinger reads *Slusser*. The CFTC counts 944 days between June 30, 2006, and January 30, 2008, when the pool's trading account was closed. Citing the complaint in this case (ECF No. 1) and *CFTC v. Levy*, 541 F.3d 1102, 1111 (11th Cir. 2008), the CFTC submits that each of those days marked six fresh violations for penalty purposes, so Reisinger's maximum penalty equals $130,000 times six violations per day times 944: $736,320 million. The CFTC compares its $3.12 million penalty request to that figure to show that it makes a relatively modest request equivalent to four of the 944 days' penalties to which Reisinger was exposed. (*See* Mot. for Inj. 16–17, ECF No. 211.)

The counting dispute in *Levy* stemmed from the fact that the CFTC's complaint pleaded five violations in a one-count complaint charging the defendant with solicitation fraud. *See Levy*, 541 F.3d at 1110. The proof at trial showed, and the district court found, that the defendant

victimized five different people.  *See Levy*, 541 F.3d at 1104, 1106–09.  The defendant cited *Slusser* to argue that the single count capped the allowable civil penalty at the maximum for one violation, but the Eleventh Circuit disagreed.  *See id.* at 1110–11.  It explained that unlike the complaint in *Slusser*, "the CFTC did not charge Levy with only one violation, but rather made explicit on the face of its complaint that '[e]ach material representation and omission of UIG and its APs, including ... those specifically alleged [in the complaint], is a separate and distinct violation of' the CEA."  *Id.* at 1111 (quoting complaint, alterations in original).  Because that language adequately notified the defendant that he faced allegations of five separate violations under the heading of a single count, it upheld the imposition of a penalty computed by multiplying the inflation-adjusted cap by five.  *Id.*

Like the *Slusser* and *Levy* courts, this court looks to the complaint to determine how many violations it gives the defendants fair notice of.  *See Slusser*, 210 F.3d at 786 ("A reasonable person in Slusser's position would have assumed that his maximum exposure was $600,000 and financed his defense accordingly.").  The court separates Counts I–III of the complaint from Counts IV–VI.  The first three counts enumerate seven identical misrepresentations, omissions, or statements of material fats.  (*See* Compl. ¶¶ 67, 72, 77.) Counts I–III each include an allegation similar to the complaint in Levy that "[e]ach misrepresentation and/or omission of material fact and each false account statement, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation . . . ."  (Compl. ¶¶ 70, 75, 80.)  Counts IV–VI charge the defendants with violations of the Act and Regulations related to acting as commodity pool operators without registering.  These counts use different language to characterize what the CFTC claims are separate violations: "[e]ach use of the mails or a means or instrumentality of interstate commerce"

(Compl. ¶ 84 (Count IV)); "[e]ach invalid claim to exemption from the requirement to register" and "[e]ach failure to give notice of the invalidity of her claimed exemption from the requirement to register as a CPO" (Compl. ¶¶ 91, 92 (Count V)); and "[e]ach failure to furnish annual reports and/or monthly account statements" (Compl. ¶ 97 (Count VI)).

As this recital makes clear, the complaint alleges multiple violations per count, but it does not tie them to each passing day in so many words or by implication. As in *Slusser*, "it would have been easy to separate the events into tens if not hundreds of violations, or to allege that each day of managing the funds without registration as a commodity pool operator was a separate violation. But the CFTC's staff did not do any of these things . . . ." *Slusser*, 210 F.3d at 786. The language of the CFTC's complaint here could be canvassed to determine how many violations each count alleges. The seven misrepresentations in Counts I–III might be multiplied by three, or the number of months in the five-year limitations period might be appropriately computed to determine how many violations Count VI alleges. But the CFTC does not attempt a count-by-count analysis, so the court will not either. *See, e.g.*, *Johnson v. City of Chicago*, 142 F. Supp. 3d 675, 694 (N.D. Ill. 2015) ("it is not this court's job to make arguments or marshal evidence for represented parties" (quoting *Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co.*, No. 03 C 5529, 2008 WL 4389834, at *1 (N.D. Ill. Sept. 24, 2008))). The court instead treats the complaint like the complaint in *Slusser*. It gave Reisinger fair notice that she faced $780,000 (six times $130,000) in penalties.

Dicta in *Slusser* buttresses the court's conclusion. The *Slusser* court suggested that the CFTC may not have alleged that each day running the pool without registering as a CPO marked a fresh violation "perhaps because 7 U.S.C. § 13b implies that fines for each day of a series of violations are appropriate only after the CFTC has issued a cease-and-desist order." *Slusser*, 210

21

F.3d at 786. The briefing does not discuss § 13b. Still, *Slusser*'s dictum on it provides the court with further reason not to accept the CFTC's position that the complaint charged Reisinger with six violations occurring on each of the 944 days in the limitations period.

