**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 11 C 8567 |
| GRACE ELIZABETH REISINGER and ROF CONSULTING, LLC, | ) ) ) | Judge Joan B. Gottschall |
| Defendants. | ) ) | |

<u>**CORRECTED MEMORANDUM IN SUPPORT OF MOTION TO AMEND**</u>
<u>**JUDGMENT AND UNDERLYING FINDINGS**</u>

The Final Judgment and Order of Permanent Injunction, Disgorgement, Restitution and Civil Monetary Penalties (Doc. 231) ("Judgment") and the Memorandum Opinion & Order (Doc. 230) ("Opinion") are based upon manifest errors of law and fact. Pursuant to Rules 52(b) and 59(e), Fed. R. Civ. P., this Court should amend its findings in the Opinion and the relief granted in the Judgment to correct these errors. *See Divane v. Krull Electric Co.*, 194 F.3d 845, 848 (7th Cir. 1999) (a Rule 59(e) motion should be granted if there exists a manifest error of law or fact so as to enable the court to correct its errors and avoid unnecessary appellate procedures); *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986), *citing Evans, Inc. v. Tiffany & Co.*, 416 F. Supp. 224, 244 (N.D. Ill. 1976) (Rule 52(b) motion may be brought to correct manifest errors of law or fact).

**I.      It Was a Manifest Error of Law to Hold Reisinger Liable for ROF's Civil Penalty.**

In addition to imposing a civil penalty of $64,124 on Reisinger, the Judgment provides that Reisinger is jointly and severally liable for the $1,041,793.02 penalty imposed on ROF

Consulting, LLC ("ROF"). Judgment, Doc. 231, ¶ 18. The requirement that Reisinger pay ROF's penalty is clearly contrary to law, and should be stricken from the Judgment.

The Court's assessment of a civil penalty against Reisinger of $64,124 was extensively briefed by the parties and addressed by the Court at length in the Opinion. Opinion, Doc. 230, pp. 18-25. As required by the applicable case law, in determining the amount of the penalty, the Court considered the number of violations, the nature of the violations, the injury caused by the violations, penalties in similar cases, and Reisinger's ability to pay a penalty. *Id*. After considering all these factors, the Court determined the appropriate penalty was $64,124. *Id*. at 25.

In contrast, the Court's ruling that Reisinger is also jointly and severally liable for ROF's civil penalty of $1,041,793.02 was not the subject of any argument by the parties, was not substantively addressed in the Opinion, and was imposed without considering the factors required by case law for imposition of a civil penalty. Rather, plaintiff CFTC included a single sentence in its 17-page motion asking for the additional penalty, with no case law citations and no discussion, and the Court, without any discussion or citation of supporting authority, ruled that Reisinger was liable for ROF's penalty in addition to her own. Doc. 211, p. 4.; Opinion at 27.

It was a manifest error of law to impose the second civil penalty on Reisinger, amounting to an additional $1,041,793.02, which is more than sixteen times the amount that the Court found was the appropriate penalty, and which is significantly higher than the $780,000 that this Court found to be the maximum penalty that could be imposed on Reisinger. *See* Opinion at 21, 25. The additional penalty is not authorized by the statutory provision governing penalties, 7 U.S.C. § 13a-1(d), and is precluded by Seventh Circuit case law.

2

Plaintiff cited only the statutory provision providing for controlling person liability, 7 U.S.C. § 13c(b), as the basis for imposing a second penalty on Reisinger.  Doc. 211, p. 4.  But this statutory provision does not make a controlling person liable for any *penalty* assessed against a controlled person.  Rather this provision, by its terms, provides only that the controlling person is liable for the controlled person's *violation*.  The imposition and amount of a civil penalty are governed by a separate statutory provision, 7 U.S.C. § 13a-1(d), which, as argued by Reisinger and discussed at length by the Court in its Opinion, has been construed in extensive case law to require specific factors to be considered in determining the penalty.  Opinion at 18-25.  None of these factors were identified by the plaintiff or discussed by the Court in imposing the second civil penalty on Reisinger.  *See  id*. at 27; Doc. 211.

