IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> GRACE ELIZABETH REISINGER and ROF CONSULTING, LLC, <br><br> Defendants. | No. 11 C 8567 <br><br> Judge Joan B. Gottschall |

**MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER AND AMEND ORDER AND UNDERLYING FINDINGS**

On September 25, 2018, this Court held that the judgment against Reisinger (Doc. 231) was "based on manifest errors of law and fact," vacated the judgment, and granted Reisinger 28 days to move for reconsideration and to set aside findings pursuant to Rule 52(b). Doc. 245, p. 6. Because the Court's Memorandum Opinion & Order (Doc. 230) ("Order") includes findings and conclusions that are based upon manifest errors of law and fact, this Court should reconsider the Order and amend its findings and the relief granted in the Order to correct these manifest errors pursuant to Rules 59(e) and 52(b), Fed. R. Civ. P. *See Divane v. Krull Electric Co.*, 194 F.3d 845, 848 (7th Cir. 1999) (a Rule 59(e) motion should be granted if there exists a manifest error of law or fact so as to enable the court to correct its errors and avoid unnecessary appellate procedures); *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986), *citing Evans, Inc. v. Tiffany & Co.*, 416 F. Supp. 224, 244 (N.D. Ill. 1976) (Rule 52(b) motion may be brought to correct manifest errors of law or fact).

    **I.**    **The Order is based on Manifest Errors of Fact**

This action was bifurcated, with issues relating to violations tried to the jury, and issues relating to relief tried to the Court. In such a bifurcated action, the Court is entitled to make any

findings that are not inconsistent with the jury verdict. *See Ohio-Sealy v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir. 1978) (in equitable relief proceeding following jury trial, court is free to make findings not inconsistent with the jury verdict).

The following findings made by the Court were based on manifest errors of fact, and Reisinger requests that the Court strike them and amend the Order accordingly:

**Erroneous Finding No. 1:**

The finding on page 14 of the Order that CFTC investigator George Malas traced the payments to Reisinger of $153,355.04 on Plaintiff's Exhibit 120 to the NCCN pool. Doc. 230, p. 14.

**Basis for striking Erroneous Finding No. 1:**

The Order states that Malas traced the funds to the NCCN pool by citing to Plaintiff's Exhibit 120. Pl. Ex. 120; Doc. 230, p. 14. However, Malas himself testified on cross-examination that he did not trace these payments to any of the cash accounts maintained by the NCCN pool. Doc. 205, Tr., p. 395. He also testified that he did not trace the payments to any of the 14 sub-accounts where commodity futures trades were made by the NCCN pool, and did not determine whether the payments came from commissions on those trades. *Id.* Based on this testimony alone, the Court's finding should be stricken.

Moreover, Plaintiff's Exhibit 120, which is entitled "Summary of Commissions and Other Payments to ROF Members," on its face reflects only that these payments came from a variety of sources, including an NCCN account at Morgan Keegan, an ROF account at Morgan Keegan, an unattributed account at Morgan Keegan, an ROF account at Bank of America, an ROF account at PNC and an NCCN account at PNC. Pl. Ex. 120. Morgan Keegan was a securities broker. Doc. 204, Tr., p. 239. PNC is a bank (Doc. 205, Tr., p. 276), as is Bank of

America. The NCCN commodity pool accounts, however, were maintained at Cadent Financial Services ("Cadent"), which is the commodity brokerage firm where the NCCN pool traded commodities and generated commissions. Doc. 204, Tr., p. 219.

Finally, in addition to admitting that he did not trace the payments to the NCCN pool's accounts at Cadent, Malas testified that he had no personal knowledge of what occurred in this case other than his review of documents, and when asked what Plaintiff's Exhibit 120 showed, he simply repeated the title of the exhibit. Doc. 205, Tr., pp. 384-85, 395. For all of the foregoing reasons, the Court should strike its erroneous finding that the payments on Plaintiff's Exhibit 120 were traced to the NCCN pool.

**Erroneous Finding No. 2:**

The finding on page 15 of the Order that there is no support for Reisinger's assertion that funds of $153,355.04 paid by ROF related to bond trading. Doc. 230, p. 15.