**B. The Appropriate Penalty**

The amount of a civil penalty "must . . . be 'rationally related to the offense.'" *CFTC v. Li*, No. 15 C 5839, 2016 WL 8256392, at *8 (N.D. Ill. Dec. 9, 2016) (quoting *Monieson v. CFTC*, 996 F.2d 852, 864 (7th Cir. 1993)). At least three factors guide the inquiry: "(1) the nature of the violations, (2) the injury caused by the violations, and (3) penalties used in similar cases." *Id.* (citing *Monieson*, 996 F.2d at 864).

1. <u>Ability to Pay</u>

Reisinger also asks the court to consider her ability, actually her inability, to pay. She submits a declaration stating that she is unemployed and has a negative net worth of $37,000 (*See* Reisinger Decl. 1, ECF No. 215-4.)

In *Brenner v. CFTC*, 338 F.3d 713, 723 (7th Cir. 2003), a case arising from a CFTC administrative enforcement action, the Seventh Circuit held that "the financial worth of the defendant or the collectability of any fine are no longer relevant considerations" when calculating a penalty. The *Brenner* court based its holding on Congress' 1992 amendment to the Commodity Exchange Act's list of factors the Commission must consider when imposing a penalty. *Id.* By its terms, this portion of the Act prescribes what "the Commission shall consider." 7 U.S.C. §9a(1) (West 2017). No comparable list exists in the portion of the Act authorizing the court to impose civil penalties; the subsection empowering the court authorizes a penalty "on a proper showing." 7 U.S.C. § 13a-1(d). Reisinger cites out-of-circuit district court cases relying on this textual difference and the legislative history of the Futures Trading

Practices Act of 1992, Pub. L. No. 102-546, § 209, 106 Stat. 3590, 3606-07 (1992), to conclude

that courts, unlike the Commission, retain discretion to consider a defendant's ability to pay a

penalty. *See, e.g.*, *CFTC v. King,* No. 3:06-CV-1583-M, 2007 WL 1321762, at *5 & n.4 (N.D.

Tex. May 7, 2007) (collecting much of the authority on which Reisinger relies).

The court finds *King*'s reasoning persuasive. Two cases in this district cite *Brenner* to

hold that a defendant's ability to pay should not be considered when a court imposes a penalty

under § 13a-1(d)(1). But neither grapples with the textual differences between §§ 9a and 13a-

1(d)(3) or the legislative history of the 1992 amendment to the Commodity Exchange Act. *See

Li*, 2016 WL 8256392, at *8 n.7; *CFTC v. Sarvey*, No. 08 C 192, 2012 WL 426746, at *6 n.8

(N.D. Ill. Feb. 10, 2012); *see also Aurifex Commodities Research Co.*, No. 1:06-CV-166, 2008

WL 299002, at *12 (W.D. Mich. Feb. 1, 2008) (same; out-of-circuit). That history reveals that

by eliminating the statutory requirement that the CFTC consider a person's ability to pay,

Congress hoped to eliminate litigation it deemed "a burden on the Commission's enforcement

program." *King*, 2007 WL 1321762, at *5 n.4 (quoting H.R. Rep. No. 102-6, at 55–56 (1991)).

It chose language–"the Commission shall"—suited to that purpose, § 9a(1), and the court

declines to stretch that language further than its plain meaning.

The CFTC suggests that imposing too small a penalty will not deter Reisinger or future

offenders. (Reply 7 n.2, ECF No. 216.) Allowing a person's ability to pay to enter the mix does

not make it dispositive, however. Considering a violator's ability to pay merely allows the

penalty to fit the wrong and the wrongdoer. *See King*, 2007 WL 1321762, at *6 (imposing

$449,000 (10% of $4.5 million gain) penalty because violator was insolvent and was ordered in

criminal case to pay $4.5 million in restitution); *CFTC v. AVCO Fin. Corp.*, 28 F. Supp. 2d 104,

121 (S.D.N.Y. 1998) (imposing $5,000 penalty because "[i]n fixing any civil monetary penalty,

courts should be realistic and not set a figure which is impossible for a defendant to comply with due to lack of monetary resources"), *aff'd in part, rev'd in part on other grounds*, 228 F.3d 94 (2d Cir. 2000). Allowing the penalty to fit the violator's unique circumstances can and does promote respect for the law rather than detract from it, furthering the statute's remedial and deterrence goals. *Cf. Gall v. United States*, 552 U.S. 38, 54 (2007) (finding supportable district judge's conclusion at criminal sentencing that "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing"); *See Li*, 2016 WL 8256392, at *10 (considering whether "unique circumstances" alleged to exist by violator warranted decreasing penalty).

2. The Nature of Reisinger's Violations and the Harm to Customers

The violations the jury found encompass fraud and failing to register as a CPO. Reisinger attempts to minimize them as regulatory, framing them as though she just filed a tardy and inaccurate form, but they are serious.