Under well-established law, controlling person liability is one of three types of secondary liability provided for under the Commodity Exchange Act, the other types being principal-agent liability and aiding and abetting liability.  *See Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966-67 (7th Cir. 1986).  All of these provisions, moreover, relate only to liability for a violation, not liability for a penalty.

Both the Seventh Circuit and the CFTC have recognized that a finding of controlling person liability does not do away with the need to make an individualized determination regarding a penalty for the controlling person.  In *Monieson v. CFTC*, 996 F.2d 852 (7th Cir. 1993), the Seventh Circuit reviewed a civil penalty imposed by the CFTC in an administrative proceeding against Brian Monieson, who had been found to be controlling person for two employees of GNP Commodities ("GNP").  In the administrative proceeding, the CFTC had assessed Monieson with a $500,000 penalty, and each of the employees with a penalty of $75,000, after making an individualized determination as to each of them.

3

On review in the Seventh Circuit, the employees did not appeal their penalties, so those penalties remained at $75,000 each.  Monieson, however, contested his.  The Seventh Circuit ruled that in assessing a penalty against Monieson, the CFTC was required to consider the gravity of the offense, the need for deterrence, the defendant's net worth, the nature of the violations, the existence of injuries inflicted on others by the violations, and a review of sanctions imposed in the past for similar violations.  996 F.2d at 862.  After applying these factors, the Seventh Circuit found that the $500,000 penalty imposed on Monieson was excessive, and reduced Monieson's penalty to $200,000.  *Id*. at 865.  Thus the Seventh Circuit found that an individualized determination as to the controlling person was necessary, regardless of the amount of the penalty imposed on the controlled person.

In the underlying administrative action against Monieson, the CFTC similarly recognized that controlling person liability relates only to liability for a violation, and that the penalty is governed by the individualized factors that apply to penalties.  The Administrative Law Judge ("ALJ") first found that the employees of GNP had committed violations and that Monieson was liable for those violations as a controlling person.  Reviewing Monieson's conduct individually, the ALJ found his violation was extremely serious, and among other relief, ordered Monieson to pay a civil penalty of $500,000.  The ALJ also imposed a $75,000 penalty on each of the employees, but only after separately reviewing their circumstances.  Thus, in the administrative proceeding, the controlled and controlling persons each received penalties only after an individualized determination was made as to each.  *See In the Matter of GNP Commodities*, Comm. Fut. L. Rep. ¶ 24,857 (CFTC ALJ 1990).  This ALJ decision was affirmed by the CFTC Commissioners who also made individualized determinations regarding the penalties for

4

Monieson and the one employee who appealed. In *In the Matter of GNP Commodities*, Comm. Fut. L. Rep. ¶ 25,360 (CFTC 1992).

Like the CFTC and the Seventh Circuit in the *Monieson* proceedings, this Court made an individualized determination as to the controlling person (Reisinger) and a separate determination as to the controlled person (ROF). Opinion at 22-25. As the Court ruled in its Opinion, Reisinger's maximum penalty, based on the six Counts of the Complaint, was six violations times the maximum penalty of $130,000 per violation, or $780,000. *Id*. at 21. The Court then determined a penalty for Reisinger by considering the applicable factors, including the number of violations, the nature of the violations, penalties in similar cases, and Reisinger's ability to pay. Opinion at 22-25. The Court emphasized that this was an individualized determination: "Allowing the penalty to fit the violator's unique circumstances can and does promote respect for the law rather than detract from it, furthering the statute's remedial and deterrence goals." Opinion at 25. After discussing the various factors, the Court concluded that the appropriate penalty should be $64,124. *Id*.