**Basis for striking Erroneous Finding No. 2:**

The Court stated in the Order that Reisinger testified that she received round-turn commissions for commodity futures trades, and that Reisinger failed to offer evidence that the payments of $153,355.04 shown on Plaintiff's Exhibit 120 were related to bond purchases. Doc. 230, p. 15. It is true that Reisinger testified that she received round-turn commissions on futures trades made by the NCCN pool (Doc. 206, Tr., p. 735), but as shown above, plaintiff failed to establish that the payments shown on Plaintiff's Exhibit 120 were these round-turn commissions.

Moreover, the statement in the Order that there is no support in the transcript for Reisinger's assertion that the payments shown on Plaintiff's Exhibit 120 related to bond trading is based on a manifest error of fact. Reisinger gave undisputed testimony that these payments

were not commodity futures commissions. Ex. A[1], Tr., p. 902. In addition, Reisinger testified without dispute that two specific examples of payments shown on Plaintiff's Exhibit 120 related to treasury purchases, *i.e.*, bond purchases, for customers other than the commodity pool, and supported her testimony with an invoice relating to such trading. Ex. A, Tr., pp. 902-04, Def. Ex. 31. Finally, counsel for plaintiff stated at trial that "ROF Consulting was involved in a number of different investments that had nothing to do with the commodity pool." Doc. 206, Tr., p. 604. Accordingly, the finding that there is no support in the transcript for the assertion that the payments on Plaintiff's Exhibit 120 were related to bond trading should be stricken.

**Erroneous Finding No. 3:**

The finding on page 16 of the Order that Reisinger transferred $153,355.04 to Donald Caffray. Doc. 230, p. 16.

**Basis for striking Erroneous Finding No. 3:**

This amount was not the amount that was sent to Caffray and returned by him. Rather, the amount that was sent to Caffray and returned by him was $497,893.88, which was the amount remaining in the NCCN commodity pool when it stopped trading. Pl. Ex. 88, Def. Ex. 79, Doc. 212, Tr., pp. 522-23, Doc. 206, Tr., pp. 744-46, Ex. A, Tr., pp. 882-83, 916-917. There is no evidence that the $153,355.04 was ever sent to Caffray, returned by Caffray, or that it had anything to do with Caffray.

**Erroneous Finding No. 4:**

The finding on page 24 of the Order that the jury found for the CFTC on allegations that Reisinger misrepresented to pool participants that a $5 million minimum was required to

---

[1] Exhibit A to this Memorandum includes pages of the transcript that were not filed with the Court by the court reporter.

participate, and that she never disclosed fee payments to a foreign introducing broker. Doc. 230, p. 24.

**Basis for striking Erroneous Finding No. 4:**

These allegations were in the complaint (Doc. 1, para. 72), but they were not proven at trial or argued to the jury as a basis for finding fraud. Plaintiff's counsel told the jury during opening statements that plaintiff would prove that Reisinger lied to investors by misrepresenting that there was a minimum $5 million minimum to trade (Doc. 204, Tr., p. 196), but plaintiff failed to support that statement with evidence. There was no evidence that Reisinger represented to investors that a $5 million minimum investment was required. There was evidence that it was customary in the industry for fees, known as round-turn commissions, to be charged by the broker for transactions, and these fees were split among a number of people involved in the transaction, including any introducing broker as well as Reisinger herself. Doc. 206, Tr., pp. 735-37. But there was no evidence that the commissions were wrongly charged, that there was anything improper about splitting them among the persons involved in introducing the business or brokering the transactions, or that they were relevant to any participant's decision to invest in the pool. Significantly, there was no argument by plaintiff that these payments were a basis for any finding of fraud. Rather, the only argument made by plaintiff to the jury as a basis for finding fraud was that it was a fraudulent omission for Reisinger not to tell investors that she did not have a valid a registration exemption, and therefore she did not have a legal right to do what she was doing. Doc. 207, Tr., pp. 994, 1013.

**Erroneous Finding No. 5:**

The finding on pages 25 and 26 of the Order that there was a civil penalty of $50,000 imposed on Reisinger in *CFTC v. New World Holdings, LLC*, No. 10-cv-4557 (N.D. Ill.). Doc. 230, pp. 25, 26.

**Basis for striking Erroneous Finding No. 5:**

The Court stated in its September 25, 2018 order that this settlement did not apply to Reisinger, and that the error in so characterizing it "undergirded the court's award of injunctive relief and its analysis of the sufficiency of the evidence to support the fraud claims." Doc. 245, p. 5.

**Erroneous Finding No. 6:**

The finding on page 25 of the Order that 10% of the financial gain realized by Reisinger was $64,124. Doc. 230, p. 25.