For instance, the jury found for the CFTC on allegations Reisinger misrepresented to pool participants that a $5 million minimum was required to participate, and she never disclosed fee payments to a foreign introducing broker. *See Slusser*, 210 F.3d at 785 (evidence supporting finding of fraud included fact that CPO, who never registered, "lied to [a participant] when he promised to manage the funds according to the prospectus"). By evading the registration requirement, Reisinger evaded the need to send disclosures and monthly statements that may well have alerted pool participants to what she was doing and to the fact that they were participating in a pool with much different characteristics than the $5 million minimum implied. Hence even if the court accepts Reisinger's contention that no customer harm was proven (nor

was any necessary, *see Slusser*, 210 F.3d at 745–46 (reliance unnecessary to establish fraud under the Act)), the seriousness of these violations cannot be gainsaid by analogy to recordkeeping violations that hurt no customers. *Cf. CFTC v. New World Holdings, LLC,* No. 10-cv-4557, available in this record at ECF No. 215-2, Ex. B (recordkeeping violations against Reisinger settled by consent order for $50,000 in penalties).

3. Analogous Cases and Determination

The CFTC cites several fraud and failure-to-register cases in which courts recently imposed sizable penalties ranging from one to three times the violator's financial gains. *See Reply 7*. From these cases, the court takes the point that penalties are often tied to the violator's financial gain where, as here, the gain exceeds the per-violation cap. *See CFTC v. Sarvy*, No. 08 C 192, 2012 WL 426746, at *6 (N.D. Ill. Feb. 10, 2012) ($5 million penalty equaling twice financial gain in case involving broker misconduct).

After considering the applicable factors and Reisinger's negative net worth, the court imposes a civil penalty of $64,124, or 10% of the financial gain Reisinger realized. *See King*, 2007 WL 1321762, at *6 (imposing penalty of 10% of financial gain). In so doing, the court observes that while Reisinger is unemployed, the record provides no reason to suppose that she is unemployable.

**C. ROF**

The CFTC also asks the court to impose a $1,041,793.02 penalty against ROF. This amount represents triple the amount of ROF's disgorgement. (Mot. Inj. 16, ECF No. 211). Unlike Reisinger, ROF's failure to respond leaves the court with no reason not to impose the requested penalty. *See Li*, 2016 WL 8256392, at *10. The court grants the CFTC's request for a penalty as to ROF.

## V. INJUNCTION AND TRADING BAN

The court grants the CFTC's request for a permanent injunction. Because the injunction the CFTC seeks here is a statutory creation, the CFTC need only establish a violation and "that there is some reasonable likelihood of future violations." *Hunt*, 591 F.2d at 1220 (citations omitted) (noting that ordinary requirements for an injunction do not have to be satisfied). The jury's findings establish violations, so the court asks whether the CFTC has shown a reasonable likelihood that Reisinger will violate the Act in the future. *See id.*

Reisinger asks the court to tailor the injunction to the particular violations proven at trial. She states that "[a]n injunction against engaging in any activity requiring registration in the future would be far broader than the violations that were found and would unfairly deprive Reisinger of the ability to continue to act as a broker, where she has had no violations." (Resp. to Mot. Inj. 8, ECF No. 215.) While Reisinger has had no adjudicated violations as a broker, she asks the court to treat the agreed civil penalty entered against her in *New World Holdings*, *supra*, as an analogous penalty. *New World Holdings* was an enforcement action against Reisinger and others for recordkeeping violations; she worked as a broker at the time.

As the court sees it, the entry of the consent order (ECF No. 215-2, Ex. B) in *New World Holdings* demonstrates Reisinger's propensity to violate the Act again, so a trading ban, registration ban, and injunction covering future violations of the Act are warranted. In opposing injunctive relief Reisinger reprises several arguments the court has already addressed. Her insistence that the violations the jury found were "isolated regulatory violations" (Resp. to Mot. for Inj. 8, ECF No. 215) further convinces the court that she does not appreciate the seriousness of her conduct, making repetition more likely. The CFTC's request for injunctive relief is granted in its entirety.

## V. CONCLUSION

For the reasons stated, Reisinger's motion for judgment as a matter of law or for new trial (ECF No. 200) is denied. The CFTC's motion for injunction (ECF No. 211) is granted in part and denied in part. The court orders: Reisinger is permanently enjoined from committing further violations of the Act and its implementing regulations, acting in any capacity that requires registration with the Commission or an exemption from registration, and trading any commodity interests for herself or on behalf of others; Reisinger to disgorge $153,355.04; ROF to disgorge $344,108.30; Reisinger to pay $497,893.88 in restitution; Reisinger to pay a civil penalty of $64,124.00; and ROF to pay a civil penalty of $1,041,793.02. The CFTC's requests for an award of prejudgment interest and to hold Reisinger liable for ROF's violations of the Act, disgorgement and civil monetary penalty are also granted.

The CFTC is directed to submit a proposed order and final judgment on or before October 3, 2017.


Date:   September 19, 2017                          _____/s/_____
                                                    Joan B. Gottschall
                                                    United States District Judge