Having made this determination regarding the appropriate penalty for Reisinger, there is no statutory or case law basis for the Court to impose a second, significantly higher penalty against her based solely on controlling person liability. Consistent with the statute and the case law (*Rosenthal*, *supra*) holding that controlling person liability is only a basis for secondary liability for a *violation*, the allegation of controlling person liability in the Complaint was merely one alternative basis for holding Reisinger liable for violations, just as principal-agent liability was a basis for holding ROF liable for violations. *See* Complaint, Doc. 1, ¶¶ 79, 96. Moreover, the controlling person allegation against Reisinger in the Complaint was largely redundant and circular. For all but one of the six alleged violations (Count Four), ROF was only alleged to be

liable for a violation because Reisinger had allegedly committed the violation, on the ground that ROF was liable for her violations on a principal-agent theory. *See* Complaint, Doc. 1. Thus, by being found to be liable, as a controlling person of ROF for ROF's violations, which were based on Reisinger's own alleged violations, Reisinger was found liable for her own violations.

In view of the Court's determination that $64,124 was the appropriate penalty for Reisinger, it is inconsistent with that determination, and contrary to clear statutory and case law, for the Judgment to include an additional penalty of over $1 million to be imposed on Reisinger for the same violations that the Court found warranted a maximum penalty of $780,000 and an appropriate penalty of $64,124. Moreover, it is plain from the Opinion that the Court determined that the penalty of over $1 million should be imposed on ROF by default, without making an individualized determination as to Reisinger. Indeed, the Court noted that its determination as to the amount of ROF's penalty was a separate determination from the penalty to be imposed on Reisinger, stating: "Unlike Reisinger, ROF's failure to respond leaves the Court with no reason not to impose the requested penalty." Opinion at 25.

Plaintiff CFTC asserted in its reply memorandum that Reisinger waived opposition to its request that she be liable for ROF's penalty. Doc. 216, p. 10. This argument should be summarily rejected. If there was any waiver, it was a waiver by plaintiff CFTC. As this Court ruled in the Opinion, "[p]erfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived." Opinion at 5, citing *United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014). Plaintiff's request for the additional penalty was in a single sentence in a 17-page motion, and was perfunctory and underdeveloped. Doc. 211, p. 4. Plaintiff cited only the statute, which on its face does not provide for the controlling person to pay the controlled person's penalty. *Id*. Plaintiff failed to support its request with any case law or other

authority to support the position that a controlling person must pay a controlled person's penalty, and offered no explanation why the statutory provision providing for liability should also result in imposition of an additional penalty without any consideration of the factors required to support a penalty. *Id.* In particular, plaintiff failed to explain how its claim could have any validity in light of the decisions of the CFTC and the Seventh Circuit in *Monieson*, both of which provided for the penalty against a controlling person to be determined individually and separately from the determination for the controlled person, contradicting plaintiff's request for the automatic imposition of a second penalty on Reisinger. Failure to reject the CFTC's claim for being perfunctory and undeveloped was itself a manifest error of law.

Consistent with *Monieson* and in contrast to the plaintiff's unsupported position, Reisinger fully supported her position that any penalty was required to be based on the individualized factors required by case law. She made fully developed arguments that any penalty for her had to be determined individually for her based on the factors identified in case law, by citing case law in support of her position and by asking the Court to deny all relief requested by plaintiff except for a $25,000 penalty and an injunction against future violations. Doc. 215, pp. 11-15.

## II.     It Was a Manifest Error of Law to Make Reisinger Liable for ROF's Mis-Named "Disgorgement Obligation."

For the same reasons that preclude Reisinger's liability for ROF's civil penalty, Reisinger should not be liable for what the Judgment refers to as the "ROF Disgorgement Obligation." *See* Judgment at ¶ 4. This reference to a "Disgorgement Obligation" for ROF is itself clearly erroneous, because the discussion in the Court's Opinion makes it clear that this amount was restitution rather than disgorgement. *See* Opinion at 18.

7

The Court made an individualized determination regarding the restitution and disgorgement obligations imposed on Reisinger. Opinion at 14-18. As with the penalty, there is no statutory or case law basis for the Court to impose ROF's mis-named "Disgorgement Obligation" on Reisinger just because it was imposed on ROF, which failed to defend.

Moreover, the restitution obligation of ROF, erroneously referred to in the Judgment as a "Disgorgement Obligation," is duplicative of the restitution obligation that the Court imposed directly on Reisinger. Both restitution obligations are for the purpose of returning the same funds to pool participants that they did not receive back, with the restitution obligation of Reisinger being greater than ROF's restitution obligation. Opinion at 17-18. Thus, if Reisinger were to pay hers, it would also satisfy the lesser amount imposed on ROF.