**Basis for striking Erroneous Finding No. 6:**

This finding is the mathematical equivalent of finding that the gain to Reisinger was $641,240. This figure appears to be an erroneous calculation of the combination of the $153,355.04 in payments to Reisinger that were shown on Plaintiff's Exhibit 120, and the $497,893.88, that remained in the NCCN commodity pool when trading ended.[2] As shown above, however, the inclusion of the $153,355.04 was based on manifest errors of fact, because this amount was never shown to be connected to the NCCN commodity pool or any futures trading by the pool, and therefore it could not be found to be connected to any violation of law by Reisinger in this case. Accordingly, for purposes of determining the penalty, the gain to Reisinger should be limited to $497,893.88, which was the amount remaining in the pool when it

---

[2] The actual sum of these two figures is $651,248.92.

6

stopped trading. Def. Ex. 79, Ex. A, Tr. 916. This amount was returned to Caffray who had invested the funds, but Caffray then refused to accept the funds, and sent them back. *Id.*

## II. The Court Should Amend the Order Based on the Manifest Errors of Fact.

The Court should strike the manifestly erroneous findings and amend the Order accordingly, as follows:

### A. The Court Should Vacate the Disgorgement Obligation of $153,355.04.

The Court should vacate the disgorgement obligation of $153,355.04 (Doc. 230, pp. 16, 27) because Reisinger's receipt of these funds was not shown to be connected with the NCCN commodity pool or any violations found by the jury. Under *CFTC v. Hunt*, 591 F.2d 1211 (7th Cir. 1979), disgorgement is only for illegally obtained profits from the violations that were found. 591 F.2d at 1223, *citing SEC v. Texas Gulf Sulphur*, 446 F.2d 1301, 1308 (2d Cir. 1971).

In her opposition to plaintiff's post-trial motion for relief, Reisinger contended that plaintiff failed to offer sufficient evidence that the disgorgement obligation it sought against Reisinger was connected to the NCCN commodity pool. Doc. 215, p. 11. In rejecting Reisinger's argument in the Order, the Court stated that CFTC investigator Malas traced the payments to Reisinger shown in Plaintiff's Exhibit 120 to the NCCN pool. Doc. 230, p. 14. As shown above, however, Malas admitted he did not trace these funds to the NCCN pool's cash account, or to any of the trades made by NCCN in its futures trading account. Doc. 205, Tr., p. 395. Rather he merely characterized the exhibit as showing commissions and other payments to ROF members, by repeating the title of the exhibit, without any evidence of what the payments and commissions were for. Doc. 205, Tr., pp. 384-85. And counsel for plaintiff represented to the Court that ROF was involved in a number of different investments that had nothing to do with the commodity pool. Doc. 206, Tr., p. 604.

In rejecting Reisinger's challenge to the sufficiency of the evidence to support the disgorgement obligation, the Court also relied on the testimony of Reisinger that she received round-turn commissions in connection with the trading in the NCCN commodity pool, and the Court ruled that Reisinger had failed to show that the payments on Plaintiff's Exhibit 120 were not these round-turn commissions. Doc. 230, p. 15. The Court, moreover, rejected Reisinger's argument that the amounts identified by plaintiff on Plaintiff's Exhibit 120 were connected with bond trading, on the ground that the transcript lacked evidence to support Reisinger's argument. Doc. 230, pp. 15-16.

The statement that there is no evidence to rebut the assertion that the payments were round-turn commodity commissions, or to support Reisinger's argument that the payments were related to bond trading is a manifest error of fact. As shown above, Reisinger gave undisputed testimony that the payments referenced in Plaintiff's Exhibit 120 were not commodity futures commissions. Ex. A, Tr., p. 902. In addition, Reisinger pointed to two specific examples on Exhibit 120 of amounts that related to treasury purchases for customers other than the commodity pool, one of which was for a "treasury purchase," *i.e.*, a bond purchase, for a customer named Global Funeral Services, and the other of which was for a treasury purchase for a customer named Geneva Financial. Ex. A, Tr., pp. 902-04. There is no thus basis in the evidence for a finding that the payments shown on Plaintiff's Exhibit 120 came from the NCCN commodity pool.