The imposition on Reisinger of the "ROF Disgorgement Obligation," which was actually a restitution obligation, merely because she was a controlling person of ROF, is not authorized by the statute or by case law. It was a manifest error of law to impose this obligation on Reisinger, and it should be stricken from the Judgment.

## III. The Disgorgement Obligation Imposed on Reisinger is Based on Manifest Errors of Fact.

Reisinger contended that plaintiff CFTC failed to offer sufficient evidence that the disgorgement amount it sought against Reisinger was connected to the NCCN commodity pool. Doc. 215, p. 11. In rejecting Reisinger's argument in the Opinion, the Court relied on the testimony of Reisinger that she received round turn commissions in connection with the trading in the NCCN commodity pool. Opinion at 15. The Court, moreover, rejected Reisinger's argument that the amounts identified by plaintiff on Plaintiff's Exhibit 120 were connected with bond trading, on the ground that the Court reviewed the transcript of Reisinger's testimony and was unable to find evidence to support Reisinger's argument. *Id.*

The statement that there is no evidence in the transcript to support Reisinger's argument that the payments were related to bond trading is a manifest error of fact. It appears that the Court did not have the entire transcript of Reisinger's testimony, which took place on two dates – September 9 and 12, 2016, because the transcript of her testimony on September 12, 2016 does not appear in the Court's docket. The September 12 transcript reflects Reisinger's clear, undisputed testimony that the payments referenced in plaintiff CFTC's Exhibit 120 were *not* commodity futures commissions. Tr., p. 902, attached as Exhibit A hereto. In addition, Reisinger pointed to two specific examples on Exhibit 120 of amounts that related to treasury purchases for customers other than the commodity pool, one of which was for a "treasury purchase," *i.e.*, a bond purchase, for a customer named Global Funeral Services, and the other of which was for a treasury purchase for a customer named Geneva Financial. Tr., pp. 902-04, attached as Exhibit A hereto. There is no basis in the evidence for a finding that these payments related to the commodity pool.

The Opinion contains other manifest errors of fact in its discussion of the $153,355.04 that it ordered to be disgorged. The Opinion states: "After the CFTC began investigating her, Reisinger transferred the $153,355.04 to Donald Caffray, an attorney through whose client trust account funds had been funneled." Opinion at 16. The Opinion then asserts that Caffray returned the funds, and that "Reisinger points to no evidence suggesting that participants consented to, much less knew of Reisinger's boomerang transaction with their lawyer." *Id*.

These statements are manifest errors of fact, because there is no evidence in the record to support these statements. The funds that Reisinger sent back to Caffray were the $497,893.88 that the Court ordered in restitution. Tr., Doc. 206, pp. 744-46. There was no evidence that the $153,355.04 was ever sent to Caffray.

9

The plaintiff CFTC failed to connect any payments comprising the $153,355.04 on Exhibit 120 to the NCCN commodity pool or to any violation of the Commodity Exchange Act. Further, Reisinger testified without dispute that these were not commodity futures commissions, and she gave two specific examples of amounts that related to treasury purchases for customers other than the commodity pool. Based on the clear errors of fact in the Opinion, and the failure of the CFTC to support this claim with evidence, the disgorgement obligation against Reisinger should be stricken from the Judgment.