As also shown above, the Order contains other manifest errors of fact in its discussion of the $153,355.04 that it ordered to be disgorged. The Order states: "After the CFTC began investigating her, Reisinger transferred the $153,355.04 to Donald Caffray, an attorney through whose client trust account funds had been funneled." Doc. 230, p. 16. The Order then asserts

8

that Caffray returned the funds and that "Reisinger points to no evidence suggesting that participants consented to, much less knew of Reisinger's boomerang transaction with their lawyer." *Id*.

These statements are manifest errors of fact, because there is no evidence in the record to support these statements. The funds that Reisinger sent back to Caffray were the $497,893.88 that was remaining in the NCCN commodity pool when it stopped trading. Def. Ex. 79, Doc. 206, Tr., pp. 744-46, Ex. A, Tr., p. 916. There was no evidence that the $153,355.04 was ever sent to Caffray.

Thus, plaintiff failed to connect any payments comprising the $153,355.04 on Exhibit 120 to the NCCN commodity pool or to any violation of the Commodity Exchange Act ("CEA") by Reisinger. Based on the clear errors of fact in the Order and the failure of the CFTC to support this claim with evidence, the disgorgement obligation of $153,355.04 should be stricken from the Order.

### B. The Amount of the Civil Penalty Should be Reduced to $25,000.

The Court determined that Reisinger should be assessed a civil penalty of $64,124 based on two manifest errors of fact. These manifest errors were (1) that the amount of gain from the violations was $641,240, and (2) that under the circumstances, Reisinger's penalty should be 10% of that amount. Doc. 230, pp. 24-25. The amount of gain was a manifest error of fact, because the amount of the disgorgement should not have been included; the actual amount of gain was therefore $497,893.88, and 10% of that amount would be $49,789. Moreover, the severity of the penalty resulting in the 10% was based on the Court's manifest error of fact that this was Reisinger's second violation, when in fact it was her first. Doc. 230, p. 25. When the amount of gain is properly stated as the restitution amount of $497,893.88, and the severity is reduced by approximately half because this was Reisinger's first violation, the civil monetary

9

penalty should be reduced to $25,000, which is what Reisinger proposed in her opposition to the CFTC's post-trial motion for relief. Doc. 215, pp. 13, 15.

### C. The Injunctions against Trading and Registration Should be Vacated.

In *CFTC v. Hunt*, the Seventh Circuit held that injunctive relief is never automatic upon the showing of a violation of the CEA or CFTC Regulations. 591 F.2d at 1220. District courts have wide latitude in fashioning equitable remedies, and the injunctive relief which is granted must serve the particularized needs of the case. *Id*. at 1219-20.

Reisinger argued in her response to plaintiff's post-trial motion for relief that the Court should limit any injunction to an injunction against future violations. Doc. 215, p. 4. The Court's rationale for ordering an injunction against trading and registration was as follows: "As the court sees it, the entry of the consent order (ECF No. 215-2, Ex. B) in *New World Holdings* demonstrates Reisinger's propensity to violate the Act again, so a trading ban, registration ban, and injunction covering future violations of the Act are warranted." Doc. 230, p. 26. This rationale was based on a manifest factual error, namely the statement in the Order that there was a $50,000 civil penalty entered against Reisinger in New World Holdings. *Id*. at 25-26. As the Court recognized in its September 25, 2018 order, the civil penalty in the *New World Holdings* settlement was not against Reisinger. Doc. 245, p. 5. The Court's rationale for imposing an injunction against trading and registration on Reisinger was therefore based on a manifestly erroneous factual premise.

Plaintiff has not provided evidence to support an injunction against trading. None of the violations with which Reisinger was charged relates in any way to her trading of futures. Indeed, as she testified, she did not trade futures for the NCCN commodity pool, but rather researched and selected professional traders who did the trading. Doc. 204, Tr., p. 227, Doc. 206, Tr., p. 671, Ex. A, Tr., p. 857. The violations found by the jury related to acting as a commodity pool

operator ("CPO") without a valid exemption, and failing to perform duties of a registered CPO. There was no violation that was either alleged or proven, that related to the trading of the NCCN pool.

In *In the Matter of Citadel Trading Co. of Chicago*, Comm. Fut. L. Rep. (CCH) ¶ 23,082 (CFTC 1986), the CFTC vacated the decision of one of its Administrative Law Judges to impose a trading ban on an individual who was found to have violated antifraud provisions in sections 4b and 4o of the CEA by soliciting accounts through deceptive means, and under section 4k of the CEA, by acting as an associated person without registration. The CFTC vacated the trading ban on the ground there was insufficient nexus between the violations and the integrity of the market mechanism to justify a trading ban. *See also In re Haltmier*, Comm. Fut. L. Rep. (CCH) ¶ 20,160 (CFTC 1976) (5-year trading ban based on violation of antifraud provision in section 4b of the CEA by unauthorized trading was reduced to an 18-month trading ban).