**IV.     The Injunction Against Trading and Registration is Based on a Manifest Factual Error.**

Reisinger argued in her response that the Court should limit any imposed injunction to an injunction against future violations. Doc. 215, p. 4. The Court's rationale for ordering an injunction against trading and registration was as follows: "As the court sees it, the entry of the consent order (ECF No. 215-2, Ex. B) in *CFTC v. New World Holdings* demonstrates Reisinger's propensity to violate the Act again, so a trading ban, registration ban, and injunction covering future violations of the Act are warranted." Opinion at 26. This rationale was based on a manifest factual error, namely the statement in the Opinion that there was a $50,000 civil penalty entered against Reisinger in *New World Holdings*. *Id*. at 25-26. The civil penalty in the *New World Holdings* settlement was against New World Holdings, not against Reisinger. Doc. 215-2, Ex. B, ¶ 31. Indeed, that settlement order dismissed Reisinger with prejudice from the action. *Id*. at ¶ 37. The Court's rationale for imposing an injunction against trading and registration on Reisinger was therefore based on a clearly erroneous factual premise. For the reasons stated by Reisinger in her response to the CFTC's motion (Doc. 215, pp. 4-8), the Court should strike the injunctions against trading and registration from the Judgment.

**V.     It was a Manifest Error of Law and Fact to Award Prejudgment Interest.**

In the Opinion, the Court stated that the CFTC's request for prejudgment interest was granted. Opinion at 27. This award was based on a manifest error of fact, because the CFTC did not request prejudgment interest. Rather, the CFTC only requested post-judgment interest. Doc. 211, pp. 3-4.

Moreover, even if plaintiff had requested prejudgment interest, it would have been a manifest error of law to award it on the penalty. There is no legal basis for prejudgment interest on the penalty. The purpose of prejudgment interest is to put a party that is owed a sum of money in the position it would have been in if the sum had been paid immediately. *American Nat. Fire Ins. v. Yellow Freight Systems*, 325 F.3d 924, 935 (7th Cir. 2003). There was no penalty owed until the Court imposed it in the Opinion, and therefore no basis for prejudgment interest even if it had been requested, which it was not.

Thus, the CFTC made no request in its Motion for any prejudgment interest, and there is also no legal basis to add prejudgment interest to the penalty. Because the awards of prejudgment interest are based on manifest errors of fact and law, they should all be stricken from the Judgment.

**VI.    It was a Manifest Error of Law to Include Enforcement Provisions in the Judgment.**

The Court specifically discussed in the Opinion that the *Southern Trust Metals* case cited by Reisinger raised issues relating to enforcement of a judgment in an enforcement case, including contempt. In the Opinion (at 11), after referring to contempt as one of the remedies discussed in the *Southern Trust Metals* case, the Court stated that "the court implies nothing" regarding the remedies available to enforce a restitution order. Opinion at 11. Contrary to the Court's Opinion disclaiming any decision on whether contempt would be an appropriate remedy for enforcement of the Judgment, paragraph 14 of the Judgment provides that pool participants

"may seek to hold Reisinger in contempt for any violations of any provision of this Order." Doc. 231, p. 7. This reference to contempt should be stricken because it is not properly part of the Judgment, and it is inconsistent with the Court's Opinion. Any issues relating to enforcement of the Judgment can and should be addressed at the time of enforcement, and should not be prematurely addressed in the Judgment. As reflected in the Opinion, Reisinger submitted evidence that she is unemployed with a negative net worth and therefore has no means to pay the restitution award. Opinion at 22. The Judgment should not state that pool participants can seek to hold her in contempt for failing to pay an amount that she has no means to pay.

Paragraph 11 of the Judgment states in pertinent part: "Reisinger shall execute any documents necessary to release funds that she has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation." Judgment at 7. As with the reference to contempt, this relates to enforcement of the Judgment, which the Court stated in its Opinion that it was not addressing. *See* Opinion at 11.

Rules 69, 70 and 71 of the Federal Rules of Civil Procedure govern the enforcement of judgments. Rule 69(a)(1) governs enforcement of a money judgment, such as the restitution award in this case. Under that rule, attachment and execution procedures must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies. *See*, *e.g.*, *Wyatt v. Syrian Arab Republic*, 800 F.3d 331, 337 (7th Cir. 2015). Plaintiff has cited no federal statute that authorizes the procedure included in the Judgment, whereby Reisinger is required to execute documents necessary to release funds. Rather, garnishment is a procedure available to a judgment creditor to attach funds in an account of the judgment debtor. *See id.*

This Court should address any issues related to enforcement pursuant to the Federal Rules of Civil Procedure, in the specific context in which the issue arises, not in the Judgment. Paragraphs 11 and 14, which relate to enforcement of the Judgment, and not to the relief granted, should be stricken from the Judgment.