There was no charge that the trading in the NCCN pool was in any way in violation of the law and no evidence that the trading adversely affected the market mechanism. Reisinger researched and selected professional traders for individual sub-accounts the pool, and there was no evidence of any irregularity in the trading. Doc. 204, Tr., p. 227, Doc. 206, Tr., p. 671, Ex. A, Tr., p. 857. Because Reisinger did no trading herself and there was no violation proven in relation to the trading itself, no injunction against trading is warranted.

The injunction against engaging in any and all activity requiring registration should also be denied. Reisinger was registered as a broker in the futures industry for 14 years, and there was no evidence of any violations by her in that capacity. Doc. 206, Tr. p. 813. There is no basis in the regulatory violations relating to failure to meet all the requirements for an exemption from CPO registration for preventing her from continuing to function as a registered broker.

All violations found by the jury relate to Reisinger acting as a CPO without registration or a valid exemption from registration. An injunction enjoining Reisinger from future violations of the provisions which were found to be violated here will prevent her from violating the CPO registration requirement in the future. Such injunctive relief will have been tailored to the particularized needs of this case, as required by the Seventh Circuit in *Hunt*, *supra*, 591 F.2d at 1219-20, and will prevent recurrence of that particular registration violation. An injunction against engaging in any activity requiring registration in the future would be far broader than the violation that was found, and would unfairly deprive Reisinger of the ability to continue to act as a broker, where she has had no violations in that capacity. Similarly, an injunction against trading would unfairly prevent Reisinger from engaging in a lawful activity where she has had no past violations.

### D. Judgment Should be Entered Dismissing the Fraud Claims.

Reisinger's motion for judgment as a matter of law (Doc. 200) should have been granted on Counts 1 through 3, which were the fraud-based claims, because the evidence was not sufficient to support a finding of fraud, and the Court's basis for finding sufficient evidence of fraud is based on manifest errors of fact. In its September 25, 2018 order, the Court stated that its analysis of the sufficiency of the evidence to support the fraud claims was "undergirded" by the mischaracterization that the settlement in the New World Holdings case applied to Reisinger. Doc. 245, p. 5. In addition, there were other specific findings supporting the fraud claims in the Order that were manifestly erroneous, and should result in the Court's reconsidering the Order and entering judgment as a matter of law in favor of Reisinger on the fraud claims. *See* Erroneous Finding no. 4 and Basis for Striking Erroneous Finding no. 4, *supra*, pp. 4-5.

In the Order, the Court's only discussion of a basis for the finding of fraud, *i.e.*, material misrepresentations or omissions, was as follows:

> "For instance, the jury found for the CFTC on allegations Reisinger misrepresented to pool participants that a $5 million minimum was required to participate, and she never disclosed fee payments to a foreign introducing broker. *See Slusser*, 210 F.3d at 785 (evidence supporting finding of fraud included fact that CPO, who never registered, 'lied to [a participant] when he promised to manage the funds according to the prospectus'). By evading the registration requirement, Reisinger evaded the need to send disclosures and monthly statements that may well have alerted pool participants to what she was doing and to the fact that they were participating in a pool with much different characteristics than the $5 million minimum implied." Doc. 230, p. 24.

This part of the Order is based on manifest errors of fact. Although plaintiff made allegations concerning the $5 million minimum in the Complaint (Doc. 1, ¶ 72), and told the jury in opening statement that this would be proven as a fraudulent misrepresentation (Doc. 204, Tr., p. 196), plaintiff failed to prove that this representation was made by Reisinger and did not argue to the jury that this alleged fraud had been proven. Doc. 207, Tr., pp. 994, 1013. There was no evidence that Reisinger represented to any investors that there was a $5 million minimum investment required. Moreover, although there was evidence that round-turn commissions were customarily charged for brokerage transactions in the NCCN pool account, and that these commissions were split among various persons involved in the transactions, including any introducing broker, there was no evidence that this was improper or outside the ordinary course of business. Doc. 206, Tr., pp. 735-737. Significantly, plaintiff did not argue to the jury that this was a material omission to support the fraud claims. Doc. 207, Tr., pp. 994, 1013. Indeed, these payments were never mentioned in plaintiff's closing argument as a basis for finding fraud or for any other purpose. Doc. 207, Tr., pp. 993-1023.