## VII.   The Court's Basis for Finding Evidence of Fraud was Based on a Manifest Error of Fact.

Reisinger's motion for judgment as a matter of law should have been granted on Counts One through Three, which were the fraud-based claims, because the Court's basis for finding evidence of fraud is based on manifest errors of fact.

In the Opinion, the Court's only discussion of a basis for the finding of fraud, *i.e.*, material misrepresentations or omissions,  was as follows:

> For instance, the jury found for the CFTC on allegations Reisinger misrepresented to pool participants that a $5 million minimum was required to participate, and she never disclosed fee payments to a foreign introducing broker.  *See Slusser*, 210 F.3d at 785 (evidence supporting finding of fraud included fact that CPO, who never registered, "lied to [a participant] when he promised to manage the funds according to the prospectus").  By evading the registration requirement, Reisinger evaded the need to send disclosures and monthly statements that may well have alerted pool participants to what she was doing and to the fact that they were participating in a pool with much different characteristics than the $5 million minimum implied.  Opinion at 24.

This part of the Opinion is based on manifest errors of fact.  Although the plaintiff made allegations concerning the $5 million minimum in the Complaint (Doc. 1, ¶ 77), the plaintiff failed to prove them, and did not argue to the jury that they had been proven.  Doc. 207, pp. 993-1023, 1041-42.  There was no evidence that Reisinger represented to any investors that there was a $5 million minimum investment required.  Moreover, although there was evidence that two payments were made to a foreign introducing broker (Doc. 206, p. 737), plaintiff did not prove anything about why it would be material to an investor to know what individuals received the

brokerage commissions paid by the commodity pool after they were paid to the brokerage firm, and plaintiff did not argue to the jury that this was a material misrepresentation or omission to support the fraud claims. *Id.*

As Reisinger argued in her motion for judgment as a matter of law, plaintiff failed to prove material misrepresentations or omissions, and instead plaintiff argued that the fraud was the failure to disclose regulatory violations. Doc. 201, pp. 5-6. Fraud is a serious charge, and plaintiff should not be permitted to convert a regulatory violation into fraud merely by saying it was not disclosed. If plaintiff is permitted to prevail on the fraud charges in this case, any regulatory violation could become a fraud violation, merely by alleging that the regulatory violation was not disclosed.

The Court should not permit plaintiff to establish fraud merely by providing a regulatory violation and claiming it should have been disclosed. The Court should grant judgment as a matter of law on Counts One through Three, and amend the Judgment accordingly.

## CONCLUSION

For the foregoing reasons, the Court should grant defendant Reisinger's Motion To Amend Judgment And Underlying Findings, and amend the Judgment and underlying findings as prayed for in that Motion.

Date: November 2, 2017

<div style="margin-left: 40%">

s/ William J. Nissen
William Nissen
Angelo J. Suozzi
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
p: (312) 853-7742
f: (312) 853-7036
wnissen@sidley.com
asuozzi@sidley.com

Attorneys For Defendant
Grace Elizabeth Reisinger

</div>

## CERTIFICATE OF SERVICE

I, William J. Nissen, an attorney, hereby certify that I have served copies of the foregoing **Corrected Memorandum In Support Of Motion To Amend Judgment And Underlying Findings** upon the following individuals by the Court's ECF system on the 2nd of November, 2017.

Timothy J. Mulreany
U.S. Commodity Futures Trading Commission
Division of Enforcement
Three Lafayette Center
1155 21st Street, N.W.
Washington, D.C. 20581
tmulreany@cftc.gov

Elizabeth N. Pendleton
U.S. Commodity Futures Trading Commission
Division of Enforcement
525 West Monroe Street
Suite 1100
Chicago, IL 60661
ependleton@cftc.gov

s/ William J. Nissen
William J. Nissen

# EXHIBIT A

Reisinger - direct by Nissen

902

1    Q.  And Plaintiff's Exhibit 120, we'll put that up.  It's in

2    evidence.  Did you find -- well, first of all, let me ask you a

3    question about Exhibit 120.  Does that include any commodity

4    futures commissions from the NCCN pool account?