As Reisinger argued in her motion for judgment as a matter of law, plaintiff failed to prove material misrepresentations or omissions. Doc. 201, pp. 5-6. Instead, plaintiff argued that

13

the fraud was a material omission consisting of the failure to disclose that she did not have a valid exemption from CPO registration, and therefore did not have the legal right to do what she was doing. Doc. 207, Tr., pp. 994, 1013. This was an inadequate basis for fraud for two reasons. First, a material omission must be a failure to disclose a material fact, whereas plaintiff is alleging that the fraud consisted of failure to disclose a legal conclusion. *See In the Matter of Slusser*, Comm. Fut. L. Rep. (CCH) ¶ 27,701 (CFTC 1999) (elements of fraud under CEA include misrepresentation or omission of a material fact), *affirmed in part and reversed in part on other grounds*, *Slusser v. CFTC*, 210 F.3d 783 (7th Cir. 2000). Cf. *Randazzo v. Harris Bank Palatine*, 262 F.3d 663, 671 (7th Cir. 2001) (misrepresentation of law does not satisfy Illinois Consumer Fraud Act requirement of misrepresentation or concealment of a material fact). Second, if plaintiff were permitted to prevail on the fraud charges in this case, any regulatory violation could become a fraud violation, merely by showing that the regulatory violation was not expressly disclosed. But such an argument could be made in relation to every regulatory violation, and would obliterate the distinction between a regulatory violation and fraud.

In assessing the sufficiency of the evidence to support the fraud claims, the Court should – consistent with the statement in its September 25, 2018 Order (Doc. 245, p. 5) regarding the Court's erroneous assumption that Reisinger had a previous violation and fine – take into consideration that Reisinger had no previous violations and her testimony that she obtained assistance from an experienced attorney in preparing the claim for an exemption for the NCCN pool before submitting the claim, which was corroborated by the attorney who assisted her. Doc. 206, Tr., pp. 794-800, Ex. A, Tr., pp. 835-840, Def. Ex. 1, 2, 3 p. 79, 3 p. 87, 5.

The Court should not permit plaintiff to bootstrap itself into a fraud finding merely by proving a regulatory violation and claiming that the legal conclusion that there was a violation

14

should have been disclosed. The Court should therefore grant judgment to Reisinger as a matter of law on Counts 1 through 3.

### E. It was Manifest Error to Award Prejudgment Interest that was not Requested and to Impose Liability on Reisinger for ROF's Disgorgement and Penalty.

In the Conclusion of the Order on page 27, the Court stated: "The CFTC's requests for an award of prejudgment interest and to hold Reisinger liable for ROF's violations of the Act, disgorgement and civil monetary penalty are also granted." Doc. 230, p. 27. As discussed in the Court's September 25, 2018 order, these issues were not properly raised or briefed by the CFTC pre-judgment, and therefore it was manifest error to include them in the Order. Doc. 245, pp. 2-4. Accordingly this sentence should be stricken from the Order.

## CONCLUSION

For the foregoing reasons, the Court should grant defendant Reisinger's Motion to Reconsider and Amend Order and Underlying Findings, and amend the Order and underlying findings as prayed for in the Motion.

Date: October 23, 2018

s/ William J. Nissen
William Nissen
Angelo J. Suozzi
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
p: (312) 853-7742
f: (312) 853-7036
wnissen@sidley.com
asuozzi@sidley.com

Attorneys For Defendant
Grace Elizabeth Reisinger

## CERTIFICATE OF SERVICE

    I, William J. Nissen, an attorney, hereby certify that I have served copies of the foregoing **Corrected Memorandum In Support Of Motion to Amend Judgment and Underlying Findings** upon the following individuals by the Court's ECF system on the 23rd of October, 2018.

    Timothy J. Mulreany
    U.S. Commodity Futures Trading Commission
    Division of Enforcement
    Three Lafayette Center
    1155 21st Street, N.W.
    Washington, D.C. 20581
    tmulreany@cftc.gov

    Elizabeth N. Pendleton
    U.S. Commodity Futures Trading Commission
    Division of Enforcement
    525 West Monroe Street
    Suite 1100
    Chicago, IL 60661
    ependleton@cftc.gov


            s/ William J. Nissen
            William J. Nissen