11:22:17    5    A.  No, it does not.

6    Q.  And did you find any discrepancies?

7    A.  Yes, I did.

8    Q.  And could you briefly summarize what those are?

9    A.  Sure.  On 6/3 of 2005, it shows that I had a transfer of

11:22:31    10   $1,520.72 into my account.  That was actually a withdrawal, and

11   it was a withdrawal from 6/3 of 2005 of the 3211.  It went into

12   one of my other accounts.  So that $1,520.72, they have it as a

13   credit.  It should be a debit.  Then on 8/5, it's the same

14   thing.  From 8/2, there was $5,000 transferred from my Wells

11:23:04    15   Fargo 9096 account, and I transferred it to my Wells Fargo 2825

16   account and they credited that back to me.  Then on the 27,515,

17   the Dadey/Reisinger, I was on her account because she was dying

18   of cancer and needed to have a signatory on that account.  I

19   didn't necessarily have access to those funds.  The same with

11:23:32    20   8/11, the 5,000, and the 9/1 is the same thing.

21   Q.  And, for example, what was the -- do you recall what the

22   $27,515 distribution related to?

23   A.  Yes.  It was one of the only Bank of America distributions

24   that Alan made, and it was for a $30 million treasury purchase

11:23:59    25   for Global Funeral Services.  That was not a part of the

Reisinger - direct by Nissen

903

1    commodity pool.

2    Q.  Okay.  Defendants' Exhibit 31, I believe it's in evidence.

3    Yeah, it's been admitted.

4    A.  Okay.

11:24:17    5    Q.  If you could turn to that, we'll put it up on the screen.

6    Are you familiar with these invoices in Defendants' Exhibit 31?

7    A.  The first time I saw them was during my Australian

8    deposition and, yes, I have been able to trace back those

9    invoices that they presented me with.

11:24:41    10    Q.  Okay.  From the work you have done on the records, that

11    wire in on 8/29/06, does that mean a wire out?

12    A.  It was a wire that Geneva Financial sent into ROF

13    Consulting, LLC, for fees for a treasury purchase that they had

14    done.

11:25:06    15    Q.  And did that have anything to do with the NCCN commodity

16    pool?

17    A.  No, it did not.

18    Q.  And is that -- can you correlate this particular invoice

19    here of August 30, 2006, to anything on Plaintiff's Exhibit

11:25:23    20    120?

21    A.  Yes.

22    Q.  Okay.  What does it correlate to?

23    A.  It correlates to the September 1, 2006.

24    Q.  Okay.  How does it correlate to that?

11:25:35    25    A.  Because those fees were divided by five, each one of the

Reisinger - cross by Mulreany

904

1    members of ROF received a portion of that, and David Hobbs

2    received a portion of that for the introduction of Geneva

3    Financial.

4              MR. NISSEN:  Your Honor, I have no further questions.

11:25:53    5              THE COURT:  All right, ladies and gentlemen.  You will

6    remember that the commission called Ms. Reisinger as part of

7    its case, and they've already done a fairly lengthy

8    examination.  So this examination, I'm told, is likely to be

9    considerably shorter as a result of that.

11:26:15    10             MR. MULREANY:  Yes, Your Honor.

11             THE COURT:  Mr. Mulreany?

12             MR. MULREANY:  Thank you, Your Honor.

13                        CROSS-EXAMINATION

14   BY MR. MULREANY:

11:26:18    15   Q.  Good morning, ma'am.

16   A.  Good morning.

17             MR. MULREANY:  If we could, let's put Plaintiff's

18   Exhibit 1, page 91, on the screen, please.

19       (Discussion off the record.)

11:26:51    20             MR. MULREANY:  Defendant's 1, page 91, please.  I'm

21   sorry.  This is already in evidence, Your Honor.  I'd ask that

22   it be published to the jury.

23             THE COURT:  You may.

24       (Discussion off the record.)

11:27:23    25             MR. MULREANY:  How about 87?  Sorry.